# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUSSELL DOVER, JONATHAN STONE, CODY RANK, and SUZETTE PERRY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-vs.-<br><br>BRITISH AIRWAYS, PLC (UK),<br><br>Defendant. | Case No. 1:12-cv-05567 (RJD) (MDG)<br><br>**Oral Argument Requested**<br><br>Judge: Raymond J. Dearie<br><br>Magistrate Judge:  Marilyn D. Go. |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT BRITISH AIRWAY'S MOTION TO DISMISS

David S. Stellings
Nicholas Diamand
Jason L. Lichtman
Douglas I. Cuthbertson
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY  10013-1413
212.355.9500

Clive Zietman
Fiona Stewart
Daniel Loblowitz
**Stewarts Law, LLP**
5 New Street Square
London, UK EC4A 3BF
+44 (0)20.7822.8000

*Counsel for Plaintiffs*

*Additional Counsel Listed on Signature Page*

# TABLE OF CONTENTS

**Page**

I.    RELEVANT FACTS ............................................................................................ 3

    A.    Plaintiffs' Allegations ....................................................................... 3

    B.    BA's Response.................................................................................... 4

II.   STANDARD OF REVIEW .............................................................................. 6

III.  THIS DISPUTE IS GOVERNED BY THE SUBSTANTIVE LAW OF ENGLAND AND WALES ................................................................................ 7

    A.    No Other Substantive Law is Relevant. ........................................... 7

    B.    Plaintiffs Respectfully Ask the Court to Credit Independent Expert Testimony Explaining the Substantive Law of England and Wales.................... 8

IV.   ARGUMENT ................................................................................................... 9

    A.    The Court Should Not Consider BA's Extrinsic Evidence................................. 9

    B.    British Airways Breached the Terms of its Contract. ......................................... 10

        1.    The Fuel Surcharge Must Reflect the Price of Fuel.................................. 11

        2.    BA's Contract Defines a "Fuel Surcharge" as a Charge Imposed by an Entity *Other* Than BA....................................................................... 14

    C.    Plaintiffs' Claim Is Not Preempted By The ADA. ............................................ 18

        1.    The Contract Is A Self-Imposed Undertaking Expressly Excluded By the *Wolens* Exception From the ADA Preemption Clause. .............. 19

        2.    Because Plaintiffs' Claim Is Not A Consumer Protection Claim, British Airways' Implied Preemption Argument Fails........................... 20

V.    CONCLUSION................................................................................................ 21

1095781.7

2646765-1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allen v. Devine,*
670 F. Supp. 2d 164 (E.D.N.Y. 2009) ................................................. 8

*Am. Airlines v. Wolens,*
513 U.S. 219 (1995) .................................................................. 2, 18, 19, 20

*Anderson News, L.L.C. v. Am. Media, Inc.,*
680 F.3d 162 (2d Cir. 2012), *cert. denied,*
133 S. Ct. 846 (Jan. 7, 2013) ......................................................... 6, 7

*Anglo Continental Educational Group (GB)*
*Limited v Capital Homes (Southern Limited)*
[2009] EWCA Civ 218, at 13 ........................................................... 13

*Aretakis v. Fed. Express Corp.,*
No. 10 Civ. 1696, 2011 U.S. Dist. LEXIS 22022 (S.D.N.Y. Feb. 28, 2011) ....... 18

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................... 6

*ATSI Communs., Inc. v. Shaar Fund, Ltd.,*
493 F.3d 87 (2d Cir. 2007) ............................................................. 10

*Barkwell v. Sprint Communs. Co. L.P.,*
No. 4:09-cv-56, 2010 U.S. Dist. LEXIS 128831 (M.D. Ga. Dec. 6, 2010) .......... 16

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................... 6

*Buck v. American Airlines, Inc.,*
476 F.3d 29 (1st Cir. 2007) ............................................................ 20

*Carlucci v. Piper Aircraft Corp.,*
775 F.2d 1440 (11th Cir. 1985) ......................................................... 8

*CSI Inv. Partners II, L.P. v. Cendant Corp.,*
507 F. Supp. 2d 384 (S.D.N.Y. 2007) ................................................... 11

*Donkor v. British Airways Corp.,*
62 F. Supp. 2d 963 (E.D.N.Y. 1999) ................................................... 19

*Fein v. Chi. Ins. Co.,*
No. 01 Cov. 11386, 2003 U.S. Dist. LEXIS 12374 (S.D.N.Y. July 16, 2003) ....... 13

*FMC Techs. Inc. v. Edwards,*
No. C05-946C, 2007 U.S. Dist. LEXIS 42512 (W.D. Wash. June 12, 2007) .......... 12

*Fondo v. Delta Air Lines, Inc.,*
No. 00 Civ. 24452001 U.S. Dist. LEXIS 7098 (S.D.N.Y. May 31, 2001) ........... 19

*Friedl v. City of New York,*
210 F.3d 79 (2d Cir. 2000) .............................................................. 9

# TABLE OF AUTHORITIES
## (continued)

Page

*Giannopoulos v. Iberia Líneas Aéreas de España, S.A.*,
No. 11C 775, 2011 U.S. Dist. LEXIS 82304 (N.D. Ill. July 27, 2011) ................................ 19

*Ginsberg v. Northwest, Inc.*,
695 F.3d 873 (9th Cir. 2012) ........................................................................ 18

*In re Jetblue Airways Corp. Priv. Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ................................................ 2, 18, 19, 20

*In re Metlife Demutualization Litig.*,
00-cv-2258, 2006 U.S. Dist. LEXIS 97633 (E.D.N.Y. Aug. 29, 2006) ................................ 13

*In re Nig. Charter Flights Contract Litig.*,
520 F. Supp. 2d 447 (E.D.N.Y. 2007) ........................................................................ 19

*Investors Compensation Scheme Ltd v West Bromwich Building Society*
[1998] 1 W.L.R. 896, at 913 ........................................................................ 14

*M. Fortunoff of Westbury Corp. v. Peerless Ins. Co.*,
432 F.3d 127(2d Cir. 2005)........................................................................ 13

*Matrixx Initiatives, Inc. v. Siracusano*,
131 S. Ct. 1309 (2011) ........................................................................ 7

*McMullen v. Delta Air Lines, Inc.*,
No. 08-1523 JSW, 2008 U.S. Dist. LEXIS 75720 (N.D. Ca. Sept 30, 2008)........................ 20

*McPhee v. GE Int'l, Inc.*,
736 F. Supp. 2d 676 (S.D.N.Y. 2010) ........................................................................ 8

*Mid Essex Hospital Services NHS Trust v Compass Group UK and Ireland Ltd*
*(t/a Medirest)*
[2013] EWCA Civ 200 ........................................................................ 17

*Olin Corp. v. Am. Home Assur. Co.*,
704 F.3d 89 (2d Cir. 2012)........................................................................ 13

*People v. Guerrero*,
12 N.Y.3d 45 (N.Y. 2009) ........................................................................ 15

*Perrylease Ltd v Imecar A.G.*
[1988] 1 W.L.R., 463 ........................................................................ 11

*Proteus Books, Ltd. v. Cherry Lane Music Co.*,
873 F.2d 502 (2d Cir. 1989)........................................................................ 12

*Provident Mut. Life Ins. Co. v. Bickerstaff*,
818 F. Supp. 116 (E.D. Pa. 1993) ........................................................................ 8

*Regent Ins. Co. v. Storm King Contr., Inc.*,
No. 06 Civ. 2879, 2008 U.S. Dist. LEXIS 16513 (S.D.N.Y. Feb. 26, 2008) ........................ 16

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000)........................................................................ 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Sahu v. Union Carbide Corp.*,
548 F.3d 59 (2d Cir. 2008)........................................................................ 10

*Spirit Airlines, Inc. v. Dep't of Transportation*,
687 F.3d 403 (D.C. Cir. 2012)................................................................... 20

*Statland v. American Airlines, Inc.*,
998 F.2d 539 (7th Cir. 1993) ..................................................................... 20

*T.M. Real Estate Holding, LLC v. Stop & Shop Supermarket Co. LLC*,
No. 12 Civ. 1808, 2013 U.S. Dist. LEXIS 22448 (S.D.N.Y. Feb. 14, 2013) ...................... 13

*Twentieth Century Fox Film Corp. v. Marvel Enters.*,
277 F.3d 253 (2d Cir. 2002)....................................................................... 10

*United States ex rel. Anti-Discrimination Ctr. of*
*Metro N.Y., Inc. v. Westchester Cty.*,
No. 06-cv-2860, 2011 U.S. Dist. LEXIS 154455 (S.D.N.Y. Nov. 17, 2011)...................... 15

*Volodarskiy v. Delta Air Lines, Inc.*
No. 11 C 00782, 2012 U.S. Dist. LEXIS 154831 (N.D Ill., Oct. 29, 2012) ...................... 20

*Weiss v. La Suisse*,
154 F. Supp. 2d 734 (S.D.N.Y. 2001).......................................................... 8

*Willig v. Exiqon, Inc.*,
No. SA CV 11-399, 2012 U.S. Dist. LEXIS 662 (C.D. Cal. Jan. 3, 2012) ...................... 11

*Yam Seng Pte Limited v. International Trade Corporation Limited*
[2013] EWHC 111 (QB)............................................................................ 17

*Young v. Zwack, Inc.*,
98 A.D.2d 913 (3d Dep't 1983) ................................................................. 12

## OTHER AUTHORITIES

American Heritage Dictionary of the English Language (4th ed. 2006) ......................... 14

Chitty on Contracts § 12-117...................................................................... 11

Corbin on Contract § 13.14........................................................................ 15

Corbin on Contracts § 24.16 ...................................................................... 12

## STATUTES

49 U.S.C. § 41712(a) ............................................................................... 20

1095781.7

This dispute revolves around the meaning of the term "fuel surcharge."  Defendant British Airways, PLC (UK) ("BA" or "British Airways") imposed what it terms a fuel surcharge (the "Fuel Surcharge") of hundreds of dollars on every ticket acquired by Plaintiffs and the proposed class members who redeemed their frequent flier points ("Miles") for travel on British Airways ("Reward Tickets").  The Fuel Surcharge was not based on the price of fuel, nor did any outside entity impose such a charge on BA.  The question at the heart of this litigation is whether the contract between Plaintiffs and BA (the "Contract") allows BA to impose a Fuel Surcharge that is *not* a fuel surcharge (i.e., that is not based on the price of fuel or externally imposed on BA).

At this stage of the proceedings, the question before the Court is straightforward:  it must determine, assuming the truth of Plaintiffs' allegations, whether Plaintiffs state a claim for breach of contract.  But in an ironic parallel to Plaintiffs' allegations that BA's Fuel Surcharge is not a fuel surcharge, BA's Motion to Dismiss is not a motion to dismiss:  it is a motion for summary judgment.  The "evidence" and "facts" in BA's brief are far outside the proper scope of a motion to dismiss, and they cannot be considered.  This is not just a procedural objection:  at least some of what BA submits is misleading or false.[1]

Even if BA's extrinsic evidence were accurate and admissible, Plaintiffs would still state a claim because BA has misapprehended the law of England and Wales ("English Law"), which governs the Contract.  While BA's brief is notably bereft of citations to this law, BA does offer

---

[1] For example, while the Complaint states that no domestic airline imposes a fuel surcharge, *see* Compl. at ¶ 44, BA asserts that Delta Air Lines ("Delta") imposes a fuel surcharge on its frequent flier passengers.  (*See* BA Br. at 9 n.7.)  BA is mistaken.  *See* Declaration of Jason L. Lichtman In Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Lichtman Decl.") at ¶ 3 & Ex. A (attaching screen shots demonstrating that Delta's frequent flier customers do not pay fuel surcharges and that Delta's total charges are a fraction of BA's).

"expert testimony" from its own counsel, who asserts that the Fuel Surcharge need not be based on the price of fuel.  (*See* BA Br., Ex. 29 (Stone Opinion).)  This counterintuitive conclusion is unavailing because, as an *independent* expert on English Law, Andrew Sutcliffe, Queen's Counsel ("QC") and Deputy High Court Judge, explains, BA misapprehends English Law.  *See* Lichtman Decl., Ex. B (Sutcliffe Rep.).[2]  Mr. Sutcliffe presides as a judge in London over disputes similar to the one between Plaintiffs and BA, and he explains — consistent with both New York law and common sense — that Plaintiffs state a claim for breach of contract.  *See id.*

BA's interpretation of the law of the United States is similarly misguided.  Contrary to BA's assertions, nothing in the Airline Deregulation Act of 1978 ("ADA") allows an airline to avoid responsibility for its contractual obligations.  *See, e.g.*, *In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 313 (E.D.N.Y. 2005) (Amon, C.J.).  That the ADA bars Plaintiffs from also asserting what would otherwise be a compelling claim for consumer fraud does not somehow change the analysis, and the Supreme Court has so held.  *See Am. Airlines v. Wolens*, 513 U.S. 219, 233 (1995) (holding that a breach of contract suit relating to frequent flier points was not preempted by the ADA, although a similar consumer fraud claim was).

Accordingly, and as explained more fully below, Plaintiffs respectfully ask this Court to deny BA's motion to dismiss.

---

[2] In England, the most accomplished barristers are appointed Queens Counsel.  *See, e.g.*, http://www.barcouncil.org.uk/about-the-bar/facts-and-figures/statistics (illustrating that, as of 2010, of more than 15,000 barristers, only 1,397 were appointed Queens Counsel).  Only a few of this small group are also appointed judges.

## I.     RELEVANT FACTS

### A.     Plaintiffs' Allegations

Plaintiffs are members ("Members") in British Airways' frequent flier program, known as the Executive Club.  Compl. at ¶ 3.  Members in the Executive Club are promised that they will earn points ("Miles") in exchange for engaging in certain activity, including paying for flights on British Airways.  *Id*. at ¶ 1.  Miles are frequently redeemed for "free" airline travel ("Reward Tickets").  *Id*. at ¶ 2.  Reward Tickets are not literally free; instead, Members must pay certain taxes and fees when they redeem Miles for a Reward Ticket.  *Id*.[3]  In particular, the Contract provides:

> Members will be liable for all taxes and other charges associated with Reward travel on British Airways or a Service Partner airline, including without limitation, airport departure tax, customs fines, immigration fees, airport charges, customer user fees, fuel surcharges, agricultural inspection fees, security and insurance surcharge or other incidental fees or taxes charged by any person or relevant authority or body.

*Id*. at ¶ 40 (quoting Contract at § 13.14).

As indicated above, the present dispute concerns the meaning of the term "fuel surcharge" as it applies to Reward Tickets.  *Id*. at ¶ 6.  Plaintiffs assert that a fuel surcharge, among other things, should be a charge that is based on the price of fuel.  *Id*. at ¶ 7.  There is no serious dispute that, whatever the Fuel Surcharge is based on, it is not based on *that*:  while BA (improperly) submitted voluminous extrinsic evidence in its motion to dismiss, none of it even purports to show that the Fuel Surcharge is actually based on the price of fuel.  (*See generally*

---

[3] BA states that Plaintiffs have alleged that "the website promises free flights."  (BA Br. at 9.) Plaintiffs allege no such thing.  *See* Compl. ¶ at 2 ("Reward tickets are not literally free.").

BA Br.)  And the Fuel Surcharge is no minor fee.  While other charges and fees associated with

Reward Tickets are modest, the Fuel Surcharge is many hundreds of dollars per ticket.  *Id*. at ¶ 9.

This is not the only problem with the Fuel Surcharge, however.  British Airways drafted

the Contract to permit BA to assess taxes or fees on Rewards Tickets only when they are

imposed by some entity *other* than BA.  *Id*. at ¶ 8; *see also* Lichtman Decl., Ex. B (Sutcliffe

Report) at ¶ 69 ("In my opinion, an English court would conclude that the natural meaning of the

words in [the Contract] only permit[] British Airways to pass on certain charges imposed by

third parties.").  And there is no dispute that the Fuel Surcharge is a charge imposed by BA itself.

### B.      BA's Response

BA's response is overwhelmingly devoted to facts that are not relevant to Plaintiffs'

claim.  Most notably, BA extensively discusses the rising cost of fuel (*see* BA Br. at 1, 3-4), the

difficulties of calculating the fuel surcharge in advance (s*ee* BA Br. at 5-6), and the degree to

which the changing price of fuel relates to the cost that BA actually pays for fuel (s*ee* BA Br. at

7).  None of this is relevant to whether BA breached the Contract by failing to base its Fuel

Surcharge on the price of fuel.  Nor is this "evidence" relevant to the question immediately

before the Court:  whether Plaintiffs adequately alleged such a breach in the Complaint.[4]

BA's response also focuses on what are known as the "General Conditions of Carriage

for Passengers and Baggage" ("General Conditions").  (*See* BA Br. at 1, 8-9.)  It argues that the

---

[4] BA has attached extrinsic evidence relating to all of these issues.  To the extent that these issues are ultimately relevant for reasons not clear from the face of Plaintiffs' Complaint, BA will have an opportunity at the close of discovery (when both parties have been given access to the same evidence) to move for summary judgment.  Now is not that time.  Further, Plaintiffs note that BA is seeking a stay of all discovery pending resolution of its Motion to Dismiss.  BA should not be permitted to prematurely and inappropriately introduce discoverable material in support of this motion and simultaneously argue that discovery should be stayed.  If BA wants to make use of extrinsic evidence now, discovery should also begin now, so that Plaintiffs can, among other things, fairly assess the evidence BA has submitted to the Court.  *See also* n.9 *infra*.

General Conditions are incorporated into the Contract and that both documents, taken together, demonstrate that BA informed Plaintiffs that they might have to pay a fuel surcharge.  (*See* BA Br at 1, 8-9.)  Although this is true, it is unrelated to Plaintiffs' claim.  Compl. at ¶¶ 7-8.  Indeed, the General Conditions *strengthen* Plaintiffs' claim.  *See, e.g.*, Lichtman Decl., Ex. B (Sutcliffe Rep.) at ¶¶ 67-68 (explaining how the General Conditions help make clear that BA could not assess any fuel surcharge that was not imposed by a third party).

One final point bears emphasis.  BA created a graph that purports to show that the Fuel Surcharge is correlated with the price of fuel.  (*See* BA Br. at 6.)  Even beyond the fact that the graph is inappropriate extrinsic evidence in the context of a motion to dismiss, the graph does not show what it appears to show — tortured enough, numbers will confess to anything.  It appears that BA selected scales for the two Y-axes on its graph ("BA's Y-Axes Framework") to give the impression that the Fuel Surcharges were strongly correlated with fuel prices, even though only a very weak correlation exists.  *See* Compl. at ¶¶ 50-55.  Plaintiffs, below, submit a chart that adopts BA's Y-Axes Framework and applies assumptions highly favorable to British Airways.  *See* Lichtman Decl. at ¶4, Ex. B.  Because Plaintiffs do not adopt BA's misleading scale, however, the chart demonstrates why the scale chosen by the chart's creator is relevant.  *See id*.  Plaintiffs' chart assumes *arguendo* that when BA first introduced the Fuel Surcharge, it was actually based on the price of fuel.[5]  Nevertheless, Plaintiffs' graph still shows that there is only a small correlation between the Fuel Surcharge and the price of fuel.  It also demonstrates, for example, that BA massively increased the Fuel Surcharge relative to the price of fuel during the summer of 2008.  This would not have happened if the Fuel Surcharge had been based on fuel

---

[5] Plaintiffs do not concede this point; rather, they seek to demonstrate what a fairly drawn graph would look like even when using assumptions highly favorable to BA.

prices.  Only at the summary judgment stage, after the close of discovery, will the parties be in a

position to present to the Court charts that include more reliable data and readily verifiable axis

scaling.  To be presenting this type of information at the motion to dismiss stage, before any

discovery has occurred, is premature.



## II.   <u>STANDARD OF REVIEW</u>

On a motion to dismiss under Rule 12(b)(6), a court determines whether plaintiffs are

entitled to offer evidence in support of their claims.  *See Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 563 n.8 (2007) (citation omitted).  To survive such a motion, plaintiffs must merely plead

enough facts "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S.

662, 663 (2009).  A claim need *not* be more likely to succeed than fail; rather, "plausibility is a

standard lower than probability, a given set of actions may well be subject to diverging

interpretations, each of which is plausible."  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d

162, 184 (2d Cir. 2012), *cert denied*, 133 S. Ct. 846 (Jan. 7, 2013).

A motion to dismiss must be denied unless there is no "reasonable expectation that discovery will reveal evidence" that would enable the trier of fact, after weighing contested evidence and making allowable inferences, to decide the case for the plaintiffs. *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1323 (2011); *see also Anderson News*, 680 F. 3d at 184 ("[T]he plaintiff need not show that its allegations . . . are more likely than not true.").

## III.   THIS DISPUTE IS GOVERNED BY THE SUBSTANTIVE LAW OF ENGLAND AND WALES

### A.   No Other Substantive Law is Relevant.

There is no dispute that English Law governs construction of the Contract. (*See* BA Br. at 12 n.9.)  An English court interpreting the Contract, moreover, would not consider the substantive law of any other jurisdiction. *See* Lichtman Decl., Ex. B (Sutcliffe Rep.) at 21 ("In summary, as a result of the governing law clause expressly providing for English law to apply, an English court construing the Contract (and the reference in the Contract to the General Conditions) would not have regard to the substantive law of any other jurisdiction."). Accordingly, the substantive law of England and Wales applies to the entire dispute between the Parties. *See id.*

In the middle of a lengthy footnote, however, BA observes that its tickets are governed by the law of a ticket holder's home state. (*See* BA Br. at 12 n.9.)  BA then suggests that this means that state law is also relevant to Plaintiffs' claim that BA breached the Contract. (*See id.*) BA is incorrect:  Plaintiffs do not allege that BA breached any duty created by the tickets themselves; indeed, Plaintiffs make no claims about the tickets whatsoever. *See generally* Compl.  It is not apparent from BA's footnote *why* BA believes the tickets themselves might be relevant (*see* BA Br. at 12 n. 9), and Plaintiffs are therefore unable to respond comprehensively to BA's misapprehension.  For present purposes, however, it is enough to note that BA has failed

to demonstrate that the Court should consider the substantive law of any jurisdiction other than England.  *See McPhee v. GE Int'l, Inc.*, 736 F. Supp. 2d 676, 681 (S.D.N.Y. 2010) ("The burden of demonstrating that Swiss law does not govern rests with plaintiffs (who challenge the choice of law clause) and it is a heavy burden." (quoting *Weiss v. La Suisse*, 154 F. Supp. 2d 734, 736 (S.D.N.Y. 2001)); *accord Provident Mut. Life Ins. Co. v. Bickerstaff*, 818 F. Supp. 116, 119 (E.D. Pa. 1993) ("[W]e cannot find that the Defendant has met his burden of demonstrating that the forum selection and choice of law clauses are unjust, unreasonable and should not be enforced."); *cf. Allen v. Devine*, 670 F. Supp. 2d 164, 174 (E.D.N.Y. 2009) ("Moving Defendants have the burden of showing that transfer is proper, and they therefore also have the burden of substantiating their choice of law argument if that is to serve as a basis for transfer.").

### B.  Plaintiffs Respectfully Ask the Court to Credit Independent Expert Testimony Explaining the Substantive Law of England and Wales.

BA is correct that expert testimony may be considered to assist the Court in its interpretation of English Law.  (*See* BA Br. at 12 n.9.)  For this reason, Plaintiffs have included the independent expert opinion of a senior barrister, Mr. Andrew Sutcliffe, QC.  *See, e.g.*, *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1454 (11th Cir. 1985) ("The English differentiate between 'solicitors' and 'barristers.'  Barristers receive special training and present the cases in court.  Their traditional values, quality of scholarship and loyalty to the courts is known world-wide.").  Mr. Sutcliffe is also a Deputy High Court Judge in the Chancery and Mercantile Courts of England and Wales (the "English Courts"), where he has served since 2004. *See* Lichtman Decl., Ex. B at A1 (Sutcliffe Resume).  Indeed, the dispute at issue before this Court is precisely the type of civil matter Mr. Sutcliffe typically adjudicates.  *See* Lichtman Decl., Ex. B (Sutcliffe Rep.) at 4 ("I am often required to adjudicate disputes which involve issues of contractual construction such as [this one].").

Mr. Sutcliffe explains that BA's articulation of English Law (offered through its own counsel, solicitor Paul Stone) is incorrect.  Dispositively, Mr. Sutcliffe opines that the Contract "does not give British Airways an unfettered discretion to impose whatever additional charges it likes on the basic fare."  *Id*. at 8e.  As between the starkly different conclusions reached by British Airways' own counsel and Mr. Sutcliffe, Plaintiffs respectfully ask this Court to find Mr. Sutcliffe's independent expert analysis more compelling and authoritative than the analysis that was essentially provided by British Airways itself (i.e., BA's "expert" is a solicitor in the Leeds office of DLA Piper, LLP, BA's counsel in this case).

## IV.  ARGUMENT

### A.  The Court Should Not Consider BA's Extrinsic Evidence.

BA asks this Court to ignore most of the allegations in Plaintiffs' Complaint, which is not appropriate on a motion to dismiss.  In particular, BA attempts to introduce segments of a large number of documents into evidence and argues that *those* documents establish that BA was entitled to levy a surcharge that is not based on the price of fuel.  There are two problems here, each independently fatal to BA's motion.

First, this is not a motion for summary judgment.  *See Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) ("[A trial court] must either exclude [extrinsic evidence] and decide the motion on the complaint alone or convert the motion to one for summary judgment . . . and afford all parties the opportunity to present supporting material" (citation omitted)).  Contrary to BA's assertion, the well-established rule articulated in *Friedl* does not change merely because Plaintiffs referenced extrinsic material in their Complaint to meet the requirements of "*Twiqbal*."

*See Sahu v. Union Carbide Corp.*, 548 F.3d 59, 68 (2d Cir. 2008).[6]  Courts do not resolve factual disputes when considering a motion to dismiss.  *See, e.g. Twentieth Century Fox Film Corp. v. Marvel Enters.*, 277 F.3d 253, 256-58 (2d Cir. 2002) (explaining that a court cannot dismiss a claim for breach of contract when a factual dispute regarding the meaning of a particular contractual term will determine the outcome of the litigation).

Second, these documents are not relevant to Plaintiffs' claim.  Plaintiffs allege that the term "fuel surcharge" means a charge based on the price of fuel that is imposed by a third-party.  Only one of BA's documents, a misleading graph, is even purportedly related to (half of) this assertion, and, as explained above, that document does not survive even mild scrutiny.  The other documents essentially show only that fuel is expensive; they do not somehow indicate that the Contract allows BA to charge Members an enormous fee simply by calling that fee a fuel surcharge.

### B.   British Airways Breached the Terms of its Contract.

Under English Law, the Plaintiffs' claim can be analyzed in two discrete steps.  First, the Court must determine the meaning of the term "fuel surcharge" as a general matter, because it is not defined in the Contract.  *See* Lichtman Decl., Ex. B (Sutcliffe Rep.) at ¶¶ 41-54.  Second, the Court must consider whether "fuel surcharge" has a "more precise" definition in context.  *See id.* at 55.

---

[6] BA cites a Private Securities Litigation Reform Act ("PSLRA") case, *ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), in support of the proposition that this Court may consider extrinsic evidence on a motion to dismiss.  But context matters:  it is not a coincidence that the Court in *ATSI* was citing another PSLRA case, *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000).  While it is appropriate to attach extrinsic evidence integral to the complaint (i.e., SEC filings in securities litigation), when a complaint includes reference to materials "largely for the purpose of indicating that evidence existed to support the complaint's assertions," extrinsic evidence remains inappropriate for consideration on a motion to dismiss. *Sahu*, 548 F.3d at 68.

1.      **The Fuel Surcharge Must Reflect the Price of Fuel.**

The term "fuel surcharge" is never defined in the Contract.  For this reason, an English

court would look to extrinsic evidence regarding the Parties' intentions to clarify the Contract:

> Extrinsic evidence of this sort does not usurp the authority of the
> written document . . . .  The extrinsic evidence does no more than
> assist in its operation by assigning a definite meaning to terms
> capable of such explanation or by pointing out and connecting
> them with the proper subject matter.

*Perrylease Ltd v Imecar A.G.* [1988] 1 W.L.R., 463, at 471; Chitty on Contracts § 12-117

(citations omitted); *accord CSI Inv. Partners II, L.P. v. Cendant Corp.,* 507 F. Supp. 2d 384, 413

(S.D.N.Y. 2007) ("If ambiguity exists, then extrinsic evidence of the parties' intent may be

looked to as an aid to construing the contractual language.").

In this case, of course, there is unusually good evidence of BA's intention because BA

explains on its own website that it "applies a fuel surcharge to reflect the fluctuating price of

worldwide oil."  Lichtman Decl., Ex. B (Sutcliffe Rep.) at ¶ 42.  And "in the absence of any

contractual definition of the term 'fuel surcharge', an English court would have regard to the

only explanation offered by British Airways."  *Id.* at 44; *accord Willig v. Exiqon, Inc.*, No. SA

CV 11-399, 2012 U.S. Dist. LEXIS 662, at *21-22 (C.D. Cal. Jan. 3, 2012) (considering

extrinsic evidence from a party's website to aid in contractual interpretation).  In other words, the

term "fuel surcharge" in the contract refers, as Plaintiffs' contend, to a charge based on the price

of fuel.  Lichtman Decl., Ex. B (Sutcliffe Rep.) at ¶ 54.[7]

---

[7] BA contends that "price" actually means "cost."  (Br., Ex. 29 (Stone Opinion) at § 5.4.)  Mr.
Sutcliffe discusses extensively why this is not so, *see* Lichtman Decl., Ex. B (Sutcliffe Rep.) at
¶¶ 47-49 ("[T]he construction proposed by DLA's Opinion is not a tenable construction.").
Nevertheless, this is something of a tertiary issue at this stage of litigation; BA does not contend
the Fuel Surcharge is "based on" its cost of fuel either.

BA's protestations to the contrary are unavailing.  First, BA argues that its statement is not part of the Contract.  (*See* BA Br. at 18-19.)  This is correct, but it is also irrelevant:  the question is whether the website is valuable extrinsic evidence that can assist the Court in determining the meaning of the term "fuel surcharge," which it is.  *See* Lichtman Decl., Ex. B (Sutcliffe Rep.) at ¶ 44 ("[A] n English court would have regard to the only explanation offered by British Airways."); *accord* 5-24 Corbin on Contracts § 24.16 ("In the process of interpreting a contract, the court can receive great assistance from the interpreting statements made by the parties themselves . . . .").

Second, BA contends that its statement is "too vague to be enforceable."  (BA Br. at 19-20).  BA's supporting caselaw, however, is wildly off point; none even sets forth English law or discusses the interpretation of extrinsic evidence.  *See, e.g.*, *FMC Techs. Inc. v. Edwards*, No. C05-946C, 2007 U.S. Dist. LEXIS 42512, at *24-25 (W.D. Wash. June 12, 2007) (noting that "agreements to agree" are too vague to enforce).  Perhaps more to the point, none of BA's cited cases explain that contractual terms are interpreted to be valid whenever possible.  *See* Lichtman Decl., Ex. B (Sutcliffe Rep.) at ¶ 53 ("[English] courts will seek to interpret a contract so that it is valid rather than ineffective, and they will imply words into an agreement which are required to make commercial sense of the agreement."); *accord Proteus Books, Ltd. v. Cherry Lane Music Co.*, 873 F.2d 502, 508 (2d Cir. 1989) ("To void a contract for vagueness is a last resort." (citing *Young v. Zwack, Inc.*, 98 A.D.2d 913, 914 (3d Dep't 1983)).  And the phrase "fuel surcharge to reflect the fluctuating price of worldwide oil" is not vague in any sense of the word:  "whether by the implication of words or as a matter of common sense interpretation," the phrase plainly refers

to "a surcharge which reflects changes in the spot price of crude oil."  Lichtman Decl., Ex. B

(Sutcliffe Rep.) at ¶ 54.[8]

Third, BA's assertion that it can charge whatever it wishes as a "fuel surcharge" (*see,
e.g.*, Doc. 9 (BA Pre-Motion Letter) at 2) is in contravention of the well-established rule that a

contract must be construed so as to give full effect to all of its provisions:

> if the agreement is susceptible of an interpretation which will make
> it enforceable and effective, the court will prefer that interpretation
> to any interpretation which would result in its being void

*Anglo Continental Educational Group (GB) Limited v Capital Homes (Southern Limited)* [2009]

EWCA Civ 218, at 13; *accord T.M. Real Estate Holding, LLC v. Stop & Shop Supermarket Co.

LLC*, No. 12 Civ. 1808, 2013 U.S. Dist. LEXIS 22448, at *15-16 (S.D.N.Y. Feb. 14, 2013).  In

other words, BA's purported definition of "fuel surcharge" as "whatever BA would like to

charge" in error because it would render meaningless the word "fuel."  *See Anglo Continental*,

EWCA Civ 218, at 13; *accord Olin Corp. v. Am. Home Assur. Co.,* 704 F.3d 89, 99 (2d Cir.

2012) ("Any interpretation of a contract that 'has the effect of rendering at least one clause

superfluous or meaningless . . . is not preferred and will be avoided if possible.'" (citation

omitted)).

---

[8] This is particularly so because, to the extent that there could be any doubt about the meaning of
the term "fuel surcharge," the Contract must be construed against British Airways, which drafted
it.  *See id.* at ¶ 27 ("[W]here there is a doubt about the meaning of the contract, the words will be
construed against the person who put them forward . . . ." (collecting authority)); *accord In re
Metlife Demutualization Litig.*, No. 00-cv-2258, 2006 U.S. Dist. LEXIS 97633, at *14 (E.D.N.Y.
Aug. 29, 2006) ("[T]he doctrine of contra proferentum [requires the Court] to interpret the
ambiguities against the drafter of the contract." (citing *M. Fortunoff of Westbury Corp. v.
Peerless Ins. Co.*, 432 F.3d 127, 142 (2d Cir. 2005); *accord also Fein v. Chi. Ins. Co.*, No. 01
Cov. 11386, 2003 U.S. Dist. LEXIS 12374, at *18 (S.D.N.Y. July 16, 2003) ("In cases of doubt
or ambiguity, a contract must be construed most strongly against the party who prepared it, and
favorably to a party who had no voice in the selection of its language.").

-13-

Finally, BA's argument that it was not obligated to "follow any particular methodology for setting the fuel surcharge" (BA Br. at 2) is simply non-responsive to the Complaint.[9] Plaintiffs do not allege that BA chose the wrong "methodology for setting the fuel surcharge." Rather, Plaintiffs allege that *BA's fuel surcharge is not based upon the price of fuel. See* Compl. at ¶ 7.  And *that* is a proper allegation of breach of contract.  *See* Lichtman Decl., Ex. B (Sutcliffe Rep.) at ¶¶ 41-54.

## 2. BA's Contract Defines a "Fuel Surcharge" as a Charge Imposed by an Entity *Other* Than BA.

As indicated above, there is a fundamental problem with the Fuel Surcharge even beyond the fact that it is not based on the price of fuel, although that alone is enough to support Plaintiffs' claim.  Under English Law, BA's Contract permits BA to pass on a fuel surcharge only if it is levied by a third party.  *See* Lichtman Decl., Ex. B (Sutcliffe Rep.) at ¶ 69 ("[A]n English court would conclude that . . . British Airways [may only] pass on certain charges imposed by third parties.").

### a. A "Surcharge" Must be a Charge Over the "Usual" Cost.

A surcharge is a "[a]n additional sum added to the usual amount or cost."  American Heritage Dictionary of the English Language (4th ed. 2006); *see Investors Compensation Scheme Ltd v West Bromwich Building Society* [1998] 1 W.L.R. 896, at 913 ("The meaning which a document (or any other utterance) would convey to a reasonable man is not the same thing as the meaning of its words.  *The meaning of words is a matter of dictionaries . . . .*" (emphasis added); *accord United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cty.*, No.

---

[9] Arguments about "methodology" are irrelevant at this stage of litigation in any event.  (*See* Doc. 15 (3/5/13 Hrg. Tr.) at 15:2-7) ("Ms. Gordon: 'The fuel surcharge has never recouped the entirety of the cost of fuel to British Airways on a global basis.'  The Court:  'You can't go there until you're months into discovery, which is not what you want to do.'").

06-cv-2860, 2011 U.S. Dist. LEXIS 154455, at *10 (S.D.N.Y. Nov. 17, 2011).  Any surcharge

must therefore constitute a charge over and above the "usual" cost for a flight.  *See* Lichtman

Decl., Ex. B (Sutcliffe Rep.) at 59 ("[T]he reference to a "*fuel surcharge*" is to be construed as a

reference to some additional charge, not part of the airline's ordinary running costs . . . .");

*accord People v. Guerrero*, 12 N.Y.3d 45, 49 (N.Y. 2009) (explaining that a surcharge is defined

as an additional cost).  BA describes the usual cost for a flight as a "fare."  *See* General

Conditions at 4a5.  In other words, BA is not permitted to use a "surcharge" to pay for any costs

that should be covered by the fare; moreover, "[f]uel costs are obviously one of the major

operating costs for any airline, and therefore a reasonable person would expect the fares to cover

the airline's normal anticipated fuel costs."  Lichtman Decl., Ex. B (Sutcliffe Rep.) at ¶ 58.

### b.      The Contract Does Not Authorize BA to Impose Its Own Charges On Members.

While the Contract explains that Members may be responsible for a "fuel surcharge," it

defines that term as a fee or tax imposed *on* BA, not *by* BA.  As indicated above, the relevant

portion of the Contract provides:

> Members will be liable for all taxes and other charges associated
> with Reward travel on British Airways or a Service Partner airline,
> including without limitation, airport departure tax, customs fines,
> immigration fees, airport charges, customer user fees, fuel
> surcharges, agricultural inspection fees, security and insurance
> surcharge or other incidental fees or taxes charged by any person
> or relevant authority or body.

Compl. at ¶ 40 (quoting Contract at § 13.14).

Under English Law, when there are specific terms that belong to a particular class, more

general terms that follow are interpreted as belonging to the class of words implied by the more

specific term.  Lichtman Decl., Ex. B (Sutcliffe Rep.) at ¶¶ 30-31, 63-65, 70; *accord Regent Ins.

Co. v. Storm King Contr., Inc.*, No. 06 Civ. 2879, 2008 U.S. Dist. LEXIS 16513, at *23

-15-

(S.D.N.Y. Feb. 26, 2008) ("[W]hen there is a series of specific defining words following a more general term, the general term takes on the meaning of the more defined items in the descriptive list." (internal citation omitted)). This is known as the interpretive principle of *ejusdem generis*, and under this principle, because the specific words such as "airport departure tax" and "customs fines" are all "levied by third parties on British Airways" and "not within the control of British Airways", the more general term "fuel surcharge" must be interpreted in this way as well. *See* Lichtman Decl., Ex. B (Sutcliffe Rep.) at ¶¶ 65, 70; *accord Regent*, 2008 U.S. Dist. LEXIS 16513, at *23; *accord also Barkwell v. Sprint Communs. Co. L.P.*, No. 4:09-cv-56, 2010 U.S. Dist. LEXIS 128831, at *14-16 (M.D. Ga. Dec. 6, 2010) (holding that similar contractual language only allowed a telecommunications company to impose charges imposed by a third-party).

This interpretation of the Contract, moreover, is reinforced by the General Conditions.  In relevant part, they provide:

> Taxes, fees and charges change constantly and can be imposed or altered after the date we have issued your ticket.  **If they change** or **if a new tax, fee or charge is imposed** after we have issued your ticket, you will have to pay us any increase.  Similarly, **if any taxes, fees or charges** you pay to us when we issue the ticket **are then abolished or reduced**, you will be entitled to claim a refund from us.  If you are a resident of, and your flight departs from, the Federal Republic of Germany, any increase in taxes, fees or charges will not be applied in the period of 4 months from the date of purchase of the ticket.

General Conditions § 4(b)(3) (emphasis added).  As Mr. Sutcliffe observes, this language "strongly indicates that British Airways is not the party responsible for increasing or decreasing a tax, fee or charge but is merely the conduit through which these taxes, fees and charges are passed."  Lichtman Decl., Ex. B (Sutcliffe Rep.) at ¶ 68.

-16-

None of British Airways' arguments can change the above result.  First, BA argues that the use of the word "or" in the Contract must be read disjunctively; i.e., that the phrase "other incidental fees or taxes charged by any person or relevant authority or body" cannot modify the words that precede it.  (BA Br. at 15.)  Setting aside that this could not alter the result mandated by the principle of *ejusdem generis*, it is also wrong.  *See* Lichtman Decl., Ex. B (Sutcliffe Rep.) at ¶ 73 (collecting cases).  Second, and in considerable tension with its first argument, BA asserts that the phrase "surcharge or other incidental fees or taxes charged by any person" authorizes it to impose a fuel surcharge because corporations are people.  (BA Br. at 16.)  Whatever the merits of this argument in some other context, however, it would be rejected by an English court because "[t]hroughout the Contract, any provisions which confer a right or impose an obligation on British Airways refer expressly to British Airways."  *See* Lichtman Decl., Ex. B (Sutcliffe Rep.) at ¶¶ 65-66.  Finally, BA argues that the words "without limitation" mean that BA can charge whatever it wishes.  (BA Br. at 16.)  This is misguided, because under English Law, "without limitation" indicates that the list of terms is not exhaustive, but it does not somehow override the principle of *ejusdem generis*.  *See* Lichtman Decl., Ex. B (Sutcliffe Rep.) at ¶ 64.

### c. <u>The Duty of Good Faith and Fair Dealing Applies to the Contract.</u>

English Law recognizes a duty of good faith and fair dealing.  Lichtman Decl., Ex. B (Sutcliffe Rep.) at ¶¶ 32-39 (discussing *Yam Seng Pte Limited v. International Trade Corporation Limited* [2013] EWHC 111 (QB)).[10]  The duty of good faith and fair dealing is implied into certain contracts to protect the parties' reasonable expectations.  *See id*.  To the

---

[10] Indeed, in a case in which BA's counsel in this case was acting for the respondent, in an opinion issued shortly before the Stone Opinion was submitted in these Proceedings, the English Court of Appeals addressed the implied duty of good faith as discussed in *Yam Seng Pte Ltd*.  *See Mid Essex Hospital Services NHS Trust v Compass Group UK and Ireland Ltd (t/a Medirest)* [2013] EWCA Civ 200 at 105 et seq.

-17-

extent, then, that the Contract could be interpreted to give BA the discretion to impose "whatever charge it wished" (and it should not be, for the reasons explained above), the duty of good faith and fair dealing would still circumscribe this discretion "to apply a fuel surcharge only when fluctuations in the price of oil results in unexpected and sudden changes to the price of fuel made by third parties which it did not factor into its basic fare."  Lichtman Decl., Ex. B (Sutcliffe Rep.) at ¶ 82.

### C.   <u>Plaintiffs' Claim Is Not Preempted By The ADA.</u>

BA argues that Plaintiffs' claim is preempted by the ADA (*see* Br. at 20-25), but controlling case law holds otherwise.  Courts have consistently upheld contract claims analogous to those at issue here.  *See, e.g.*, *In re Jetblue*, 379 F. Supp. 2d  at 314; *Aretakis v. Fed. Express Corp.*, No. 10 Civ. 1696, 2011 U.S. Dist. LEXIS 22022 at *11 (S.D.N.Y. Feb. 28, 2011) (**"**Supreme Court jurisprudence makes clear that the ADA's preemption language does not bar Aretakis from prosecuting a breach of contract cause of action."); *cf. Ginsberg v. Northwest, Inc.*, 695 F.3d 873, 881-82 (9th Cir. 2012) ("We conclude that a claim for breach of the implied covenant of good faith and fair dealing is not preempted by the ADA.").[11]  The rule is straightforward:  while the ADA preempts any state-imposed obligations such as state consumer fraud law, "the ADA does not preclude adjudication of a contractual claim where the suit seeks recovery solely for the airline's alleged breach of its own, self-imposed undertakings' and does not allege violation of any state-imposed obligations."  *Wolens*, 513 U.S. at 228.  The Supreme Court explained clearly that an airline must adhere to its contracts or be subject to suit for breach:

---

[11] Different courts have reached conflicting conclusions about the duty of good faith and fair dealing under the ADA, and Northwest has filed a petition for certiorari.  The Court need not reach this issue.

> [T]erms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's enactment or enforcement of any law, rule, regulation, standard, or other provision having the force and effect of law… A remedy confined to a contract's terms simply holds parties to their agreements — in this instance, to business judgments an airline made public about its rates and services.

*Id.* at 228-29. *Wolens*, moreover, involved claims about the terms and conditions of an airline's frequent flier program, the precise situation before the Court here. *See id.*

### 1.   The Contract Is A Self-Imposed Undertaking Expressly Excluded By the *Wolens* Exception From the ADA Preemption Clause.

As explained above, passengers' claims that an airline has breached terms contained in its own contracts are not preempted by the ADA. *Wolens*, 513 U.S. at 228-29; *In re Jetblue*, 379 F. Supp. 2d at 313-14 ("[A]pplication of state law to honor private bargains does not threaten to undermine federal deregulation in the same way that enforcement of state public policy would."); *Fondo v. Delta Air Lines, Inc.,* No. 00 Civ. 24452001 U.S. Dist. LEXIS 7098, at *5 (S.D.N.Y. May 31, 2001) ("Private contractual agreements and common law remedies for their breach do not implicate state policies enacted for the purpose of regulating airlines."); *Donkor v. British Airways Corp.*, 62 F. Supp. 2d 963, 971 (E.D.N.Y. 1999) (Trager, J.) ("Breach of contract claims are not preempted by the Airline Deregulation Act."); *cf. In re Nig. Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 469 (E.D.N.Y. 2007) (Dearie, J.) (explaining that "some state actions may affect [airline rates, routes or services] in too tenuous, remote or peripheral a manner' [for the ADA] to have a pre-emptive effect.").

Plaintiffs' claim is a straightforward contract claim that lies squarely within the *Wolens* exception. *See, e.g.*, *Giannopoulos v. Iberia Líneas Aéreas de España, S.A.*, No. 11C 775, 2011 U.S. Dist. LEXIS 82304, at *9-12 (N.D. Ill. July 27, 2011) (collecting cases for the proposition that airlines must abide by the terms of their contracts). BA *chose* to denominate the Fuel

Surcharge as a "fuel surcharge"; this is the quintessential example of an undertaking that an airline imposes on itself. *See Wolens*, 513 U.S. at 228-29; *see also, In re Jetblue*, 379 F. Supp. 2d at 313-14. And BA's cases are not to the contrary: all focus on obligations imposed by the state, rather than those imposed by an airline on itself. *See, e.g.*, *Buck v. American Airlines, Inc.*, 476 F.3d 29, 36-37 (1st Cir. 2007) (suit over state-mandated fees and taxes preempted); *Statland v. American Airlines, Inc.*, 998 F.2d 539 (7th Cir. 1993) (state regulation of ticket prices preempted); *McMullen v. Delta Air Lines, Inc.*, No. 08-1523 JSW, 2008 U.S. Dist. LEXIS 75720 (N.D. Ca. Sept 30, 2008) (state-mandated tax preempted); *cf. Volodarskiy v. Delta Air Lines, Inc.* No. 11 C 00782, 2012 U.S. Dist. LEXIS 154831, at *22-23 (N.D Ill., Oct. 29, 2012) (airline not subject to suit for violation of EU regulation that had not been expressly incorporated into its contract). To the extent that BA would like to argue that Plaintiffs' claim is preempted, it will have to make that argument to the Supreme Court. *Wolens*, 513 U.S. at 228-29.

## 2.  Because Plaintiffs' Claim Is Not A Consumer Protection Claim, British Airways' Implied Preemption Argument Fails.

British Airways raises the issue of implied preemption. (*See* Br. at 24-25.) While all of BA's statements about implied preemption appear to be true, it is unclear why they might be relevant here. Implied preemption is a doctrine that applies to prevent states from issuing laws or regulations when a federal regulator has wholly occupied the field; of particular relevance, the Department of Transportation ("DOT") retains authority to prohibit "unfair or deceptive practice[s] … in air transportation or the sale of air transportation." 49 U.S.C.§ 41712(a); *see also Spirit Airlines, Inc. v. Dep't of Transportation*, 687 F.3d 403, 408 (D.C. Cir. 2012). But this litigation involves no state laws or regulations and no claim of "deceptive practices," rather, Plaintiffs bring suit for breach of a contract drafted and voluntarily entered into by BA itself. British Airways' reference to implied preemption is therefore a non-sequitur.

V.     <u>**CONCLUSION**</u>

For the aforementioned reasons, Plaintiffs state a claim for relief.  Accordingly, they

respectfully ask the Court to deny BA's Motion to Dismiss.


Dated:  May 10, 2013                    Respectfully submitted,


                                        */s/ David S. Stellings*
                                            David S. Stellings

                                        David S. Stellings (dstellings@lchb.com)
                                        Nicholas Diamand (ndiamand@lchb.com)
                                        Jason L. Lichtman (jlichtman@lchb.com)
                                        Douglas I. Cuthbertson (dcuthbertson@lchb.com)
                                        **LIEFF CABRASER HEIMANN &**
                                          **BERNSTEIN, LLP**
                                        250 Hudson Street, 8th Floor
                                        New York, NY  10013-1413
                                        212.355.9500

                                        Clive Zietman (czietman@stewartslaw.com)
                                        Fiona Stewart (fstewart@stewartslaw.com)
                                        Daniel Loblowitz (dloblowitz@stewartslaw.com)
                                        **Stewarts Law, LLP**
                                        5 New Street Square
                                        London, UK EC4A 3BF
                                        Telephone: +44 (0)20.7822.8000

                                        Mark Schlachet (mschlachet@gmail.com)
                                        3515 Severn Road
                                        Cleveland, Ohio 44118
                                        (216) 896-0714

                                        *Attorneys for Plaintiffs*

-21-