UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
RUSSEL DOVER, JONATHAN STONE,
CODY RANK, and SUZETTE PERRY, on
behalf of themselves and all others similarly
situated,

                    Plaintiffs,

              - against -

BRITISH AIRWAYS, PLC (UK)

                    Defendant.
-------------------------------------------------------------- x

**MEMORANDUM & ORDER**

12 CV 5567 (RJD) (MDG)

DEARIE, District Judge:

      In this putative class action lawsuit, members of defendant British Airways' frequent flyer program allege that the airline violated the program contract by imposing impermissible fuel surcharges on rewards flights. More specifically, the plaintiffs assert that the fuel surcharges assessed by British Airways were not actually based on the cost of fuel. British Airways moves to dismiss on the grounds that the lawsuit (1) is preempted by federal regulations and (2) fails to plausibly allege that the fuel surcharges were not based on the cost of fuel. For the reasons set forth below, the Court denies the motion to dismiss.

      British Airways offers a frequent flyer program known as the Executive Club. Executive Club members accumulate points—called Avios—for engaging in various activities, such as flying on British Airways or its partner airlines or using a particular credit card. Avios can be used for many purposes, but are often redeemed for airplane tickets. They do not, however, cover the entire cost of the reward tickets. Instead, Executive Club members must pay certain fees and charges.

In order to join the Executive Club, individuals who reside in the United States enter into a contract called the Executive Club Terms and Conditions (the "Terms and Conditions"). According to the Terms and Conditions:

> . . . Members will be liable for all taxes and other charges associated with Reward travel on British Airways or a Service Partner airline, including without limitation, airport departure tax, customs fines, immigration fees, airport charges, customer user fees, <u>fuel surcharges</u>, agricultural inspection fees, security and insurance surcharge or other incidental fees or taxes charged by any person or relevant authority or body.

Terms and Conditions, Section 13.14 (emphasis added).[1]

Fuel surcharges are imposed on all purchasers of British Airways tickets, whether or not they are using Avios. These fuel surcharges vary by the duration of the flight, the class of the ticket, and the region in which tickets are purchased. They have also varied over time. On its website, British Airways states that the fuel surcharges "reflect the fluctuating price of worldwide oil." The fuel surcharges applicable at any given moment are set forth in the International Passenger Rules and Fares Tariff, which British Airways files publicly as required by federal law. <u>See generally</u> 14 C.F.R. Part 221.

According to the plaintiffs, British Airways "did not tie its fuel surcharges to fuel prices. Instead, [it] used the fuel surcharge as an opportunity to charge its Executive Club members hundreds of dollars for each 'free' reward ticket, to increase its own revenue regardless of

---

[1] All purchasers of British Airways tickets enter into a separate contract called the General Conditions of Carriage for Passengers and Baggage (the "Conditions of Carriage") at the time of purchase. Section 4 of the Conditions of Carriage covers "Fares, surcharges, taxes, fees and charges and currency" and subsection 4(a)(v) provides that British Airways "may charge any surcharge to the fare for your ticket which applies under our tariff on the date you pay for your ticket, for example a fuel or insurance surcharge."

2

whether fuel prices were high or low." Compl. ¶ 10. The plaintiffs support this assertion with three sets of factual allegations.

First, the plaintiffs describe the sizeable surcharges that they each paid on recent British Airways flights. Russell Dover, Jonathan Stone, Cody Rank, and Suzette Perry joined the Executive Club at various points between 1996 and 2011. In 2012, each redeemed Avios for flights between the United States and destinations in Europe. Dover booked two first-class, round-trip tickets from San Francisco to Heathrow airport in the United Kingdom and paid $854 in fuel surcharges. Id. ¶¶ 15-20. He alleges that British Airways charged him more in fuel surcharges for the rewards flights than it would have charged him for two economy flights on the same route. Id. ¶ 19. Stone booked flights from New York City to Heathrow and back. Id. ¶ 23. He paid $750 in assorted charges, the majority of which were fuel surcharges. Id. ¶ 24. Rank booked two round-trip economy tickets from Seattle to Amsterdam connecting through Heathrow. Id. ¶ 26. He paid $1437 in assorted charges, the majority of which were fuel surcharges. Id. ¶ 37. And Perry booked five economy tickets from Los Angeles to Heathrow, paying a total of $3293 in surcharges. Id. ¶¶ 29-30. The complaint does not specify what portion of these surcharges were attributable to fuel.

The plaintiffs also point to British Airways' annual report, which states that British Airways hedges its exposure to swings in the price of fuel by purchasing oil derivatives in forward markets. Id. ¶¶ 47-48. The plaintiffs allege that British Airways' failure to characterize the fuel surcharges as an additional means of hedging against price volatility suggests that the surcharges are not actually tied to the price of fuel. Id. ¶¶ 48-49.

Finally, the plaintiffs support their claim with a statistical analysis of the fuel surcharges imposed by British Airways on flights from the east and west coasts of the United States to Heathrow from 2007 to 2012. Id. ¶¶ 50-55. According to the plaintiffs, this analysis shows that the fuel surcharges bore little relationship to changes in the price of fuel. Id. ¶ 55.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A complaint has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Deciding whether the complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. At the motion to dismiss stage, of course, the court accepts all allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiffs. Interpharm, Inc. v. Wells Fargo Bank, N.A., 655 F.3d 136, 141 (2d Cir. 2011). "Where, as in this case, certain contracts are integral to the complaint, [the court will] consider those documents in deciding the merits of the motion." Id.

British Airways first argues that the plaintiffs' claim is preempted by the federal Airline Deregulation Act (the "ADA"). The ADA, enacted in 1978, "largely deregulated domestic air transport." Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 222 (1995). "To ensure that the States would not undo federal deregulation with regulation of their own, the ADA included a preemption clause[.]" Id. (citing Morales v. Trans World Airlines, Inc., 504 U.S. 374, 379 (1992)) (internal quotations omitted). That clause forbids states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier[.]" 49 U.S.C. § 41713(b)(1).

The Supreme Court has twice visited the scope of the ADA preemption clause, in each instance addressing a different phrase. In Morales, the Court read the phrase "related to a rate, route, or service" expansively.[2] 504 U.S. at 383-90. It concluded that state laws regulating fare advertising were "related to rates" and thus preempted. Id.; see also In re JetBlue Airways Corp. Privacy Litig., 379 F. Supp. 2d 299, 312-13 (E.D.N.Y. 2005) (Amon, J.) (summarizing Morales).

In Wolens, the Court addressed the phrase "enact or enforce any law[.]" 513 U.S. at 226. Members of the American Airlines frequent flyer program alleged that certain retroactive changes to their frequent flyer credits violated Illinois consumer protection laws and breached their contracts with American Airlines. Id. at 224-26. The Supreme Court ruled that the consumer protection claims were preempted, but allowed the breach of contract claims to proceed. Id. at 227-32. Applying Morales, the Court held that the claims in Wolens related to rates. 513 U.S. at 226. For that reason, the claims based on Illinois consumer protection laws were preempted. Id. at 227-28. However, the Court allowed the contract claims to proceed because the "terms and conditions airlines offer and passengers accept are privately ordered obligations and thus did not amount to the 'enactment or enforcement of any law, rule, regulation, standard or other provision having the force and effect of law.'" Id. at 228-29 (certain internal quotations and punctuation omitted). The Court emphasized that the "distinction between what the State dictates and what the airline itself undertakes confines

---

[2] Until 1994, the preemption clause had a slightly different wording. In particular, it employed the word "rates" instead of "prices," and read (in relevant part): "no state . . . shall enact or enforce any law, rule, regulation, standard or other provision having the force and effect of law relating to rates, routes or services of any air carrier." 49 U.S.C. § 1305(a) (1993). Morales and Wolens dealt with the pre-1994 version of the clause, "but there is no material difference between that formulation" and the clause as it presently stands. Weiss v. El Al Israel Airlines, Ltd., 433 F. Supp. 2d 361, 369 n.10 (S.D.N.Y. 2006) (Lynch, J.).

courts, in breach of contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." Id. at 233.

British Airways contends that the contract claim at issue here is preempted by the ADA. The arguments that British Airways deploys in support of this contention, however, are foreclosed by Wolens. First, British Airways argues that the plaintiffs' claim is pre-empted because it relates to the price of airfare and because it resembles a state law consumer protection claim that would otherwise be preempted. Def. Mem. at 21-22, 24. The Wolens court, however, explicitly rejected both arguments. 513 U.S. at 226, 233. As Wolens makes clear, the ADA does not preempt contract claims, whether or not they relate to pricing or would otherwise be precluded if articulated under state consumer protection laws.

British Airways also argues that plaintiffs' contract claim is preempted because it is inappropriately "enlarge[d] or enhance[d] based on state laws or policies external to the agreement." Id. at 233; see Def. Mem. at 23-24. In support of this argument, British Airways cites cases in which courts have held that the ADA preempted contract claims that were premised on allegations that the defendant airlines violated federal, state, and foreign laws that were implicitly incorporated into the contracts in question. See, e.g., Onah v. Northwest Airlines, Inc., 613 F.3d 596, 600-01 (5th Cir. 2012) (preempting claim premised on violations of the Schengen Agreement, which plaintiffs alleged was implicitly incorporated in contract by generic obligation to comply with applicable laws); Buck v. Am. Airlines, Inc., 476 F.3d 29, 36-37 (1st Cir. 2007) (preempting contract claim premised on implicit incorporation of federal regulations); McMullen v. Delta Air Lines, Inc., No. 08-1523, 2008 WL 4449587, at *2-5 (N.D. Cal. Sept. 30, 2008) (White, J.) (preempting contract claim premised on implicit incorporation of Mexican law); A.I.B. Express, Inc. v. FedEx Corp., 358 F. Supp. 2d 239, 253 (S.D.N.Y. 2004)

(Scheindlin, J.) (preempting contract claim premised on a breach of the contract as purportedly modified by the New York state law implied covenant of good faith and fair dealing).[3]

These cases, however, cannot be analogized to the circumstances at hand. While the federal Department of Transportation (the "DOT") regulates deceptive practices in airline advertisement, including misleading fuel surcharges,[4] the plaintiffs do not rely upon or reference DOT regulations or any other "state laws or policies" to frame their complaint. They rely solely upon the contractual definition of the term "fuel surcharges." Like the plaintiffs in Wolens, the plaintiffs here ask the Court to consider only "the parties' bargain" as expressed in the Terms and Conditions. 513 U.S. at 233.

Finally, British Airways suggests that the lawsuit is impliedly preempted because the federal government "occupies the field" of airline pricing regulation. Def. Mem. at 24-25. The contract claims at issue in Wolens also implicated airline pricing and disclosure, yet the Supreme Court did not apply the doctrine of implied preemption. This Court will not invoke implied

---

[3] Compare Giannopoulos v. Iberia Lineas Aereas de Espana, No. 11-775, 2011 WL 3166159, at *1-3 (N.D. Ill July 27, 2011) (Lefkow, J.) (no preemption where claim was based on explicit—and thus self-imposed—contractual obligation to make payments in accordance with European Union regulations).

[4] The DOT regulates air travel, including "unfair or deceptive practices" by air carriers. See 49 U.S.C. § 41712. DOT regulations provide that, "[a]lthough charges included within the single total price [of a plane ticket] (e.g. government taxes) may be stated separately . . . , such charges may not be false or misleading . . . and must provide cost information on a per passenger basis that accurately reflects the cost of the item covered by the charge." 14 C.F.R. § 399.84. According to recent DOT guidance, "[w]hen a cost component is described as a fuel surcharge . . . that amount must actually reflect a reasonable estimate of the per-passenger fuel costs incurred by the carrier above some baseline calculated based on such factors as the length of the trip, varying costs of fuel, and number of flight segments involved." DOT, Additional Guidance on Airfare/Air Tour Price Advertisements 2 (Feb. 21, 2012). In the context of the redemption of frequent flyer points, fuel surcharges "must be fairly disclosed and an accurate reflection of actual costs." Id. at 3.

preemption where the Supreme Court has declined to do so. Plaintiffs' claim is neither expressly preempted by the ADA nor impliedly preempted by the federal government's regulatory purview.[5]

The Court now turns to the Terms and Conditions. The complaint alleges, in essence, that the so-called fuel surcharges imposed by British Airways are not the fuel surcharges permitted by the Terms and Conditions.[6] As the plaintiffs put it, "the 'fuel surcharge' is not a charge based on the price of fuel." Compl. ¶ 7.

The parties agree that the Terms and Conditions are governed by English law.[7] In the United Kingdom, "[t]he primary source for understanding what the parties meant is their

---

[5] The Supreme Court recently granted certiorari in Ginsberg v. Northwest, Inc., 678 F.3d 873 (9th Cir. 2012), cert. granted 133 S. Ct. 2387 (2013). In Ginsberg, a frequent flyer alleged that Northwest's decision to terminate his membership in its frequent flyer program violated California's implied covenant of good faith and fair dealing, even though the contract expressly provided Northwest with the absolute right to terminate membership in the program. 678 F.3d at 874-75. The Ninth Circuit held that the claim was not preempted by the ADA. Id. at 877-80. Because the plaintiffs here rely on explicit contractual terms and do not invoke any common law implied covenant of good faith or fair dealing, it is unlikely that the Supreme Court's forthcoming decision in Ginsberg will have any bearing on the preemption analysis in this case.

[6] The plaintiffs also contend that the Terms and Conditions require that the fuel surcharges be imposed on British Airways by a third party and directly passed along to ticket purchasers. Nothing in the plain meaning or common usage of the term, however, requires such a restrictive definition.

[7] The parties have each submitted an English Law Opinion drafted by an English lawyer and supported with legal precedent. "In determining foreign law, the court may consider any relevant material or source, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. Accordingly, the Court applies English law drawn from the English Law Opinions. The plaintiffs make much of the fact that their English Law Opinion is proffered by a barrister rather than a solicitor (as is the defendant's English lawyer). That distinction is of no consequence in this context.

8

language interpreted in accordance with conventional usage."[8] Def. English Law Opinion ¶ 4.2.1 (quoting Bank of Credit & Commerce Int'l SA (in compulsory liquidation) v Ali [2001]). The parties do not dispute this principle. Nor is it inconsistent with the approach of New York courts. See, e.g., Greenfield v. Philles Records, 98 N.Y.2d 562, 569 (2002).

The plain meaning of the term "fuel surcharge" is a supplemental charge that is reasonably related to or based upon the cost or price of fuel. This understanding comports with conventional usage. Most—if not all—commercial airplane passengers are aware that the price of jet fuel rises and falls. Against this backdrop, the typical consumer would consider a fuel surcharge to be an added charge imposed by an airline in order to defray rising fuel costs. British Airway appears to concede this point: it devotes significant briefing to demonstrating that "the relationship between the fuel surcharge and the fluctuating price of refined jet fuel is real," Def. Mem. at 20; see also id. at 3-7, and its English law expert describes the fuel surcharge as "a discrete charge linked to the price of fuel." Def. English Law Opinion ¶ 5.10.1.

The question then becomes whether the plaintiffs have pled factual content that allows the Court to draw the plausible inference that the fuel surcharges imposed by British Airways were not, in fact, reasonably related to or based upon the price or cost of fuel. The plaintiffs support their claim with descriptions of the sizeable fuel surcharges that they paid when

---

[8] British Airways argues that the Conditions of Carriage are governed by the laws of the individual states in which the plaintiffs purchased the tickets and urges the Court to apply the contract laws of those states. Yet because British Airways does not describe the contract law of those states, the impact and import of this distinction are not readily apparent. Nor is it apparent that there is any conflict between English contract law and the various state contract laws—which is the threshold question for conflict of laws analysis in New York. Cf. Nigerian Charter Flights Contract Litig., 520 F. Supp. 2d 447, 457-59 (E.D.N.Y. 2007) (Dearie, J.) (describing New York conflict of law principles and declining to conduct independent investigation where the party asserting a potential conflict of laws did not describe the content of the potentially conflicting law).

9

redeeming Avios for flights on British Airways. Compl. ¶¶ 13-30. They allege that the fuel surcharge that Dover paid for a first-class ticket to Heathrow exceeded the cost of an economy-class ticket on the same flight. Id. ¶ 19. They also point to an omission in the annual report published by British Airways that suggests that the airline does not view the fuel surcharges as a hedging strategy against fluctuating fuel costs, and hence that the fuel surcharges do not actually reflect the cost of fuel. Id. ¶¶ 46-49. And perhaps most importantly, the plaintiffs describe a statistical analysis that indicates that the fuel surcharges imposed by British Airways from 2007 to 2012 "bore little relationship to—and were not based upon—changes in the price of fuel." Id. ¶ 55. British Airways attacks the assumptions that undergird plaintiffs' analysis. It also proffers its own analysis showing that the fuel surcharge is correlated with the price of oil. At this stage, however, this Court is not called upon to judge the merits of the competing analyses. Assuming that plaintiffs' factual allegations are true and drawing reasonable inferences in their favor, as the Court must, they have stated a plausible claim for breach of the Terms and Conditions.

For the reasons stated above, the defendant's motion to dismiss is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
   November 7, 2013

s/Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge