UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
RUSSEL DOVER, JONATHAN STONE,
CODY RANK, and SUZETTE PERRY, on
behalf of themselves and all others similarly
situated,

                       Plaintiffs,

          - against -

BRITISH AIRWAYS, PLC (UK)

                       Defendant.
-------------------------------------------------------------- x

**MEMORANDUM & ORDER**

12 CV 5567 (RJD) (MDG)

DEARIE, District Judge:

      British Airways seeks reconsideration of this Court's November 7, 2013 Memorandum and Order denying its motion to dismiss and, in the alternative, certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "The applicable standard is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the court." Nielsen v. New York City Dep't of Educ., 2007 WL 2743678, at *1 (E.D.N.Y. Sept. 18, 2007) (Garaufis, J.).

      The motion for reconsideration takes issue with the Court's assessment of the plausibility of the plaintiffs' complaint and its analysis of the preemption clause of the Airline Deregulation Act (the "ADA"). For the most part, British Airways rehashes the same arguments set forth in its motion to dismiss: that the plaintiffs failed to plead sufficient factual allegations to state a plausible claim; that Wolens v. Am. Airlines, Inc., 513 U.S. 219 (1995), which generally

exempts contract claims from ADA preemption, does not cover "pricing" claims; that the plaintiffs' contract claim is preempted because it relies on factors outside of the Executive Club contract; and that the Supreme Court's decision to grant certiorari in Nw., Inc. v. Ginsberg, No. 12-462, 133 S. Ct. 2387 (May 20, 2013), suggests that the Wolens exemption will soon be circumscribed. The Court rejects the renewed assertion of these arguments for the same reasons set forth in the November 7, 2013 ruling. See Nov. 7, 2013 Mem. at 6-8, 8 n.5, 9-10.

For the sake of completeness, however, the Court specifically addresses several issues. First, the parties dispute the nature of the plaintiffs' statistical analysis. British Airways supposes that that analysis was based on crude oil, rather than jet fuel, and argues that it should be disregarded on that ground. The plaintiffs respond that the analysis was in fact based on the price of jet fuel (and offer to file an affidavit to that effect). The complaint does not indicate otherwise: it describes the statistical analysis as comparing the surcharges to "the cost of fuel." Compl. ¶¶ 50, 55. While the heading of the section discussing the statistical analysis states that "BA's 'Fuel Surcharge' is Not Based on the Fluctuating Price of Worldwide Oil," this heading apparently refers to British Airways' website statement that the fuel surcharges "reflect[ed] the fluctuating price of worldwide oil." Compare id. at 10, with id. ¶ 7. The Court takes the plaintiffs at their word and draws the reasonable inference that the statistical analysis is based on the price of jet fuel, rather than crude oil.[1]

British Airways also invokes two previously uncited district court cases for the proposition that the plaintiffs' statistical analysis lacks sufficiently detailed explanation of its

---

[1] Even if the analysis was based on crude oil pricing, it would still suggest that the plaintiffs' claim is plausible. Because crude oil is the source of jet fuel, it is reasonable to infer that the price of crude oil and the price of jet fuel are correlated under normal circumstances and thus that a statistical analysis should show some meaningful relationship between crude oil prices and the fuel surcharges.

2

inputs and results and is thus "a conclusory assertion that is not entitled to a presumption of truthfulness." Def. Mem. at 12. According to the complaint, the statistical analysis compares two variables: (1) the fuel surcharges that British Airways imposed between 2007 and 2012 on flights between the United States and Heathrow, and (2) "the fluctuating cost of fuel." The first variable is specific. The second is less specific, but sufficiently clear. The complaint states that the analysis showed that no more than 15 to 40 percent of the changes in the fuel surcharges could be attributed to changes in the cost of fuel. At this level of particularity, the statistical analysis is not a conclusory assertion; it is a factual allegation that the Court must credit.

Moreover, the Court does not read the cases cited by British Airways—which are not, in any event, "controlling decisions"—to require that statistical analyses be plead in great detail. It reads them, rather, to stand for the common-sense proposition that, in order to render a claim plausible, a statistical analysis must be sufficiently probative of the elements of that claim. See In re Commodity Exch., Inc. Silver Futures & Options Trading Litig., 2013 WL 1100770, at *4 (S.D.N.Y. Mar. 18, 2013) (Patterson, J.) (statistical analysis showing market fluctuations did not link those fluctuations to the activities of the defendant); Hinds Cnty. v. Wachovia Bank N.A., 708 F. Supp. 2d 348, 360-61 (S.D.N.Y. 2009) (Marrero, J.) (statistical analysis of municipal securities auctions did not show bid differentials rising to levels suggesting collusion). Unlike those cases, the statistical analysis here purports to show little correlation between fuel prices and the fuel surcharges, which suggests that the fuel surcharges were not reasonably related to or based upon the cost or price of fuel—which is what the plaintiffs must demonstrate to prevail on the merits. See Nov. 7, 2013 Mem. at 9.

Finally, British Airways makes much of the fact that the fuel surcharges are also referenced in a separate contract, called the Conditions of Carriage, into which all ticket

3

purchasers must enter. Like the Executive Club contract, the Conditions of Carriage contract authorizes British Airways to impose a fuel surcharge. See Nov. 7, 2013 Mem. at 2 n.1. Wolens generally exempts contract claims from ADA preemption, so it is not readily apparent why a reference to fuel surcharges in the Conditions of Carriage contract would require preemption of the plaintiffs' Executive Club contract claim. British Airways cites no cases in support of this argument. Instead, it suggests that the reasoning of the November 7, 2013 ruling would somehow permit "[v]irtually every dispute between an airline and its customer [to be] disguised as a breach of contract claim to end run ADA preemption and make it effectively worthless." Def. Mem. at 15. The Court is not persuaded of the accuracy of this prediction. And regardless, the Court must apply Wolens, which holds that the ADA does not preempt contract claims like the claim here.

As should be clear from the preceding paragraphs, British Airways has not identified "a controlling question of law as to which there is substantial ground for difference of opinion," as 28 U.S.C. § 1292(b) requires. The November 7, 2013 Memorandum and Order is thus inappropriate for interlocutory certification.

For the reasons stated above, the defendant's motion is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
       January 24, 2014                    /s/ Judge Raymond J. Dearie

                                           _____
                                           RAYMOND J. DEARIE
                                           United States District Judge

4