

**DLA Piper LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
www.dlapiper.com

Keara M. Gordon
keara.gordon@dlapiper.com
**T**  212.335.4632
**F**  212.884.8632

June 25 , 2014

*VIA ECF*

The Honorable Marilyn D. Go
United States Magistrate Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East, Room 1214-S
Brooklyn, New York 11201

Re:     *Dover, et al. v. British Airways, PLC (UK)*, No. 12-cv-05567-RJD-MDG

Your Honor:

British Airways, PLC ("BA") respectfully requests, pursuant to Federal Rule of Civil Procedure 26(b)(5)(B), Local Civil Rule 37.3, and your Honor's Individual Motion Practices, an order compelling production of the plaintiffs' "r-squared" analysis (the "R-Squared Analysis").

The plaintiffs described the R-Squared Analysis in their Complaint, and relied upon it at oral argument on BA's motion to dismiss. (Complaint, ¶¶ 50-55; Tr. September 20, 2013, at 10:3-12:4, 12:22-17:25, Ex. A.)  Judge Dearie, in turn, in denying BA's motion to dismiss, considered the R-Squared Analysis to be the "most important[]" allegation in the Complaint because it purported to demonstrate that BA's "fuel surcharges . . . 'bore little relationship to – and were not based upon – changes in the price of fuel.'" (Mem. & Order dated November 7, 2013 (Dkt No. 52) at 10.)  Despite the fact that the R-Squared Analysis is factual in nature and notwithstanding that the plaintiffs have squarely placed it at issue in this action, produced it repeatedly, and permitted its marking as an exhibit and questioning on it at a deposition, the plaintiffs are now attempting to withhold critical aspects of the analysis under a cloak of work product protection.  The parties have met and conferred and, as discussed in more detail below, have been unable to reach a resolution such that court intervention is now required to resolve the dispute.

A history of the chronology of events leading up to this dispute is set forth in Exhibit B.  In summary, on December 20, 2013, BA served a document request seeking all documents relating to the R-Squared Analysis.  (Ex. C.)  The plaintiffs initially refused to produce it, then produced it, and then notified BA that they had inadvertently produced a purportedly privileged version of the R-Squared Analysis and sought its destruction.  On March 7, the plaintiffs produced a revised, non-privileged version, which does not contain any of the calculations that purportedly support the plaintiffs' allegation that BA's fuel surcharge is not sufficiently linked to the price of jet fuel. (BA-PLTF-0000091, Ex. D.)  On May 2, 2014, the plaintiffs reproduced their prior productions in order to address various deficiencies, and in so doing, produced two additional versions of the R-Squared Analysis. (BA-PLTF-000345-378 and BA-PLTF-000281, Exs. E and F).



On May 23, 2014, BA introduced BA-PLTF-000345, one of the new R-Squared Analyses, during the deposition of named plaintiff Cody Rank, as Defendant's Exhibit 19. Counsel for BA marked the exhibit, and the plaintiffs' counsel did not object. (Rank Dep. Tr. 222:12-231:16, attached as Ex. G.) Counsel for BA then proceeded to question Mr. Rank extensively about the document, and counsel for the plaintiffs did not object and did not assert that the document was privileged or that it was inadvertently produced. (Id.) Quite the contrary, they permitted the extensive questioning.

Six days later, the plaintiffs again notified BA that they had, for a second time, allegedly inadvertently produced the R-Squared Analysis. (Ex. H.) BA disputed the validity of the privilege assertion. (Ex. I.) On June 2, 2014, BA deposed named plaintiff Russell Dover. Prior to the deposition, the plaintiffs identified BA-PLTF-000281 as a non-privileged version of the R-Squared Analysis, which should be used going forward. (See Ex. H.) During the deposition, however, the plaintiffs reversed course and then asserted, for a third time, that they had inadvertently produced the R-Square Analysis, this time bates labeled as BA-PLTF-0000281. (Dover Dep. Tr. 329:4-331:11, attached as Ex. J.) To keep track of which R-Squared Analyses were allegedly inadvertently (and repeatedly) produced, BA marked BA-PLTF-000281 as Defendant's Exhibit 50. At the deposition of named plaintiff Henry Horsey, the plaintiffs made clear that they are asserting work product protection under Rule 26(b)(3), not the attorney-client privilege. (Horsey Dep. Tr. 209:3-6, attached as Ex. K). Because the plaintiffs refused to withdraw their improper work product assertion, BA now moves to compel their production.

The plaintiffs bear the burden of establishing that the work product protection applies. *See, e.g., von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987); *Primetime 24 Joint Venture v. Echostar Comm'ns Corp.*, 2000 WL 97680, at *2 n.3 (S.D.N.Y. Jan. 28, 2000) ("work product issues are governed by federal law.") It is well-settled that "neither the attorney-client nor work product privilege protects underlying facts." *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 2004 WL 4054842, at *2 (E.D.N.Y. July 22, 2004) (quoting *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC*, 2002 WL 1455346, at *4 (S.D.N.Y. July 3, 2002)). Accordingly, courts recognize that "liberal civil discovery rules compel parties to disclose purely factual information that they have gathered" even if those facts are gathered by an attorney and communicated to the client. *See Primetime*, 2000 WL 97680, at *3.

Here, the R-Squared Analysis simply aggregates factual data and performs a regression analysis. As the plaintiffs' counsel explained at the hearing on the motion to dismiss, "r-squared is simply a regression analysis used by statisticians." (Ex. A, at 12:1-2). As such, it is not privileged.

Even assuming that the R-Squared Analysis is protected by the work product doctrine (which it is not), the plaintiffs waived any purported protection when they put it at issue in the Complaint and invoked it during oral argument on BA's motion to dismiss. (Compl. ¶¶ 50-55; Ex. A, at 10:3-12:4, 12:22-17:25.) "A party . . . impliedly waives work product protection if it places the substance of the documents for which the protection is claimed at issue." *John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003) (citation omitted). "Waiver typically occurs when the party asserting the privilege placed a protected document in issue through some affirmative act intended to insure to that party's benefit or where the party makes selective use of the privilege materials." *Granite Partners, L.P. v. Bear, Stearns & Co.*, 184 F.R.D. 49, 54 (S.D.N.Y. 1999).



In *Granite Partners*, for example, a bankruptcy trustee created a report, which incorporated "'benchmark' prices" determined by its expert. *Id.* at 55. The trustee then used the report offensively by having the analysis form the basis of the trustee's claims. *Id.* at 56. The Court rejected a subsequent privilege assertion and explained that the trustee waived any purported privilege protection over the report, including its expert's findings. *Id.* at 55-56. The Court reasoned that once the expert's prices were placed into the report, "they placed the accuracy of his data and the validity of his analyses at issue." *Id.* at 55-56. As a result, they waived any privilege.

Similarly here, the plaintiffs used the R-Squared Analysis as a sword and cannot now shield it from production. *See, e.g., id.* ("It is well settled that waiver may be imposed when 'the privilege holder attempt[s] to use the privilege as both 'sword' and 'shield.'"). If the plaintiffs were permitted to withhold this analysis, it would allow the plaintiffs to shield crucial factual information simply because it was compiled by or at the direction of an attorney. *See Verizon Directories Corp.*, 2004 WL 4054842, at *1 (rejecting privilege assertion; "That is plainly not the law.").

Even if the plaintiffs had not waived the work product protection by invoking the R-Squared Analysis in the Complaint and at oral argument (which, they did), the plaintiffs unquestionably waived it when they voluntarily and repeatedly produced the R-Squared Analysis and then allowed substantial questioning regarding it. The Protective Order's inadvertent waiver provision does not prevent waiver here where the "production of privileged material was completely reckless." *U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, 2014 WL 2116147, at *4 (S.D.N.Y. May 14, 2014) (internal quotation omitted). "For a production to be 'completely reckless,' the producing party must have shown no regard for preserving the confidentiality of the privileged documents." *Id.* (citation omitted).

The plaintiffs did exactly that here. First, they produced a purportedly privileged version of the R-Squared Analysis; when they did so, they only produced 137 pages, of which the R-Squared Analysis constituted 34 pages – roughly 25% of the plaintiffs' entire production. Despite being on notice that they had produced this analysis once, the plaintiffs then proceeded to produce two more versions – along with only 50 other documents. Then, the plaintiffs permitted one version of the purportedly privileged R-Squared Analysis to be marked at a deposition extensively questioning about it – again without objection. Such actions evidence a total disregard for the allegedly privileged nature of the R-Squared Analysis.

Under comparable circumstances, courts have found plaintiffs' precautions against disclosure "so lax, careless, inadequate or indifferent to consequences as to constitute a waiver." *Eigenheim Bank v. Halpern*, 598 F. Supp. 988 (S.D.N.Y. 1984) ("The Court may have been willing to find mere inadvertence in defendants' first production of the document. A second bite of the apple, however, defendant cannot have."); *see also de Espana v. Am. Bureau of Shipping*, 2005 WL 3455782, at *4 (S.D.N.Y. Dec. 14, 2005) (privilege waived); *In re: Philip Servs. Corp. Sec. Litig.*, 2005 WL 2482494, at *2 (S.D.N.Y. Oct. 7, 2005) (privilege waived because allegedly privileged documents were "marked as exhibits at a deposition . . . , and the witness was questioned about them, without objection").

BA is available at the Court's convenience to address any questions the Court may have about this request.



Respectfully Submitted,

Keara M. Gordon

Enclosures