**Lieff
Cabraser
Heimann &
Bernstein**

Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
t  212.355.9500
f  212.355.9592

June 30, 2014

David S. Stellings
Partner
dstellings@lchb.com

**VIA ECF**

The Honorable Marilyn D. Go, USMJ
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   RE: <u>Dover, et al. v. British Airways PLC</u>, No. 1:12-cv-5567

Your Honor:

  Plaintiffs write in response to Defendant British Airways, PLC's ("BA's") motion to compel production (*see* Dkt. No. 81) of a version of Plaintiffs' "r-squared" analysis that contains attorney work product from Plaintiffs' non-testifying experts.  The protected version of the spreadsheet was inadvertently produced twice.  After the first inadvertent production, BA destroyed the document and did not contest the work product designation.  After the second inadvertent production, BA changed its mind and filed the instant motion.

**BA Failed to Comply With L.R. 37.3**

  Plaintiffs respectfully note that BA failed to comply with Local Rule 37.3, which requires an "in person" or telephonic meet and confer to resolve discovery disputes.  On June 20, 2014, during the middle of a deposition, BA informed Plaintiffs that it "may move to compel production of" the disputed document, but never raised the issue again.  Plaintiffs, however, do not object to the Court resolving this dispute should it choose to exercise its discretion to do so.

**Chronology**

  In early March 2014, immediately after production, Plaintiffs informed BA that it had produced a spreadsheet containing inadvertently disclosed work product and requested BA destroy the document under § 11 of the Protective Order (*see* Dkt. Nos. 44 & 47).  (*See* Ex. A: March 7, 2014 Email Exchange (noting "inadvertently disclosed attorney work product").)  BA did not dispute Plaintiffs' claim of work product and confirmed it would destroy the document and use a redacted version moving forward.  (*See id.*; *contra* Dkt. No. 81: BA Mot. at 2 (claiming Plaintiffs did not properly raise attorney work product).)

  On May 2, 2014, Plaintiffs re-produced all previously-produced documents to comply with BA's request for certain metadata.  During that process, Plaintiffs inadvertently re-produced the version of the spreadsheet containing work product (along with the redacted

version that does not contain work product); Plaintiffs first learned of the inadvertent production after the May 23, 2014 deposition of plaintiff Cody Rank, when BA introduced it. Due to the similarities between the protected spreadsheet and the redacted version, Plaintiffs were only able to confirm that BA introduced the protected version after the deposition (i.e., it was not possible for Plaintiffs to object during the deposition).

Within five business days, Plaintiffs requested that BA destroy the disputed document. On May 30, 2014, BA informed Plaintiffs that, this time, it would not destroy the protected version of the spreadsheet because Plaintiffs had waived their right to claim protection over the document, and because the document "is of critical importance to the case." (*See* Ex. B: BA May 30, 2014 Letter.) BA did not explain why it now disagreed with Plaintiffs that the spreadsheet contained attorney work product or how the work product was "critical."

### The "R-squared" Analysis is Protected Under Rule 26(b)(4)(D)

The "r-squared" analysis was created by Plaintiffs' non-testifying experts as part of Plaintiffs' pre-filing investigation into BA's Fuel Surcharge. It contrasts BA's Fuel Surcharge with the publicly-available price of jet fuel. That initial analysis will have virtually no significance in the case moving forward: Plaintiffs' damages and liability theories will be based upon data produced by BA during discovery that will be analyzed by Plaintiffs' testifying experts.

Because consulting experts created the "r-squared" analysis in anticipation of litigation, it is protected from disclosure by Fed. R. Civ. P. 26(b)(4)(D*). See In re Methyl Tertiary Butyl Ether*, 23 F.R.D. 568, 575 (S.D.N.Y. 2013); *see also QBE Ins. Corp. v. Interstate Fire & Safety Equip. Co.*, No. 3:07cv1883, 2011 U.S. Dist. LEXIS 16406, at *14 (D. Conn. Feb. 18, 2011) ("The restriction on discovery regarding non-testifying experts is written in language analogous to the restriction on discovery of work product."). Plaintiffs thus produced the underlying publicly-available data that supported the analysis, but claimed protection over the analysis itself as well as the identity of Plaintiffs' consulting expert. *See Williams v. Bridgeport Music, Inc.,* 14 Misc. 73-P1, 2014 U.S. Dist. LEXIS 62056, at *6 (S.D.N.Y. May 2, 2014) (explaining that Rule 26(b)(4) precludes from discovery "the identity of an informal consulting expert.").

This analysis constitutes "facts known or opinions held" by Plaintiffs' consulting experts and because BA has failed to "show[] exceptional circumstances under which it is impracticable for [BA] to obtain facts or opinions on the same subject by other means." *See* Fed. R. Civ. P. 26(b)(4)(D); *see Denermark v. Lewis,* 11 Civ. 5388, 2012 U.S. Dist. LEXIS 143344, at *3-4 (E.D.N.Y. Oct. 3, 2012) (protecting non-testifying expert report from disclosure). BA shows no "exceptional circumstances" that could justify disclosure under the Rules because none exist. *Cf. Brown v. Noxubee Gen. Hosp. (In re Zyprexa Prods. Liab. Litig.),* 04-MD-1596, 08 Civ. 3249, 2008 U.S. Dist. LEXIS 90424, at *9 (E.D.N.Y. Nov. 6, 2008) ("Courts have recognized two situations in which such exceptional circumstances are presented: '(1) where the object or condition observed by the non-testifying expert is no longer observable by the expert of the party seeking discovery, and (2) where it is possible to replicate discovery on a contested issue but the cost would be prohibitive.'" (citations omitted)).

Honorable Marilyn D. Go
June 30, 2014
Page 3

**Plaintiffs Did Not Waive Protection**

Under the relevant test, Plaintiffs' inadvertent disclosure did not waive the disputed spreadsheet's protection. *See FNMA v. Olympia Mortg. Corp.*, 04 Civ. 4971, 2007 U.S. Dist. LEXIS 60275, at *7-8 (E.D.N.Y. Aug. 16, 2007) (Go, M.J.) (describing the applicable test). First, Plaintiffs' precautions were reasonable. *See Abbott v. Coyle*, 05 Civ. 5051, 2006 U.S. Dist. LEXIS 92292, at *4 (E.D.N.Y. Dec. 21, 2006) (explaining disclosure is not unreasonable "unless the producing party's actions were so careless as to suggest that it was not concerned with the protection of the asserted privilege." (citation omitted)). The redacted and unredacted spreadsheets are practically identical; this similarity contributed to the inadvertent disclosure.

The second inadvertent disclosure occurred when Plaintiffs re-produced all documents with additional metadata, not realizing that this would also trigger the re-production of the protected version of the r-squared analysis. No other protected documents were produced, and isolated disclosure does not waive work product. *See Jacob v. Duane Reade, Inc.,* 11 Civ. 160, 2012 U.S. Dist. LEXIS 25689, at *13-14 (S.D.N.Y. Feb. 28, 2012) ("Courts have most often upheld [privilege] protection despite inadvertent disclosure when a small number of privileged documents were inadvertently disclosed as part of a large production of discovery materials, and the disclosure of the privileged documents was careless, not egregious." (citation omitted)).

The remaining factors cited in *FNMA* also counsel against waiver. First, Plaintiffs notified BA of the inadvertent disclosure within five business days of discovery (in March, Plaintiffs notified BA within one day). *See BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 09 Civ. 9783, 09 Civ. 9784, 2013 U.S. Dist. LEXIS 75402, at *18-20 (S.D.N.Y. Mar. 7, 2013) (finding seven days *from the time of discovery* reasonable). Second, the scope of the production and extent of disclosure was remarkably small: at issue is a small portion of one Excel spreadsheet. *See United States v. Rigas*, 281 F. Supp. 2d 733, 741 (S.D.N.Y. 2003) ("Courts generally decline to find waiver when a relatively small number of privileged documents were disclosed . . . ." (citation omitted)). Third, BA has suffered no prejudice and can easily reverse engineer the unprotected data. *See Kalra v. HSBC Bank USA, N.A.*, 06 Civ. 5890, 2008 U.S. Dist. LEXIS 34696, at *18-21 (E.D.N.Y. Apr. 28, 2008) (explaining that a fairness evaluation does not focus on whether or not the receiving party is being deprived of information it believes is pertinent to its prosecution or defense of the action," but "to the relative prejudices each party would suffer by virtue of restoring privilege to the documents inadvertently disclosed." (citations omitted)).[1]

Plaintiffs look forward to discussing these issues with the Court on July 10, 2014.

---

[1] The cases cited by BA in favor of waiver are inapposite. *See, e.g., Granite Partners, L.P. v. Bear, Stearns & Co.*, 184 F.R.D. 49 (S.D.N.Y. 1999) (evaluating waiver not under the rubrick of inadvertent disclosure but as an "affirmative act" where the waiving party intended to use the privileged document to impeach various witnesses); *Eigenheim Bank v. Halpern*, 598 F. Supp. 988, 991 (S.D.N.Y. 1984) (citing New York law with no analysis under applicable EDNY test).

Honorable Marilyn D. Go
June 30, 2014
Page 4

        Very truly yours,

        David S. Stellings

        Nicholas Diamand
        Jason L. Lichtman
        Douglas I. Cuthbertson

        **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

cc: All Counsel of Record

1182560.2