

**DLA Piper** LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
www.dlapiper.com

Keara M. Gordon
keara.gordon@dlapiper.com
**T** 212.335.4632
**F** 212.884.8632

July 2, 2014

*VIA ECF*

The Honorable Marilyn D. Go
United States Magistrate Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East, Room 1214-S
Brooklyn, New York 11201

   Re: *Dover, et al. v. British Airways, PLC (UK)*, No. 12-cv-05567-RJD-MDG

Your Honor:

  British Airways, PLC ("BA") opposes the plaintiffs' letter motion, filed on June 26, 2014, ECF No. 82 (the "June 26 Letter"), which seeks to compel BA to produce documents on irrelevant issues and, surprisingly, on documents that BA has repeatedly informed the plaintiffs it does not possess.

  Specifically, BA informed the plaintiffs on three separate occasions over a three-month period that it does not have documents responsive to Requests Nos. 15, 16, and 19 of the plaintiffs' Second Set of Requests for Production of Documents (the "Second Requests," ECF No. 82-2). (BA Resps. & Objections to the Second Requests at 14-15, 17-18, Ex. A; May 12, 2014 Letter from Colleen Carey to Jason Lichtman, at 4, Ex. B; ECF No. 82-4 at 3.) As such, the motion to compel these requests should be denied as moot. *Williams v. Bank Leumi Trust Co. of N.Y.*, No. 96 Civ. 6695, 1999 WL 375559, at *1 (S.D.N.Y. June 7, 1999) (denying motion to compel as moot;"[i]t is too obvious to need citation that the Court cannot compel a party to produce documents that he does not possess").[1]

  Moreover, BA also objected to each category of documents that the plaintiffs now seek to compel because it is irrelevant. As an initial matter, the burden of establishing relevance is on the plaintiffs, not BA.[2] *Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, No. CV 09-601, 2009 WL 3757054, at *2

---

[1] The plaintiffs admit that BA has informed them that it does not possess documents in response to these requests. (*See* June 26 Letter at 1 n.2.) However, the plaintiffs still seek to compel production in a thinly-veiled attempt to obtain a ruling from the Court that is not yet ripe. Specifically, the plaintiffs seek a determination that topics raised in two 30(b)(6) notices that were served by the plaintiffs only five days ago, on June 27, 2014, (and which have not been presented to the Court for review) are relevant to this litigation before BA's time to object to such notices has run, before BA has objected and before the parties have engaged in any required meet and confer based on those objections. Such a tactic is clearly improper.

[2] The plaintiffs reliance on *Adkins v. Morgan Stanley*, No. 12 Civ. 7667, 2014 U.S. Dist. LEXIS 77556, at *4-5 (S.D.N.Y. May 26, 2014), is misplaced. (June 26 Letter at 3.) There, the Court discussed the objecting party's burden to provide support for its claim of undue burden, but did not state the standard to assess relevance for a motion to compel.



(E.D.N.Y. Nov. 9, 2009) ("'The party seeking discovery must make a prima facie showing that the discovery sought is more than merely a fishing expedition.'") (internal citations omitted).

Requests Regarding the Frequency of Changing Fares: Request No. 15 of the Second Requests seeks "documents sufficient to Identify the number of times each day You changed the Fare for each Route You flew" and Request No. 16 of the Second Requests seeks "Documents sufficient to Identify the methodology You used to change the Fare for each Route You flew."[3]  (ECF. No. 82-2 at 12.)  The plaintiffs claim that the number of times BA changed its fares each day is relevant to test BA's supposed assertion it would be difficult for BA to adjust the fuel surcharge on a "more frequent basis." (June 26 Letter at 1.)  BA  never said that.  What BA actually said is that "BA does not change its fuel surcharge daily; rather, it changes the fuel surcharge periodically based upon a variety of factors including significant swings in the price of fuel that are not perceived to be short-term; as a result, the fuel surcharge is not going to move every time the price of oil moves" and that it would not be "commercially practicable for BA (or any airline) to assign a fuel surcharge that will exactly match the actual per passenger cost of fuel on a specific flight on which a specific passenger may travel months in advance." (ECF No. 26, BA Mot. To Dismiss Br. ("MTD") at 5.)  How often BA changes its fares and how BA determines those changes are irrelevant to testing those statements.

The plaintiffs also assert that this information "will help plaintiffs and the Court to determine whether BA and its systems had the ability to change BA's fuel surcharge more frequently . . .." (June 26 Letter at 2.)  Here, the plaintiffs erect a straw man.  This is a contract case, and, as such, the starting point is and must be the contracts; without a contractual obligation, there can be no breach.  Here, there is nothing in the relevant contracts – the Executive Club terms and conditions (the "Executive Club Contract") and the General Conditions of Carriage (the "Conditions of Carriage," and collectively with the Executive Club Contract the "Contracts") – that requires BA to change the fuel surcharge on any particular schedule, or every time its cost of fuel changes.  Indeed, given all of the variables that affect BA's fuel costs, it would be impossible, and contractually impermissible, to impose on BA an obligation to change its fuel surcharge each time one of those variables may change.  In any event, the Contracts provide that BA may impose a fuel surcharge without limiting BA's discretion in how it does so. As such, if BA changes the fuel surcharge once a month, rather than daily or hourly, that is not a breach of contract.  And whether BA could have, but chose in its discretion not to, "change the fuel surcharge more often," does not constitute a breach of contact.

More generally, fare-related information is irrelevant to whether BA assessed a fuel surcharge that is permitted under the Contracts because the putative Class Members did not pay a fare on their Reward Tickets, only frequent flier miles and taxes, fees and other charges.  (*See generally* Complaint; ECF No. 1.)

Ratio of Fares to Fuel Surcharge:  Request No. 19 of the Second Requests seeks "Documents sufficient to Identify the ratio between the Fuel Surcharge and Fare, differentiated by Travel Class, on a

---

[3]      As mentioned above, BA does not possess such documents so the portion of the motion to compel related to these requests is moot.



monthly basis for: (1) all Flights worldwide; [and certain enumerated flights]."[4]  (ECF No. 82-2 at 13.)  In addition, Request No. 3 of the plaintiffs' Third Set of Requests for Production of Documents seeks "Documents sufficient to Identify the lowest round-trip Fare You charged any passenger who paid a Fare, each month during the Class Time Period, for [enumerated] flights. . .." (ECF No. 82-3 at 10.)

These requests, which request the ratio between certain of BA's fares and its fuel surcharges, seek irrelevant information.[5]  The Contracts do not confine BA to imposing a fuel surcharge that "protect[s] BA only from **unexpected swings** in the cost of jet fuel," as the plaintiffs contend.  (June 26 Letter at 2 (emphasis added).)  The plaintiffs also assert that, if the fuel surcharge on a given flight exceeds the lowest possible fare offered on a flight, such would be "evidence" that the fuel surcharge was improper or acted as a "profit center." (*See* May 19 Letter, Ex. C at 4-5; June 26 Letter at 2.)  Not so.  As BA has explained, BA does not attempt to calculate a fuel surcharge on a per-flight, per-seat basis, nor could it. (*See* MTD at 5.)  Rather, BA sets its fuel surcharge at a global level, and there is no provision in the Contracts that requires BA to set the fuel surcharge on a more granular level or to maintain any particular ratio between the fuel surcharge and fares. (*See* June 26 Letter at 2; *see also* Exs. D and E.)  And, in fact, the plaintiffs did not pay a fare when obtaining Reward Travel.

Fuel Surcharge Paid to Other Entities:  Request No. 13 of the Second Requests seeks "Documents sufficient to Identify any revenue derived from the Fuel Surcharge that is paid to any entity other than You." (ECF No. 82-2 at 12.)  As an initial matter, even if the plaintiffs' request was relevant (which it is not), it is overly broad because it is not limited properly to revenue derived from fuel surcharges obtained only from Reward Travel.

Moreover, BA's revenue sharing arrangements with other airlines, which are a common practice in the airline industry, and the revenue paid thereunder, are not relevant to the question whether BA's imposition of a fuel surcharge on Reward Tickets was appropriate under the Contracts. (*See generally* Exs. D and E.)  Not surprisingly, the plaintiffs are unable to cite any language in the Contracts that prohibits BA from entering into revenue sharing agreements with other airlines.  Indeed, there is none. (*See* June 26 Letter at 3.)  Revenue sharing agreements, by their nature, are reciprocal.  Even if BA paid some portion of its Reward Ticket fuel surcharge revenue to a partner airline, it would necessarily receive some portion of that partner airline's fuel surcharge revenue as well.  Therefore, revenue sharing cannot lead to the conclusion that "BA paid revenue derived from the fuel surcharge to other airlines for reasons unrelated to offsetting BA's cost of fuel." (June 26 Letter at 2.)

Therefore, BA respectfully requests that the Court deny the plaintiffs' motion to compel in its entirety.

---

[4]      As mentioned above, BA does not possess such documents so the portion of the motion to compel related to this request is moot.

[5]      The plaintiffs assert that responding to the fare-related requests will not cause BA any undue burden.  BA only agrees with this statement because the plaintiffs agreed that, to locate documents responsive to these requests, BA needs only to add the search terms: "fare distribution" and "fare distributions," in combination with our existing search terms.  If, however, the plaintiffs intend to seek fare information more broadly, that would impose significant burdens on BA, which BA has repeatedly informed the plaintiffs.



Honorable Marilyn D. Go
July 2, 2014
Page 4

Respectfully Submitted,

Keara M. Gordon

Enclosures