UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

RUSSEL DOVER, ET AL.,

                        Plaintiffs,

                                     ORDER
    - against -

                                     CV 2012-5567 (RJD)(MDG)

BRITISH AIRWAYS, PLC (UK),

                        Defendant.

- - - - - - - - - - - - - - - - - -X

     Defendant British Airways ("BA") moves to compel (ct. doc. 81) production of spreadsheets containing the "r-squared analysis" of plaintiffs' non-testifying experts which plaintiffs had designated as confidential, but had inadvertently produced on March 7, 2014 and May 2, 2014. Defendant contends the information is not protectable work product and, to the extent the documents are protected, plaintiffs have forfeited protection by inadvertently disclosing the protected spreadsheets twice.

     The documents at issue are spreadsheets containing publicly available data on fare prices and BA's fuel surcharge over time, along with analysis by the experts and their names on the last page of the spreadsheet. Plaintiffs contend that the r-squared analysis and the names of the experts are confidential and had been so designated pursuant to a protective order, which contains a clawback provision for inadvertently produced documents. See ct. doc. 47 (Order). Following entry of that protective order, plaintiffs produced the unredacted spreadsheets on March 4, 2014,

and notified the defendant of the inadvertent production on March 7, 2014. See ct. doc. 83 (Pl.'s Opp'n) at 1-2. BA destroyed the documents following plaintiffs' request, in accordance with the protective order. See id., Ex. B (BA Letter dated 5/30/13) at 1. Plaintiffs then provided the defendant with a redacted version to use which did not contain the calculations at the end of the original spreadsheets or the experts' names. Id.; ct. doc. 81 (Def.'s Mot.), Ex. D (Redacted Spreadsheet).

On May 2, 2014, plaintiffs reproduced all previously produced documents to comply with BA's request for metadata, and in so doing, inadvertently reproduced two pages of the unredacted version of the spreadsheets (BA-PLTF-000345-378 and BA-PLTF-000281). See id. at 1-2. At the deposition of plaintiff Cody Rank, defendant questioned Mr. Rank about the spreadsheets, including the portions that the plaintiffs now seek to recover See id., Ex. G (Rank Depo. Tr.).

## DISCUSSION

This Court first addresses whether the information on the spreadsheets is entitled to protection from disclosure. Defendant argues that the spreadsheets should not be protected as work product because the work product doctrine does not apply "underlying facts" and the spreadsheets are simply an aggregation of factual data with some statistical analysis. See ct. doc. 81 (Def.'s Mot.) at 2.

Although defendant is correct that the spreadsheets contain information culled from publicly available facts, the spreadsheets were prepared by an expert who is not expected to be called as a witness at trial. Thus, the spreadsheets are "subject to the more stringent discovery rules" of Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure, which protects against disclosure of information from non-testifying, consulting experts. Powerweb Energy, Inc. v. Hubbell Lighting, Inc., 2014 WL 655206, 2 (D. Conn. Feb. 20, 2014); see also Employees Committed for Justice v. Eastman Kodak Co., 251 F.R.D. 101, 104 (W.D.N.Y. 2008) ("material reviewed or generated by [a consulting] expert[, is] generally privileged and immune from disclosure"). The rule restricts discovery of "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D). The Rule also protects the identity of a non-testifying expert from disclosure. Williams v. Bridgeport Music, Inc., 2014 WL 1779204 at *2-3 (S.D.N.Y. May 5, 2014).

Rule 26(b)(4)(D) permits discovery "only: (i) as provided in Rule 35(b); or (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Id.; QBE Ins. Corp. v. Interstate Fire & Safety Equipment Co., Inc., 2011 WL

692982, at *5 (D. Conn. Feb. 18, 2011). No exceptional circumstances exist here since the information at issue pertains to pre-litigation analysis by a non-testifying expert based on publicly available facts, as defendant has argued.

Defendant contends that plaintiffs waived any protection by putting the r-squared analysis and spreadsheets at issue in allegations in the Complaint and in submissions and at oral argument on the motion to dismiss. With respect to "at issue" waiver, it is well established that in certain circumstances, a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted. John Doe Co. v. United States, 350 F.3d 299, 302 (2d Cir. 2003). Implied waiver of the privilege is premised on the "unfairness to the adversary of having to defend against the privilege holder's claim without access to pertinent privileged materials that might refute the claim." Id. at 304. The determination of "[w]hether fairness requires disclosure . . . is best decided on a case by case basis, and depends primarily on the specific context in which the privilege is asserted." In re Grand Jury Proceedings, 219 F.3d 175, 183 (2d Cir. 2000)).

This Court finds significant that plaintiffs state they do not intend to use the same r-squared analysis at trial and have already provided the underlying data used by their consulting expert in his regression analysis. Importantly, plaintiffs also

-4-

advise that they intend to use different experts at trial who will base their analyses on information obtained in discovery beyond what was publicly available pre-litigation. Needless to say, plaintiffs will be required to provide defendant with expert reports and disclose underlying facts and data from all testifying experts they intend to call at trial, as required by Rule 26(b)(2).

In addition, although plaintiffs refer to r-squared analysis in the complaint in alleging that there is little correlation between BA's fuel surcharges and the cost of fuel, the actual r-squared analysis itself is not "at issue" here. As alleged in the complaint, r-squared analysis is simply a statistical methodology to show the relationships between two variables, and plaintiffs utilized that analysis to illustrate their claim that BA breached the contract with Executive Club members by improperly imposing fuel surcharges unrelated to the price of fuel. Defendant challenged plaintiffs' analysis in its motion to dismiss and, in fact, countered with its own analysis, arguing that "the correlation of fuel surcharge to the volatile price of jet fuel over the relevant period is demonstrable" and that "plaintiffs' regression analysis proves nothing, as it is based upon a false predicate." Ct. doc. 26 (Def.'s Mem. in support of the Mot. to Dismiss) at 6, 20. In denying defendant's motion, Judge Dearie recognized that the competing analyses offered by the parties may ultimately have to be tested at trial. Ct. doc.

52 (Memorandum & Order dated 10/8/14) at 9-10.  In light of the posture of this case, it is not surprising that plaintiffs, and probably defendant, too, will later call experts to provide different statistical analysis based on considerably more data than what was available to plaintiffs at the beginning of this case.  Thus, this Court finds there simply is no prejudice and unfairness to BA if it is not permitted to use the spreadsheets created before commencement of this litigation which contain the identity and initial r-squared analysis of the plaintiffs' consulting expert.

With respect to defendant's argument that implied waiver resulted from inadvertent disclosure of privileged information, this Court notes that the parties entered into a stipulated protective order approved by this Court which contains a provision concerning inadvertent disclosures.  <u>See</u> Advisory Committee Notes to Fed. R. Evid. 502(e) recognizing "the well-established proposition that parties can enter an agreement to limit the effect of waiver of disclosure by or among them."  Paragraph 10 of the stipulation signed by the parties states that "[p]ursuant to Fed. R. Evid. 502(d), the inadvertent disclosure of any material that qualifies as Protected Information does not waive the protection or the privilege for either that material or for the subject matter of that material."  Ct. doc. 47 (Order), Ex. A at ¶ 10.  Because such a stipulation reflects an agreement of the parties "to avoid litigation of inadvertent production

issues," this Court construes this provision to accord "heightened protection" to plaintiffs, the producing parties here. U.S. Commodity Futures Trading Com'n v. Parnon Energy Inc., 2014 WL 2116147 at *4-5 (S.D.N.Y May 14, 2014) (quoting Prescient Partners, L.P. v. Fieldcrest Cannon, Inc., 1997 WL 736726, at *4 (S.D.N.Y. Nov. 26, 1997)). Accordingly, a finding of "waiver is appropriate only if production of the privileged material was 'completely reckless.'" Id. at (quoting U.S. Fidelity & Guar. Co. v. Braspetro Oil Servs. Co., 2000 WL 744369, at *4 (S.D.N.Y. Jun. 8, 2000). Under the "completely reckless" standard, "inadvertent production will not waive the privilege unless the conduct of the producing party or its counsel evinced such extreme carelessness as to suggest that it was not concerned with the protection of the asserted privilege." In re Copper Market Antitrust Litig., 200 F.R.D. 213, 221-22 (S.D.N.Y. 2001). Such a standard is appropriate because "merely incorporat[ing] caselaw standards governing inadvertent disclosure" would nullify inadvertent waiver provisions in a stipulated confidentiality agreement. Prescient Partners, 1997 WL 736726, at *4 (citation omitted).

Although plaintiffs inadvertently produced the protected information on the spreadsheets twice and concede they were "careless," this Court does not find plaintiffs' conduct to be so "completely reckless" to warrant disclosure here. The protected r-squared analysis consists of a few rows and columns of

information embedded on two of 34 pages of spreadsheets containing multiple columns and rows of numbers.  The protected information occupies a small percentage of the cells on the spreadsheets and, as plaintiffs note, the unredacted spreadsheet looks "virtually identical" to the redacted version.

After plaintiffs first inadvertently disclosed the unredacted spreadsheets as part of a 137-page production in March 2014, they promptly gave defendant notice a few days after production.  Defendant does not challenge that disclosure.  The second inadvertent disclosure occurred when plaintiffs produced documents on May 2, 2014 which they had sent to a vendor to assist in reproducing documents in electronic format with metadata in response defendant's request.  Two unredacted spreadsheets with the r-squared analysis included in the production were later marked and used during the deposition of plaintiff Cody Rank on May 23, 2014.  During that questioning, plaintiffs raised several objections at the time that BA asked Rank questions regarding the purportedly protected portions of the spreadsheet, without indicating the nature of the objections.  See Def's Mot., Ex. G (excerpt from Rank Depo. Tr.) at 230-32.  Six days after the deposition, plaintiffs again sought return of the protected documents.

Defendant is correct that plaintiffs should have been on notice with the first inadvertent disclosure that the spreadsheets contained protected information and should have

carefully reviewed the spreadsheets before providing them to their vendor and producing them to defendant.  However, under the totality of the circumstances, particularly given the nature of the production and the fact plaintiffs sought return of the unredacted spreadsheet within six days after the deposition of Mr. Rank, I do not find that plaintiffs have evidenced a complete disregard for preserving the confidentiality of the spreadsheets.

Moreover, the "overriding issues of fairness"[1] which underlie all determinations regarding waiver or forfeiture of protection of privileged documents weigh even more heavily here, in light of the heightened deference accorded the stipulated inadvertent waiver provision.  For the reasons discussed above, there has been no unfairness to the defendant.  The only conceivable prejudice defendant has suffered is that it will be deprived of material that it may find tactically important, but which is now of little usefulness in future assessment of the merits of the claims asserted herein. See Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 446 (S.D.N.Y. Feb. 28, 1995) (noting that "[t]he prejudice factor focuses only on whether the act of restoring immunity to an inadvertently disclosed document would be unfair, not whether the privilege itself deprives parties of pertinent information").  Nor is this

---

[1] See In re Copper Market Antitrust Litigation, 200 F.R.D. 213, 217 (S.D.N.Y. 2001) (discussing the factors in the case law for analyzing inadvertent waiver and citing Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D. 103, 105 (S.D.N.Y. 1985)).

an instance where plaintiffs "made strategic use of the selective waiver of the privilege," since the document was introduced at the Rank deposition by the defendants, not the plaintiffs. Johnson v. Sea-Land Service, Inc., 2001 WL 897185, at *6 (S.D.N.Y. August 9, 2001).  Although defendant used the spreadsheets in the deposition of Mr. Rank, it apparently did not rely on the disclosure of the protected information.

Thus, as a matter of fairness, I decline to find waiver under the circumstances here.  See In re Grand Jury Subpoena, 219 F.3d at 188 (fairness dictates that any "waiver should be tailored to remedy the prejudice"); John Doe Co., 350 F.3d at 304.

## CONCLUSION

For the foregoing reasons, defendant's motion to compel is denied.

**SO ORDERED.**

Dated: Brooklyn, New York
       August 15, 2014

/s/_____
MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE