

DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York  10020-1104
www.dlapiper.com

Keara M. Gordon
keara.gordon@dlapiper.com
T  212.335.4632
F  212.884.8632

January 7, 2015

*VIA ECF*

The Honorable Marilyn D. Go
United States Magistrate Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East, Room 1214-S
Brooklyn, New York 11201

      Re:     *Dover, et al. v. British Airways, PLC (UK)*, No. 12-cv-05567-RJD-MDG

Dear Judge Go:

      British Airways PLC ("BA") opposes the plaintiffs' letter motion, dated January 5, 2015, ECF No. 128, seeking an order permitting the plaintiffs to take *33 depositions* – more than three times the limit imposed by the Federal Rules. During the meet and confer process, BA agreed to permit 22 depositions (the "Agreed Deponents"),[1] more than twice the Rules' limit. It became clear that the parties required court intervention, particularly given the need to schedule depositions as soon as possible, when the plaintiffs sought to depose eleven additional BA employees (the "Disputed Deponents")[2] and "reserve[d] the right to seek additional depositions." (Pltfs' Ex. C, at 1 n.2.)

      The ten deposition limit "enable[s] courts to maintain a 'tighter rein' on the extent of discovery and to minimize the potential cost of 'wide-ranging discovery.'" *Sigala v. Spikouris*, 2002 WL 721078, at *3 (E.D.N.Y. Mar. 7, 2002) (internal quotations omitted). "The party seeking the additional depositions must specify who is to be deposed and the reasons why their

---

[1]    A list identifying each of these depositions is attached as Exhibit 1.

[2]    Presumably in an attempt to justify their unreasonable delay (waiting until December 12, 2014 to propose deponents), the plaintiffs misrepresent the state of document production. (*See, e.g.*, Jan 5. Letter at 1; Ex. 2 Pltfs' Dec. 12 Letter at 2.) By August 1, 2014, the plaintiffs had received more than 35 percent of BA's overall production and BA substantially completed its production in the first week of October. BA produced only 17 additional documents last week. Regardless, in their attempt to explain why they need the depositions of the Disputed Deponents, the plaintiffs primarily rely on the December 11, 2013 deposition testimony of Jerry Foran, which they had for more than a year. (Pltfs' Ex. C, Dec. 18 Letter at 2-5.)  Further, the plaintiffs improperly contend that any documents BA produced before August 1, 2014 only "related to specific 30(b)(6) deposition topics" (Ex. 2 at 2.) In reality, however, those documents covered BA's cost of fuel and hedging practices, and identified individuals involved in the determination of its fuel surcharge. As such, the plaintiffs have had a more than adequate time to review BA's productions and begin depositions.



testimony is necessary." *S.F. Health Plan v. McKesson Corp.*, 264 F.R.D. 20, 21 (D. Mass. 2010). Additional depositions are inappropriate when: (1) the discovery "is unreasonably cumulative or duplicative"; or (2) "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2).

In an effort to make 33 depositions appear reasonable, the plaintiffs claim that BA identified "more than 100 witnesses" with "relevant" information. (Jan. 5 Letter at 1.) Not so. BA did not identify 100 employees with relevant information that is not cumulative or duplicative of the knowledge of others and have continuously told the plaintiffs such is not the case. The plaintiffs similarly assert that parties routinely agree to exceed the ten deposition limit without court intervention and cite to examples. (*Id.* at 2.) As BA has already agreed to 22 depositions, the cited cases are not relevant factually or legally.

Of those 22, the plaintiffs ask the Court to ignore the eight 30(b)(6) depositions on which they insisted because "those depositions are largely unrelated to the fact depositions." (*Id.* at 2 n.3.) The Federal Rules make no such distinction and the argument is surprising because the plaintiffs previously described certain of these 30(b)(6) depositions as "difficult to conceive of *more* relevant initial discovery." (Dkt. No. 21 at 16.) And, while the plaintiffs claim that there have only been two "short" fact depositions to date (Jan. 5 Letter at 2 n.3.), they together lasted more than 10 hours and covered almost 450 pages of testimony.

Courts repeatedly reject a party's attempt to seek large numbers of depositions simply because "a witness might have discoverable information." *Commodity Futures Trading Comm. v. Commodity Inv. Grp., Inc.*, 2005 WL 3030816, at *1 (S.D.N.Y. Nov. 10, 2005); *see also Sigala*, 2002 WL 721078, at *3 (same). In *Atkinson v. Goord*, for example, the Court rejected the plaintiff's deposition requests as cumulative because "[a]lthough plaintiff argues that each of his proffered deposition targets had their own unique vantage points and recollections, this truism applies in every case where there are multiple witnesses to the same event. If plaintiff's argument were sufficient to permit all such witnesses to be deposed, Rule 30(a)(2)(A) would quickly become a dead letter." 2009 WL 890682, at *3 (S.D.N.Y. Apr. 2, 2009); s*ee also In re Weatherford Int'l. Sec. Litig.*, 2013 WL 5762923, at *2 (S.D.N.Y. Oct. 24, 2013) (cited by the plaintiffs; denying deposition requests).

The plaintiffs primarily argue that they must depose the Disputed Deponents because they appear on some number of documents that were not also received by the Agreed Deponents and/or because they each authored some number of e-mails. (*See, e.g.,* Pltfs' Ex. C at 3-5.) However, simply because an individual drafted an e-mail or received a document that other deponents did not receive does not make that individual's deposition unique or necessary. *See, e.g., Sigala*, 2002 WL 721078, at *3. Ironically, the cases cited by the plaintiffs did not involve requests to exceed the ten deposition limit. *See, e.g., Ariz. Ex rel. Goddard v. Frito-Lay, Inc.*, 273 F.R.D. 545, 560 (D. Ariz. 2011); *Hernandez v. Creative Concepts*, 2013 U.S. Dist. LEXIS



34612, at *20-21 (D. Nev. Mar. 13, 2013); *TNT USA Inc. v. DHL Express (USA), Inc.*, 2011 U.S. Dist. LEXIS 47338, at *4 (E.D.N.Y. May 2, 2011). The plaintiffs mischaracterize the holding of *Goddard*, which granted the request to depose an author of a reasonable cause determination since there were no competing documents that could be offered by the party to refute that determination. 273 F.R.D. at 559-60. In addition, the other two cases are inapposite as they involved ordering the production of previously withheld documents and permitting depositions on those new materials. *Hernandez*, U.S. Dist. LEXIS 34612, at *20-21; *TNT*, 2011 U.S. Dist. LEXIS 47338, at *4.

The plaintiffs have not met their burden to demonstrate that each deponent would provide unique information that is not cumulative or duplicative of the Agreed Deponents as explained in detail for each Disputed Deponent in Exhibit 3 to this submission. By way of example only:

Graham Brodie: The plaintiffs seek Mr. Brodie because he is the "Head of Continuous Improvement" and Mr. Brodie is the only individual available to testify on this role. (Jan. 5 Letter at 3.) However, Mr. Brodie was not a member of the fuel surcharge committee and did not play a role in setting the amount of the fuel surcharge. (Foran Dep. at 46:1-6; 51:21-23.)

Jamie Cassidy: The plaintiffs seek Mr. Cassidy because he was a "stakeholder" in fuel surcharge decisions. (Jan. 5 Letter at 3.) However, Mr. Cassidy was the head of a sales region and did not "directly participate in the fuel surcharge process." (Foran Dep. at 28:16-21.) A "stakeholder" simply means that "any change … to the fuel surcharge will have an impact on them." (*Id.* at 28:22-25.) BA has already agreed to produce the head of a sales region for a deposition, Gavin Halliday, and the plaintiffs have not demonstrated that Mr. Cassidy's testimony would be unique.[3]

The seven depositions that the plaintiffs have been taken so far cover more than 27 hours and more than 1000 pages of testimony. From a practical standpoint, with the depositions of fact witnesses beginning in earnest on January 27, 2015, it is virtually impossible for BA to prepare for and defend 26 additional depositions in the 39 business days between January 26 and the fact discovery deadline of March 20, 2015. BA opposes any attempt to extend the March 20 fact discovery deadline because the plaintiffs had more than adequate time to determine who they wanted to depose and begin fact depositions before now.

Therefore, BA respectfully requests that the Court deny the plaintiffs' request.

---

[3] The plaintiffs also mistakenly assert that BA did not agree to produce 12 additional fact witnesses because BA "will not permit Mr. Foran to be deposed in his personal capacity without a court order." (Jan. 5 Letter at 1n.1.) Mr. Foran will be BA's corporate witness for its initial decision to impose the fuel surcharge and methodology for imposing the fuel surcharge depositions (having already been deposed last year). They will occur over a 2-day period and BA simply informed the plaintiffs that if they had questions for Mr. Foran in his personal capacity, they should cover them at that time because it would be overly burdensome to depose Mr. Foran on a third occasion.



Respectfully Submitted,

Keara M. Gordon