UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

RUSSEL DOVER, HENRY HORSEY, CODY RANK,   :
AND SUZETTE PERRY, on behalf of themselves and   :   No. 1:12-cv- 05567 (RJD)(MDG)
all others similarly situated,   :
   :   ECF CASE
                              Plaintiffs,   :
   :
   :
              vs.   :
   :
   :
BRITISH AIRWAYS, PLC (UK),   :
   :
                              Defendants.   :
   :
-------------------------------------------------------------------- X

### ANSWER OF DEFENDANT BRITISH AIRWAYS PLC
### TO THE AMENDED CLASS ACTION COMPLAINT

Defendant British Airways PLC ("British Airways" or the "Company"), by and through

its undersigned attorneys, hereby answers the Amended Class Action Complaint (the "Amended

Complaint") in the above captioned action.   Except as otherwise expressly admitted herein,

British Airways denies each and every allegation in the Amended Complaint, including without

limitation any allegations contained in its prayer for relief, headings and subheadings.   In

accordance with Federal Rule of Civil Procedure 8(b)(5), to the extent the Defendants deny

knowledge or information sufficient to form a belief as to the truth of an allegation, that

allegation is deemed to be denied.   This Answer is based upon British Airways' investigation to

date, and British Airways expressly reserves the right to amend its Answer to the full extent

provided for under applicable law.

1.   British Airways lacks knowledge or information sufficient to form a belief as

to the truth of the allegations related to other airlines, except it admits that it has a frequent flyer

program where members can earn points ("Avios") from engaging in activities including, but not limited to, flying with British Airways or using a particular credit card. These Avios can be redeemed for a variety of rewards including, but not limited to, airline tickets ("Reward Tickets"). By way of further answer, British Airways states that its website does not promise "free" flights. Rather, it explicitly states that, "The taxes, fees and charges will always need to be paid with money." http://www.britishairways.com/travel/spend-avios-flights/public/en_us.

2.        The allegations set forth in paragraph 2 of the Amended Complaint contain conclusions of law to which no response is required. To the extent that a response is required, British Airways lacks knowledge or information sufficient to form a belief as to the truth of the allegations related to United Airlines, Inc., and otherwise denies the allegations contained in paragraph 2 of the Amended Complaint, except it admits that its website states that Reward Tickets are not "free"; it explicitly states that, "[t]he taxes, fees and charges will always need to be paid with money." http://www.britishairways.com/travel/spend-avios-flights/public/en_us. Moreover, the Executive Club Terms and Conditions (the "Executive Club Contract") and the General Conditions of Carriage for Passengers and Baggage ("Conditions of Carriage") require members to pay certain taxes and fees associated with Reward Tickets.

3.        British Airways denies the allegations contained in paragraph 3 of the Amended Complaint, except it admits that British Airways' frequent flier program is called the Executive Club and members of the Executive Club are subject to the terms and conditions contained in the Executive Club Contract. British Airways states that the Executive Club Contract is a document that speaks for itself, respectfully refers the Court to the Executive Club Contract for the true and complete contents of that document, and denies any allegation inconsistent with the full terms thereof. Any attempt by the plaintiffs to characterize the

2

Executive Club Contract is denied.  By way of further answer, British Airways states that the Court found in its Memorandum and Order filed November 8, 2013 (the "Order"), that, "[t]he plaintiffs also contend that the Terms and Conditions require that the fuel surcharges be imposed on British Airways by a third party and directly passed along to ticket purchasers.  Nothing in the plain meaning or common usage of the term, however, requires such a restrictive definition."

4.      British Airways denies the allegations contained in paragraph 4 of the Amended Complaint; British Airways states that the Executive Club Contract is a document that speaks for itself, respectfully refers the Court to the Executive Club Contract for the true and complete contents of that document, and denies any allegation inconsistent with the full terms thereof.  Any attempt by the plaintiffs to characterize the Executive Club Contract is denied.  By way of further answer, British Airways states that the Court found in its Order that, "[t]he plaintiffs also contend that the Terms and Conditions require that the fuel surcharges be imposed on British Airways by a third party and directly passed along to ticket purchasers.  Nothing in the plain meaning or common usage of the term, however, requires such a restrictive definition."

5.      The allegations set forth in paragraph 5 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 5 of the Amended Complaint; British Airways states that the Executive Club Contract is a document that speaks for itself, respectfully refers the Court to the Executive Club Contract for the true and complete contents of that document, and denies any allegation inconsistent with the full terms thereof.  Any attempt by the plaintiffs to characterize the Executive Club Contract is denied.  By way of further answer, British Airways states that the Court found in its Order that, "[t]he plaintiffs also contend that the Terms and Conditions require that the fuel surcharges be imposed on British

3

Airways by a third party and directly passed along to ticket purchasers. Nothing in the plain meaning or common usage of the term, however, requires such a restrictive definition."

6.      The allegations set forth in paragraph 6 of the Amended Complaint contain conclusions of law to which no response is required. To the extent that a response is required, British Airways denies the allegations contained in paragraph 6 of the Amended Complaint, except it admits that during the putative class period, which spans a seven-year period, the amount of the fuel surcharge has varied widely and that for certain portions of this time period, the security and insurance surcharge was $2.50 per departure.

7.      The allegations set forth in paragraph 7 of the Amended Complaint contain conclusions of law to which no response is required. To the extent that a response is required, British Airways denies the allegations contained in paragraph 7 of the Amended Complaint; British Airways states that the Executive Club Contract is a document that speaks for itself, respectfully refers the Court to the Executive Club Contract for the true and complete contents of that document, and denies any allegation inconsistent with the full terms thereof. Any attempt by the plaintiffs to characterize the Executive Club Contract is denied. By way of further answer, British Airways states that the Court found in its Order that, "[t]he plaintiffs also contend that the Terms and Conditions require that the fuel surcharges be imposed on British Airways by a third party and directly passed along to ticket purchasers. Nothing in the plain meaning or common usage of the term, however, requires such a restrictive definition."

8.      The allegations set forth in paragraph 8 of the Amended Complaint contain conclusions of law to which no response is required. To the extent that a response is required, British Airways denies the allegations contained in paragraph 8 of the Amended Complaint; British Airways states that the Executive Club Contract is a document that speaks for itself,

4

respectfully refers the Court to the Executive Club Contract for the true and complete contents of that document, and denies any allegation inconsistent with the full terms thereof.  Any attempt by the plaintiffs to characterize the Executive Club Contract is denied.  By way of further answer, British Airways states that the Court found in its Order that, "[t]he plaintiffs also contend that the Terms and Conditions require that the fuel surcharges be imposed on British Airways by a third party and directly passed along to ticket purchasers.  Nothing in the plain meaning or common usage of the term, however, requires such a restrictive definition."

9.      The allegations set forth in paragraph 9 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 9 of the Amended Complaint.  By way of further answer, British Airways states that the Court found in its Order that, "[t]he plaintiffs also contend that the Terms and Conditions require that the fuel surcharges be imposed on British Airways by a third party and directly passed along to ticket purchasers.  Nothing in the plain meaning or common usage of the term, however, requires such a restrictive definition."

10.      British Airways denies the allegations contained in paragraph 10 of the Amended Complaint.

11.      The allegations set forth in paragraph 11 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 11 of the Amended Complaint, except it admits that Russell Dover, Henry Horsey, Cody Rank and Suzette Perry are Executive Club members who are making certain allegations in this action, but British Airways denies that such allegations have merit.  By way of further answer, British Airways states that the Executive Club Contract is a document that speaks for itself, respectfully refers the Court to the Executive

Club Contract for the true and complete contents of that document, and denies any allegation inconsistent with the full terms thereof. Any attempt by the plaintiffs to characterize the Executive Club Contract is denied.

12.     British Airways lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Amended Complaint and therefore denies them.

13.     The allegations set forth in paragraph 13 of the Amended Complaint contain conclusions of law to which no response is required. To the extent that a response is required, British Airways lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Amended Complaint and therefore denies them.

14.     British Airways lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the Amended Complaint and therefore denies them.

15.     British Airways admits that Russell Dover resides in Campbell, California and has been a member of the Executive Club since approximately May 1996.

16.     British Airways lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Amended Complaint and therefore denies them, except it admits that Mr. Dover has testified that he resided in the United Kingdom during the first three years of his membership in the Executive Club, during which time he flew one to two intra-European flights each week and two to three flights between London Heathrow Airport ("LHR") and San Francisco International Airport ("SFO") each year. By way of further answer, Mr. Dover achieved the Gold tier of the Executive Club membership for one year in 2000.

17.     British Airways lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding residency except it admits that Mr. Dover has testified that he moved from the United Kingdom to the United States in July, 1999 and continued to fly between SFO and LHR on British Airways, and has taken approximately half a dozen intra-Europe flights with British Airways every year from 1999 to the present.

18.     British Airways admits that, as of November 21, 2013, Mr. Dover had a balance of approximately 168,655 Avios in his account.

19.     British Airways lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Amended Complaint and therefore denies them, except it admits that on April 26, 2012, Mr. Dover booked two first class, round-trip tickets from SFO to LHR and redeemed 150,000 Avios.  Mr. Dover was charged $1,177.25 per ticket in taxes, fees and surcharges, of which $854 represented the fuel surcharge.  By way of further answer, British Airways states that every "round-trip" ticket is actually a set of two tickets, so the actual fuel surcharge applied across four trips covering approximately 21,400 miles, equates to $427.00 of fuel surcharge per ticket.

20.     British Airways admits that Mr. Dover's flight departed on December 24, 2012 and returned on January 2, 2013 and that the ticket numbers were 125-2489147367 and 125-2489147368.

21.     British Airways admits that Henry Horsey resides in Washington, D.C. and has been a member of the Executive Club since May 4, 2011.

22.     British Airways admits that on January 10, 2013, Mr. Horsey booked two round-trip first class tickets from Washington, D.C. to Mumbai, India.

23.     British Airways admits that Mr. Horsey's flight departed Washington, D.C. on

7

December 17, 2013 to LHR, where Mr. Horsey boarded a second flight for Mumbai on December 18, 2013; British Airways admits further that Mr. Horsey returned from Mumbai to Washington, D.C., via LHR, on December 31, 2013.

24.     British Airways admits that Mr. Horsey redeemed 270,000 Avios for two round-trip first class tickets from Washington, D.C. to Mumbai, India and was charged $3,014.12 in taxes, fees, and charges, of which £1642.96 represented the fuel surcharge. By way of further answer, British Airways states that every "round-trip" ticket is actually a set of two tickets, so the actual fuel surcharge applied across four trips covering approximately 32,000 miles, equates to £410.74 per ticket.

25.     British Airways admits that Cody Rank resides in Seattle, Washington and has been a member of the Executive Club since approximately October 2009.

26.     British Airways admits that on May 17, 2012, Mr. Rank booked two economy class tickets with Avios for travel from Seattle-Tacoma International Airport ("SEA") to LHR departing on June 18, 2012, and then from London Gatwick Airport ("LGW") to Amsterdam Schiphol Airport ("AMS") on June 19, 2012. Mr. Rank also booked a return flight from Berlin-Tegel International Airport ("TXL") to Logan International Airport ("BOS") via LHR on July 4, 2012. The ticket numbers were 125-2489740183-83, 125-2489740183-84, 125-2489740183-85 and 125-2489740183-86.

27.     British Airways denies the allegations contained in paragraph 27 of the Amended Complaint, except it admits that Mr. Rank redeemed 98,000 Avios, and he was charged $693.39 per ticket in taxes, fees and surcharges, $496 of which was the fuel surcharge. By way of further answer, British Airways states that the total fuel surcharges applied across these four tickets and covering approximately 10,382 miles, equates to $248 per ticket.

8

28.     British Airways admits that Suzette Perry resides in Salinas, California and has been a member of the Executive Club since approximately May 2012.

29.     British Airways admits that on June 6, 2012, Ms. Perry booked five economy class tickets with Avios from Los Angeles International Airport ("LAX") to LHR departing on September 18, 2012 and returning to SFO on October 3, 2012.

30.     British Airways denies the allegations contained in paragraph 30, except it admits that Ms. Perry redeemed 250,000 Avios for the tickets and paid $658.52 per ticket in taxes, fees and surcharges.

31.     British Airways denies the allegations contained in paragraph 31 of the Amended Complaint, except it admits that British Airways' North American headquarters was in Jackson Heights, New York until approximately May 2011.

32.     British Airways denies the allegations in paragraph 32 of the Amended Complaint, except it admits that JFK has the largest volume of British Airways passenger traffic in the United States,  is located within the Eastern District of New York and that Newark International Airport ("EWR") is located approximately 15 miles from 225 Cadman Plaza East, Brooklyn, NY 11201.

33.     British Airways admits the allegations contained in paragraph 33 of the Amended Complaint.

34.     The allegations set forth in paragraph 34 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways admits that it is a citizen of a foreign country, but it otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 of the Amended Complaint and therefore denies them.

9

35.     The allegations set forth in paragraph 35 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways admits that venue is proper in this Court.

36.     The allegations set forth in paragraph 36 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 36, except it admits that the Executive Club Contract is available on the Company's website.

37.     The allegations set forth in paragraph 37 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways admits that it or its agents drafted the Executive Club Contract.  By way of further answer, British Airways states that the Executive Club Contract is a document that speaks for itself, respectfully refers the Court to the Executive Club Contract for the true and complete contents of that document, and denies any allegation inconsistent with the full terms thereof. Any attempt by the plaintiffs to characterize the Executive Club Contract is denied.  British Airways denies the remaining allegations contained in paragraph 37 of the Amended Complaint.

38.     The allegations set forth in paragraph 38 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 38 of the Amended Complaint.  By way of further answer, British Airways states that the Court found in its Order that, "[t]he plaintiffs also contend that the Terms and Conditions require that the fuel surcharges be imposed on British Airways by a third party and directly passed along to ticket purchasers.  Nothing in the plain meaning or common usage of the term, however, requires such a restrictive definition."

10

39.    The allegations set forth in paragraph 39 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 39 of the Amended Complaint, except that it admits that English law may apply to certain claims by certain Executive Club Members.  By way of further answer, British Airways states that the Executive Club Contract is a document that speaks for itself, respectfully refers the Court to the Executive Club Contract for the true and complete contents of that document, and denies any allegation inconsistent with the full terms thereof.  Any attempt by the plaintiffs to characterize the Executive Club Contract is denied.

40.    The allegations set forth in paragraph 40 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways states that the Executive Club Contract explicitly authorizes British Airways to charge Executive Club Members "all taxes and other charges associated with Reward travel on British Airways or a Service Partner airline", including, but not limited to fuel surcharges.  By way of further answer, British Airways states that the Executive Club Contract is a document that speaks for itself, respectfully refers the Court to the Executive Club Contract for the true and complete contents of that document, and denies any allegation inconsistent with the full terms thereof.  Any attempt by the plaintiffs to characterize the Executive Club Contract is denied. British Airways denies the remaining allegations contained in paragraph 40 of the Amended Complaint.  By way of further answer, British Airways states that the Court found in its Order that, "[t]he plaintiffs also contend that the Terms and Conditions require that the fuel surcharges be imposed on British Airways by a third party and directly passed along to ticket purchasers.

11

Nothing in the plain meaning or common usage of the term, however, requires such a restrictive definition."

41.     The allegations set forth in paragraph 41 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 41 of the Amended Complaint; British Airways states that the Executive Club Contract is a document that speaks for itself, respectfully refers the Court to the Executive Club Contract for the true and complete contents of that document, and denies any allegation inconsistent with the full terms thereof.  Any attempt by the plaintiffs to characterize the Executive Club Contract is denied.  By way of further answer, British Airways states that the Court found in its Order that, "[t]he plaintiffs also contend that the Terms and Conditions require that the fuel surcharges be imposed on British Airways by a third party and directly passed along to ticket purchasers.  Nothing in the plain meaning or common usage of the term, however, requires such a restrictive definition."

42.     The allegations set forth in paragraph 42 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 42 of the Amended Complaint, except it admits that British Airways levied the fuel surcharge and it is not a tax, fee or charge imposed by a government authority or by a third party.  British Airways states that the Executive Club Contract is a document that speaks for itself, respectfully refers the Court to the Executive Club Contract for the true and complete contents of that document, and denies any allegation inconsistent with the full terms thereof.  Any attempt by the plaintiffs to characterize the Executive Club Contract is denied.  By way of further answer, British Airways states that the Court found in its Order that, "[t]he plaintiffs also contend that the Terms and Conditions require

that the fuel surcharges be imposed on British Airways by a third party and directly passed along to ticket purchasers. Nothing in the plain meaning or common usage of the term, however, requires such a restrictive definition."

43.     British Airways denies the allegations contained in paragraph 43 of the Amended Complaint. The website "Kayak.com" speaks for itself, and British Airways respectfully refers the Court to "Kayak.com" for the true and complete contents of that website and denies any allegation inconsistent with the full terms thereof.

44.     British Airways lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 of the Amended Complaint and therefore denies them.

45.     The allegations set forth in paragraph 45 of the Amended Complaint contain conclusions of law to which no response is required. To the extent that a response is required, British Airways denies the allegations contained in paragraph 45 of the Amended Complaint. British Airways' website speaks for itself, British Airways respectfully refers the Court to the Company's website for the true and complete contents of that website and denies any allegation inconsistent with the full terms thereof. By way of further answer, British Airways states that the Court found in its Order that, "[t]he plaintiffs also contend that the Terms and Conditions require that the fuel surcharges be imposed on British Airways by a third party and directly passed along to ticket purchasers. Nothing in the plain meaning or common usage of the term, however, requires such a restrictive definition."

46.     British Airways admits the allegations contained in paragraph 46 of the Amended Complaint.

47.      British Airways denies the allegations contained in paragraph 47 of the Amended Complaint, except that it admits that its 2011 Annual Report discusses fuel, but British Airways states that the 2011 Annual Report is a document that speaks for itself, respectfully refers the Court to the 2011 Annual Report for the true and complete contents of that document, and denies any allegation inconsistent with the full terms thereof.  Any attempt by the plaintiffs to characterize the 2011 Annual Report is denied.

48.      British Airways denies the allegations contained in paragraph 48 of the Amended Complaint except that it admits that its 2011 Annual Report discusses fuel and hedging and that the quoted language appears in the document, but British Airways states that the 2011 Annual Report is a document that speaks for itself, respectfully refers the Court to the 2011 Annual Report for the true and complete contents of that document, and denies any allegation inconsistent with the full terms thereof.  Any attempt by the plaintiffs to characterize the 2011 Annual Report is denied.

49.      The allegations set forth in paragraph 49 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 49 of the Amended Complaint, except it admits that British Airways levied a fuel surcharge.  By way of further answer, British Airways states that the 2011 Annual Report is a document that speaks for itself, respectfully refers the Court to the 2011 Annual Report for the true and complete contents of that document, and denies any allegation inconsistent with the full terms thereof.  Any attempt by the plaintiffs to characterize the 2011 Annual Report is denied.

50.      British Airways denies the allegations set forth in paragraph 50 of the Amended Complaint.

14

51.     British Airways lacks the knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 51 of the Amended Complaint and therefore denies them.

52.     British Airways lacks the knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 52 of the Amended Complaint and therefore denies them.

53.     British Airways lacks the knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 53 of the Amended Complaint and therefore denies them.

54.     British Airways lacks the knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 54 of the Amended Complaint and therefore denies them.

55.     British Airways lacks the knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 55 of the Amended Complaint and therefore denies them.  British Airways denies the remaining allegations contained in paragraph 55 of the Amended Complaint.

56.     The allegations set forth in paragraph 56 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 56 of the Amended Complaint, except it admits that the plaintiffs purport to bring this action on behalf of purported residents of the United States who are members of the Executive Club and who purchased a Reward Ticket with Avios from November 9, 2006 to the present and who paid a fuel surcharge on the Reward Ticket, but British Airways denies that any such class can be certified here.

57.     British Airways admits the allegations contained in paragraph 57 of the Amended Complaint.

58.     British Airways admits the allegations contained in paragraph 58 of the Amended Complaint.

59.     The allegations set forth in paragraph 59 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 59 of the Amended Complaint.

60.     The allegations set forth in paragraph 60 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 60 of the Amended Complaint.  By way of further answer, British Airways states that the Court found in its Order that, "[t]he plaintiffs also contend that the Terms and Conditions require that the fuel surcharges be imposed on British Airways by a third party and directly passed along to ticket purchasers.  Nothing in the plain meaning or common usage of the term, however, requires such a restrictive definition."

61.     The allegations set forth in paragraph 61 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 61 of the Amended Complaint.

62.     The allegations set forth in paragraph 62 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 62 of the Amended Complaint.

63.     The allegations set forth in paragraph 63 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 63 of the Amended Complaint,

except it admits that the plaintiffs are members of the Executive Club.

64.     The allegations set forth in paragraph 64 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 64 of the Amended Complaint, except it admits that the redemption of Avios for Reward Tickets is subject to the Executive Club Contract, which incorporates the Conditions of Carriage.

65.     The allegations set forth in paragraph 65 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 65 of the Amended Complaint, except it admits that the plaintiffs redeemed Avios for Reward Tickets.

66.     The allegations set forth in paragraph 66 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 66 of the Amended Complaint, except it admits that the plaintiffs were assessed a fuel surcharge on Reward Tickets.

67.     The allegations set forth in paragraph 67 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 67 of the Amended Complaint.

68.     British Airways lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68 of the Amended Complaint and therefore denies them.

69.     British Airways lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69 of the Amended Complaint and therefore denies them.

70.      British Airways states that paragraph 70 contains ambiguous allegations regarding British Airways' sophistication and characterizations of its resources and therefore denies them.  British Airways admits that it is the United Kingdom's largest international scheduled airline.

71.      British Airways lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 71 of the Amended Complaint but denies that any purported class member has been damaged by British Airways.

72.      British Airways lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 72 of the Amended Complaint and therefore denies them.

73.      British Airways denies the allegations contained in paragraph 73 of the Amended Complaint.

74.      British Airways repeats its answers to paragraphs 1 through 73 as if fully set forth herein.

75.      No response is required to the allegations in paragraph 75 because they relate to a claim that has been dismissed from this action.  To the extent an answer is required, British Airways states that the allegations set forth in paragraph 75 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 75 of the Amended Complaint.  By way of further answer, British Airways states that the Court found in its Order that, "[t]he plaintiffs also contend that the Terms and Conditions require that the fuel surcharges be imposed on British Airways by a third party and directly passed along to ticket purchasers.  Nothing in the plain meaning or common usage of the term, however, requires such a restrictive definition."

76.     The allegations set forth in paragraph 76 of the Amended Complaint contain conclusions of law to which no response is required.  To the extent that a response is required, British Airways denies the allegations contained in paragraph 76 of the Amended Complaint.

WHEREFORE, British Airways denies that the plaintiffs are entitled to any of the damages or other relief sought and British Airways denies that a class can be certified here, and British Airways demands the dismissal of the Amended Complaint, its costs and expenses of this action, and such other relief that the Court may deem appropriate.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof as to any defense or issue that would otherwise rest on the plaintiffs or as to any elements of the plaintiffs' claims, and reserving the right to amend this Answer to assert any additional defenses when, and if, in the course of its investigation, discovery, preparation for trial, or otherwise it becomes appropriate to assert such defenses, British Airways asserts the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

1.     The Amended Complaint and the cause of action alleged therein fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

2.     Pursuant to the Federal Rules of Civil Procedure 44.1, the plaintiffs' action may be governed in whole or in part by foreign law.

## THIRD AFFIRMATIVE DEFENSE

3.     The plaintiffs' claims are preempted by the Airline Deregulation Act of 1978, codified at 49 U.S.C. §41713 *et seq*.

## FOURTH AFFIRMATIVE DEFENSE

19

4.      British Airways states that to the extent it had any obligations to the plaintiffs or to the putative class such obligations were fully performed and satisfied in all respects.

## FIFTH AFFIRMATIVE DEFENSE

5.      British Airways states that the claims of the plaintiffs (and the putative class) fail because the Company was explicitly permitted to assess a fuel surcharge under the terms of the Conditions of Carriage and the Executive Club Contract.

## SIXTH AFFIRMATIVE DEFENSE

6.      Some or all of the plaintiffs and the putative class are barred from claiming injury and damages, if any, because the plaintiffs and the putative class failed to make reasonable efforts to mitigate such alleged injury or damage, which would have prevented the plaintiffs' alleged injury or damages.

## SEVENTH AFFIRMATIVE DEFENSE

7.      The claims of the plaintiffs and the putative class are governed by and limited by the Conditions of Carriage, the Executive Club Contract and applicable tariffs.

## EIGHTH AFFIRMATIVE DEFENSE

8.      Some or all of the claims of the plaintiffs and the putative class are barred by the doctrines of waiver, estoppel, or ratification.

## NINETH AFFIRMATIVE DEFENSE

9.      Some or all of the claims of the plaintiffs and the putative class are barred by the doctrine of laches.

## TENTH AFFIRMATIVE DEFENSE

10.      To the extent that British Airways exercised discretion under the terms of the Conditions of Carriage and the Executive Club Contract, it exercised that discretion in good

faith.

## ELEVENTH AFFIRMATIVE DEFENSE

11.    Some or all of the claims of the plaintiffs and the putative class are barred by the voluntary payment doctrine.

## TWELFTH AFFIRMATIVE DEFENSE

12.    Some or all of the claims of the plaintiffs and the putative class are barred, in whole or in part, by the applicable statutes of limitations.

## THIRTEENTH AFFIRMATIVE DEFENSE

13.    Some or all of the claims of the plaintiffs and the putative class are barred by the doctrine of accord and satisfaction.

## FOURTEENTH AFFIRMATIVE DEFENSE

14.    The claims of the plaintiffs and the putative class are barred because any agreements between British Airways and the plaintiffs were legitimate and enforceable agreements entered into on an arm's length basis and based on full disclosure to the extent required by law.

## FIFTEENTH AFFIRMATIVE DEFENSE

15.    The claims of the plaintiffs and the putative class are barred, in whole or in part, because British Airways acted in accordance with the established custom and usage of the Company's industry.

## SIXTEENTH AFFIRMATIVE DEFENSE

16.    To the extent that the plaintiffs or any other putative class member did not pay a fuel surcharge for a Reward Ticket during the proposed Class Period, that plaintiff's claim is barred for lack of standing.

21

## SEVENTEENTH AFFIRMATIVE DEFENSE

17.     The fuel surcharge assessed is not considered unfair per Regulation 6 (2) of the Unfair Terms in Consumer Contract Regulations 1999.

## EIGHTEENTH AFFIRMATIVE DEFENSE

18.     Some or all of the claims of the plaintiffs and the putative class members are barred by the doctrine of unclean hands.

## NINETEENTH AFFIRMATIVE DEFENSE

19.     Some or all of the claims of the plaintiffs and the putative class members are barred by their failure to join an indispensable party.

## TWENTIETH AFFIRMATIVE DEFENSE

20.     The acts and/or omissions of third parties constituted independent, intervening causes for which British Airways cannot be liable.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

21.     Some or all of the claims of the plaintiffs and the putative class members are barred because the plaintiffs have failed to allege, and have not suffered, any cognizable injury attributed, in whole or in part, to any conduct by British Airways.  Any damages which the plaintiffs seek to recover against British Airways were in fact caused by actions or omissions of third parties.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

22.     Some or all of the claims of the plaintiffs and the putative class members are barred by their failure to give British Airways an opportunity to correct any alleged issues with its performance of the contract.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

23.     This action may not be maintained as a class action.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

24.     The plaintiffs and others alleged to be members of the purported class, may not maintain any claimed cause of action as a class action, because there are insufficient questions of law or fact common to the putative class as required by Federal Rule of Civil Procedure 23, and individual issues predominate.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

25.     The plaintiffs and others alleged to be members of the purported class, may not maintain any claimed cause of action as a class action, because the putative class members are not so numerous as required by Federal Rule of Civil Procedure 23.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

26.     The plaintiffs' claims are not typical of other members of the putative class as required by Federal Rule of Civil Procedure 23.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

27.     The plaintiffs are inadequate class representatives.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

28.     Some or all of the claims of the plaintiffs and the putative class members are barred because the plaintiffs failed to preserve and permitted the spoliation of material evidence.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

29.     British Airways hereby reserves and asserts all affirmative and other defenses available under any applicable federal or state law.  British Airways presently has insufficient knowledge or information upon which to form a belief as to whether it may have other, as yet unstated, affirmative defenses available.  Therefore, British Airways reserves its right to assert additional defenses in the event that discovery indicates they would be appropriate.

WHEREFORE, British Airways denies that the plaintiffs are entitled to any of the damages sought and British Airways denies that a class can be certified here, and respectfully requests that the Court:

a.     dismiss the Amended Complaint with prejudice and enter judgment for Defendant;

b.     award to Defendant its costs and expenses incurred in defending this action; and

c.     grant such other and further relief as the Court deems just and proper.

24

Dated: New York, New York
      January 23, 2015

                         DLA PIPER LLP (US)

                         By: _____

                           Richard F. Hans
                           Keara M. Gordon
                           Colleen M. Carey
                           Timothy Birnbaum
                           richard.hans@dlapiper.com
                           keara.gordon@dlapiper.com
                           colleen.carey@dlapiper.com
                           timothy.birnbaum@dlapiper.com
                           1251 Avenue of the Americas
                           New York, NY  10020-1104
                           Telephone:  (212) 335-4500
                           *Attorneys for Defendant*
                           *British Airways PLC*

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2015, I caused the foregoing Answer of Defendant British Airways PLC to the Amended Class Action Complaint, to be served on all counsel of record via the ECF filing system.

Timothy H. Birnbaum
DLA Piper (US) LLP
1251 Avenue of the Americas
New York, New York 10020-110
Phone: 212-335-4500
Fax: 917-778-8037
colleen.carey@dlapiper.com

*Attorneys for Defendant*
*British Airways PLC*