

DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York  10020-1104
www.dlapiper.com

Keara M. Gordon
keara.gordon@dlapiper.com
T  212.335.4632
F  212.884.8632

November 25, 2015

VIA ECF

Honorable Raymond J. Dearie, United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *Dover, et al. v. British Airways, PLC (UK)*, No. 12-cv-05567 (E.D.N.Y.)

Your Honor:

British Airways PLC ("BA") respectfully requests, pursuant to Federal Rules of Civil Procedure 16(f) and 37(c), that the Court: strike the report of Robert Engle, Ph.D.; preclude him from testifying or supporting or opposing any motion; and order the plaintiffs to pay BA's fees and expenses related to this motion.[1]  Six months past the deadline for the plaintiffs to identify experts and two months past the close of expert discovery, they are attempting to introduce a new expert report – from an entirely new expert – in flagrant violation of the Federal Rules and this Court's scheduling orders.  Introducing a new expert, via a reply brief in a *Daubert* motion, after the close of expert discovery, after BA submitted its opposition to the plaintiffs' class certification motion, upon the completion of *Daubert* briefings, and only a few weeks before the deadline for BA's summary judgment motion[2] is outrageous and prejudicial to BA.  *See, e.g., Brenton v. Consol Rail Corp.*, 2006 WL 1888598, at *4 n.5 (W.D.N.Y. July 7, 2006) ("an eleventh hour disclosure effectively prevent[s] any discovery of [an] expert, a tactic which also lends itself to preclusion and Rule 37 sanctions").

"[T]he court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party … fails to obey a scheduling or other pretrial order."  Available sanctions include preclusion and an award of expenses.  *Tex. Instruments Inc. v. Powerchip Semiconductor Corp.*, 2007 WL 1541010, at *12 (S.D.N.Y. May 24, 2007).  Under Rule 37, "it is within the court's discretion to preclude evidence submitted in violation of Rule 26(a) from use on a motion or at trial."  *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 434 (S.D.N.Y. 2014).

---

[1] On November 23, 2015, the parties met and conferred.  The plaintiffs oppose the relief BA seeks.  A summary of that meet and confer is reflected in the e-mail from Colleen Carey to Jason Lichtman, dated November 23, 2015, and attached as Ex. 1 to the Declaration of Colleen M. Carey ("Carey Decl.") filed contemporaneously herewith.  A full chronology is attached as Ex. 7 to the Carey Decl.

[2] BA respectfully requests that the Court issue an expedited ruling on this motion due to BA's impending deadline for summary judgment, which is December 17, 2015.



Honorable Raymond J. Dearie<br>November 25, 2015<br>Page Two

Here, in their Complaint, the plaintiffs touted an r-squared analysis ("R-Squared Analysis"), which they claimed proved that BA's fuel surcharges "bore little relationship to – and were not based upon – changes in the price of fuel"; they continue to rely on this allegation today. (Compl., ¶ 55; Amended Compl. ¶ 55). It is this allegation that was an important determinant in the Court's denial of BA's motion to dismiss. (MTD Order at 10). But, when BA tried to test the veracity of the allegations regarding the R-Squared Analysis, the plaintiffs hid behind privilege, and ran from the analysis. (7/10/14 Hrg. Tr. at 6:20-21; 8:2-8).

Later, the plaintiffs designated Jonathan I. Arnold, Ph.D., as their damages expert. (Report of Dr. Jonathan Arnold, dated May 4, 2015 ("May Arnold Report")). Dr. Arnold did not perform any statistical or econometric analysis to test whether BA's fuel surcharges were reasonably related to fuel prices. (Ex. 2, May Arnold Report). Nevertheless, in his reply report, he opined that the relationship between BA's fuel surcharge and "changes in fuel prices or costs is weak" and that BA's fuel surcharge "did not move with fuel prices or costs." (Ex. 2, Arnold Rep. ¶¶ 10, 40). To test Dr. Arnold's opinions, Dr. Hildreth performed statistical analyses and he concluded "that BA's fuel surcharge is not only reasonably related to the price (or cost) of jet fuel kerosene, it is highly correlated." (Ex. 3, Hildreth Rep. ¶ 41).

BA was fully prepared to seek the Court's permission to deviate from the Scheduling Order to designate Dr. Hildreth, but instead of burdening the Court, the parties entered into a voluntary stipulation which designated him as an expert, provided for supplemental expert reports, and extended expert discovery slightly. (Carey Decl. ¶ 3). The Court "so ordered" the stipulation, and notified the parties that "no further extension w[ould] be granted absent exceptional cause." (9/4/2015 Order). BA offered to make Dr. Hildreth available for deposition, but the plaintiffs chose not to depose him – presumably so that his critique of Dr. Arnold's response would not become part of the expert discovery record. (*See* Ex. 6). Dr. Arnold – who is not an econometrician – submitted a baseless challenge and chided Dr. Hildreth for not anticipating Dr. Arnold's criticisms and incorporating them into his report. (Plaintiffs' Mem. In Opp. to Def's. Mot. To Exclude the Testimony of Jonathan I. Arnold, Ph.D. at 18 n.9).

In response, BA submitted a declaration from Dr. Hildreth clarifying his earlier findings and addressing the plaintiffs' critique, which is entirely appropriate. "To the extent that an expert affidavit is within the scope of the initial expert report, it is properly submitted … even outside the time frame for expert discovery." *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 279 (S.D.N.Y. 2011) (internal quotations omitted) ("[W]here an expert's affidavit provides evidentiary details for an opinion expressed in his expert report" it can be considered). *See also Pickett v. IBP, Inc.* 2001 WL 36381846, at *1 (M.D. Ala. Mar. 28, 2001) (rejecting motion to strike; expert affidavits provided with opposition were appropriate because they helped "determin[e] whether their expert witnesses satisfied the *Daubert* standard" and "attempt[ed] to explain or clarify the experts' previously submitted reports"); *Aviva Sports,*



Honorable Raymond J. Dearie<br>
November 25, 2015<br>
Page Three

*Inc. v. Fingerhut Direct Marketing, Inc.*, 829 F. Supp. 2d 802, 820 (D. Minn. 2011) (allowing declarations that "clarify their reports in response to questions raised in [the] *Daubert* motions").

Brazenly, in a reply brief to the *Daubert* challenge against Dr. Hildreth – to which BA cannot respond – the plaintiffs now proffer an entirely new expert – who has not provided any discovery or back up to his analysis and who BA cannot cross-examine. *See, e.g., Talarico v. Excellus Health Plan, Inc.*, 2015 WL 2122176, at *3 (N.D.N.Y. May 6, 2015) (citing a "general rule prohibiting the submission of new evidence in a reply" due to the "fundamental unfairness to the nonmoving party"). If BA could cross-examine him, or reply to his declaration, BA would point out, among other things, that he is flat wrong when he contends that Dr. Hildreth claimed he used the Engle-Granger test. Rather, Dr. Hildreth used one of the several methods described in Engle's and Granger's work, which Dr. Hildreth explains was the Augmented Dickey-Fuller test. (Ex. 3, Hildreth Rep. ¶¶ 21, 22, 24). It is also remarkable that the plaintiffs now dismiss generally accepted statistical r-squared analysis as "junk science" – particularly since that "junk science" provided the very basis on which this Court upheld their Complaint.

The plaintiffs' attempt to introduce belatedly an entirely new expert confirms that Dr. Arnold is not sufficiently steeped in econometrics to opine on Dr. Hildreth's work. It is nevertheless sanctionable conduct to sandbag a party with a surprise expert in a *Daubert* reply and then deny that party the opportunity to "expose [the purported expert's] weaknesses through cross-examination and argument." *See U.S. v. Young*, 745 F.2d 733, 761 (2d Cir. 1984); *see also Guttman v. Commodity Futures Trading Com'n*, 197 F.3d 33, 38-39 (2d Cir. 1999) ("It is undisputed that denial of the opportunity to cross-examine a witness whose testimony forms the basis for adverse findings can constitute grounds for reversal.").

In *Chen*, the Court precluded an expert declaration submitted "over three months after the close of discovery, and in the midst of summary-judgment briefing" because it "sandbag[ged] the other parties," necessitated the reopening of discovery, and "reward[ed] the [] defendants for disregarding this court's orders by imposing on the other parties at this late stage the need to invest significant time and expense in the task of assessing and responding to [the] untimely report." 8 F. Supp. 3d at 434-36. *See also Staudinger+Franke GMBH v. Casey*, 2015 WL 3561409, at *7 (S.D.N.Y. June 8, 2015) (same); *Coleman v. Dydula*, 190 F.R.D. 316, 318 (W.D.N.Y. 1999) (precluding expert report, which was "many months overdue"). So too here. BA is clearly prejudiced by its inability to depose Dr. Engle or to respond to his critique. And, BA is weeks away from filing for summary judgment and it has already filed its opposition to class certification. Finally, there is no reasonable excuse for the plaintiffs' delay in retaining an econometrics expert since they relied on a regression analysis in their Complaint three years ago.

For all of these reasons, respectfully, the Court should grant BA's motion for sanctions in its entirety and preclude Dr. Engle's testimony from use in any manner in this case. In the event it declines to do so, BA respectfully requests that, to alleviate the substantial prejudice BA has experienced, the Court order the remedies outlined in Exhibit A.



Honorable Raymond J. Dearie
November 25, 2015
Page Four

Respectfully Submitted,

*Keara Gordon/em*

Keara M. Gordon