**Lieff
Cabraser
Heimann&
Bernstein**

Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
t 212.355.9500
f 212.355.9592

November 27, 2015

Jason L. Lichtman
Partner
jlichtman@lchb.com

**VIA ECF**
Honorable Raymond J. Dearie
United States District Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 112017

RE:   Defendant's motion for sanctions.
      *Dover, et al. v. British Airways, PLC (UK)*, No. 12-cv-5567 (E.D.N.Y.)

Your Honor:

British Airways' motion for sanctions (Dkt. 202) is frivolous, and Plaintiffs respectfully ask the Court to deny it.

### Relevant Background

On November 6, 2015, one of BA's experts—Dr. Andrew Hildreth—submitted a new expert report. (*See* Dkt. 182-4.) This report was submitted in violation of a Court Order providing that: (1) no party could serve expert reports after September 14, 2015 "absent exceptional cause"; (2) experts could "only testify to opinions contained within the four corners of their expert reports." (Dkt. 160 at 1; 9/4/15 Minute Order.) In his new report, Dr. Hildreth primarily testified that he had conducted a test using "the standard method as described by Engle and Granger[]." (Dkt. 182-4 ¶ 21.)

On November 20, 2015, Plaintiffs filed a reply in support of their motion to exclude Dr. Hildreth's testimony. (Dkt. 182.) They asked the Court to disregard his November 6 testimony because it violated the Court's 9/4/15 Order. (Dkt. 182 at 4-5.) Out of an abundance of caution, however, Plaintiffs also responded substantively. They explained that Dr. Hildreth was wrong to claim that his new report disclosed a test using "the standard method as described by Engle and Granger[]" (*Id.* at 1.) And Plaintiffs submitted a declaration from Nobel Laureate Robert F. Engle to prove it. (*See id.*; *see also* Dkt. 182-1.)

### BA's Argument Does Not Have Merit

BA's contention that the Court should sanction Plaintiffs is baseless. BA's primary argument seems to be that BA should be allowed to submit untimely expert testimony, but Plaintiffs should not be permitted to respond to that testimony. In support of this novel proposition, BA cites cases explaining that experts may usually provide testimony "*within the scope of the initial expert report*" in opposition to a motion under *Daubert*. (Dkt. 202 at 2 (emphasis added).) Such cases do not support BA for three reasons.

Honorable Raymond J. Dearie
November 27, 2015
Page 2

First, Dr. Hildreth's new opinions are not "within the scope of his initial expert report." In Dr. Hildreth's initial report, he disclosed results from a set of tests. (*See* Dkt. 178-2.) Dr. Hildreth's newest report discloses results from an entirely different test. (*See* Dkt. 182-4.) It must be excluded for this reason. *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 280 (S.D.N.Y. 2011) (explaining that expert declarations may not introduce "a wholly new and complex approach designed to fill a significant and logical gap").

Second, even if Dr. Hildreth's new opinion could somehow be viewed as within the broad "scope" of his initial report, this new test was not contained within the "four corners" of that initial report. And in this case, unlike any of the cases cited by BA, a Court Order specifically prohibits experts from offering testimony outside the "four corners" of their expert reports. (Dkt. 160 at 1; 9/4/15 Minute Order.) Indeed, this situation is one primary reason Plaintiffs sought the "four corners" order—Plaintiffs feared BA might attempt to drag out the expert discovery process in an effort to delay trial.

Third, even if Dr. Hildreth is permitted to introduce his new opinions, none of BA's cases prevent Plaintiffs from introducing a short declaration that responds only to the new test disclosed in that opinion. Were it otherwise, experts could purposefully withhold critical tests and analysis, knowing that the other party could not respond to them as effectively as if the opinions had been disclosed in a timely fashion. That said, and while Plaintiffs respectfully submit that there is value in having Professor Engle himself set the record straight, Dr. Jonathan Arnold also testified that Dr. Hildreth did not perform the Engle-Granger test, and BA did not move to strike Dr. Arnold's testimony. (*See* Dkt. 182-6 ¶ 10.)

**BA Should Only Be Permitted Further Expert Discovery at BA's Expense and Without Delaying Any Existing Deadlines**

BA's recent expert discovery activities—surprise sur-reply reports in August and early September, a surprise sur-sur-sur reply report only three weeks ago, and now this motion—are part of a pattern of behavior that improperly drives up the cost of litigation for Plaintiffs and that seems calculated to attempt to delay the June 2015 trial date. For example, BA has now asked for time to file a *Daubert* motion to exclude Professor Engle's declaration (*see* Dkt. 202-1) notwithstanding the fact that: (1) Professor Engle is not offering any jury testimony; and (2) Professor Engle's testimony is focused solely on the subject for which he won the Nobel Prize— including the test that bears his name.[1]

Plaintiffs ask the Court to put an end to BA's delaying tactics and enforce the September 4, 2015 Scheduling Order that bars *any* new expert report after September 14th or outside the four corners of an expert's report, thus barring Dr. Hildreth's newest expert report and rendering Professor Engle's declaration moot. In the alternative, Plaintiffs respectfully submit that BA

---

[1] BA also asked the Court to order Plaintiffs to produce all of Professor Engle's data (*see* Dkt. 202-1), notwithstanding that Plaintiffs offered to produce that data to BA before BA filed its sanctions motion. *See* Ex. A (attaching the full e-mail chain that BA truncated in Dkt. 203-1).

Honorable Raymond J. Dearie
November 27, 2015
Page 3

should only be permitted to cross-examine Professor Engle at BA's sole expense, including preparation associated with any deposition or court testimony.  Plaintiffs respectfully submit that this is appropriate because Professor Engle only introduced testimony in this matter because BA's expert wrongly claimed, in a Court-order-violating report three weeks ago, to have applied Professor Engle's "standard method."[2]

One final point.  In briefing, BA argues that it could show through cross examination that Professor Engle is "flat wrong."  (Dkt. 202 at 3.)  This is a remarkable claim.  Dr. Hildreth stated in his report that he used "the standard method as described by Engle and Granger[]" (Dkt. 182-4 ¶ 21.)  Professor Engle—who certainly knows his own "standard method"—has explained that Dr. Hildreth did *not* use "the standard method," but instead used a completely different test known as the Augmented Dickey Fuller ("ADF") test that is wholly inappropriate in this context.  (Dkt. 182 at 3-4; Dkt. 182-1.)  This is not an obscure academic disagreement: the ADF test is a test of a *single* variable and thus cannot be used to determine the relationship between two or more variables such as the relationship between the YQ Charge and fuel prices. (*See* Dkt. 182-1 ¶ 6.)

**Conclusion**

BA should not be permitted to string out expert discovery to avoid trial, particularly not with an expert who provides constantly changing testimony.  Plaintiffs ask the Court to deny BA's motion and: (1) deny any requests for further expert briefing; (2) hold that all expert discovery has concluded, either by excluding the November expert reports or by allowing expert discovery to finally end with their production.

Respectfully Submitted,

Jason L. Lichtman

David S. Stellings
Nicholas Diamand
Douglas I. Cuthbertson

1282367.1

---

[2] BA makes a number of claims about the history of Dr. Hidlreth's testimony that are misleading. (*See* Dkt. 202 at 2.)  Plaintiffs have addressed the history of Dr. Hildreth's testimony fully in other briefing (Dkt. 177; 182; 199; 201).  It bears emphasis, however, that BA's new claim that the parties reached an agreement to permit Dr. Hildreth's August expert sur-reply report *before* he submitted that report is not correct.  (Dkt. 203-6 (demonstrating that the parties finalized the relevant agreement extending expert discovery on September 2).)