

DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
www.dlapiper.com

Keara M. Gordon
keara.gordon@dlapiper.com
T 212.335.4632
F 212.884.8632

November 30, 2015

VIA ECF

Honorable Raymond J. Dearie, United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Dover, et al. v. British Airways, PLC (UK)*, No. 12-cv-05567 (E.D.N.Y.)

Your Honor:

British Airways PLC ("BA") writes in further support of its motion for sanctions to exclude an entirely new expert, Robert Engle, Ph.D., who the plaintiffs' counsel are attempting to designate via a reply brief to their motion to exclude the expert testimony of BA's econometrician, Dr. Andrew Hildreth, six months after the plaintiffs' expert reports were due and two months after expert discovery closed. The plaintiffs' opposition – which is almost entirely devoid of authority – offers no support for the plaintiffs' violation of the Federal Rules and this Court's orders. The Court should grant BA's motion for sanctions in its entirety.

**BA Properly Submitted a Declaration from Dr. Hildreth in its Opposition to the Plaintiffs'** ***Daubert*** **Motion.** The plaintiffs posit that they can launch a baseless critique of Dr. Hildreth's opinions and then preclude him from responding in any fashion. At the same time, they argue that they are free to designate an entirely new expert, and if BA wants to test his opinions through cross-examination, BA has to pay for it. Unsurprisingly, the plaintiffs do not cite to a single case that supports these propositions. Each of the plaintiffs' arguments fails.

First, courts routinely permit an expert to submit a declaration in opposition to a *Daubert* motion to help determine whether the expert satisfies the standard for admissibility. *See e.g.*, *Cullen v. Village of Pelham Manor*, 2008 WL 6155963, at *36 n.16 (rev'd on other grounds) (S.D.N.Y. Nov. 25, 2008) (permitting declaration submitted in opposition to *Daubert* motion because it "expand[ed] upon the conclusions in his expert report and render[ed] it more complete …but it also clarifie[d] [the expert's] deposition testimony, which the [party] relied upon in making their *Daubert* motion"); *Pickett v. IBP, Inc.* 2001 WL 36381846, at *1 (M.D. Ala. Mar. 28, 2001) (rejecting motion to strike; expert affidavits provided with opposition were appropriate because they helped "determin[e] whether their expert witnesses satisfied the *Daubert* standard" and "attempt[ed] to explain or clarify the experts' previously submitted reports"); *Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.*, 829 F. Supp. 2d 802, 820 (D. Minn. 2011) (allowing



Honorable Raymond J. Dearie
November 30, 2015
Page Two

declarations that "clarify their reports in response to questions raised in [the] *Daubert* motions"). The plaintiffs do not attempt to distinguish – much less address – these cases in their Opposition.

*Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 279 (S.D.N.Y. 2011), cited by the plaintiffs, supports BA's position. There, the Court explained that "where an expert's affidavit provides evidentiary details for an opinion expressed in his expert report" it can be considered on a dispositive motion even if it was submitted after the close of expert discovery. *Id.*; *see also Lide ex rel. Lidle v. Cirrus Design Corp.*, 2010 WL 2674584, at *9 n.4 (S.D.N.Y. July 6, 2010) (same); *Emig v. Electrolux Home Prods., Inc.*, 2008 WL 420098, at *4 n.4 (S.D.N.Y. Sept. 11, 2008) (allowing affidavit that "offer[ed] more information and elaboration on opinions previously expressed"). So too here.

Here, Dr. Hildreth provided the results of his cointegration testing (Hildreth Decl. ¶¶ 21-24), performed before reaching his conclusion that BA's fuel surcharge and fuel prices were "not only reasonably related to the price (or cost) of jet fuel kerosene, [they were] highly correlated." (Hildreth Report, ¶¶ 41). His recent declaration provided additional information and evidentiary detail for the opinions in his expert report. As such, the plaintiffs are incorrect when they assert that Dr. Hildreth "expound[ed] on a wholly new and complex approach." (*See* Pl. Opp. at 2).

Second, the stipulation entered into by the parties and ordered by the Court does not prohibit *any expert*, including Dr. Hildreth, from "updat[ing] their analysis … to conform their existing analysis to evidence this Court deems admissible."[1] (9/2 Stipulation ¶ 3). Indeed, the plaintiffs' own expert, Dr. Arnold, submitted an expert report updating his analysis in response to Dr. Hildreth. (September 14, 2015 Supplemental Expert Report of Jonathan Arnold ¶¶ 6-20). Under the express language of the stipulation, Dr. Hildreth was permitted to respond to Dr. Arnold's new "evidence." Any other result would be nonsensical and prejudicial to BA as it would permit the plaintiffs to offer baseless critiques to which BA's experts could never respond. This stipulation, however, never contemplated or permitted the plaintiffs to add an entirely new expert at the eleventh hour.

Third, the plaintiffs do not cite a single case allowing a party to designate an entirely new expert at this late date. Nevertheless, they argue that they were permitted to do so because the new expert responded to Dr. Hildreth's declaration and any other rule would permit a party to "withhold critical tests." (*See* Pl. Opp. at 2). Not so. BA did not withhold anything. The plaintiffs had every opportunity to question Dr. Hildreth on whether he performed cointegration

---

[1] The plaintiffs falsely claim that BA is "not correct" when it states that "the parties reached an agreement to permit Dr. Hildreth's August expert sur-reply report *before* he submitted that report." (Pl. Opp, at 3 n.2 (emphasis in original)). As evidenced by Exhibit 1, the parties reached an agreement in principle on August 27, 2015, and were operating under that agreement while they finalized the language of the stipulation submitted to the Court on September 2, 2015. It is particularly egregious for the plaintiffs to argue otherwise when they know that BA delayed finalizing the language of the stipulation so that it could provide Dr. Hildreth's report to the plaintiffs at the earliest possible time. (*Id.*).



testing, the manner of that testing, and the results. (Sept. 2, 2015 Email, Ex. 6 to Nov. 25, 2015 Carey Decl.). Importantly, the plaintiffs do not contest that they chose to forego deposing Dr. Hildreth to prevent his response to their criticisms from becoming part of the evidentiary record before *Daubert* motions were filed. (*See* Pl. Opp. ). They cannot now take actions that prejudice BA simply because they failed to develop a record.[2]

Finally, the plaintiffs assert that BA makes the "remarkable" claim that Dr. Engle is wrong when he asserts that Dr. Hildreth claimed to have performed the Engle-Granger test. (Pl. Opp. at 3). Dr. Hildreth stated that he "tested for cointegration using the standard method as described by Engle and Granger's published work." (Hildreth Decl. ¶ 21). That work referred to seven different test statistics for testing for cointegration. Ex. 2, Robert F. Engle & C.W.J. Granger, *Co-Integration and Error Correction: Representation, Estimation, and Testing*, Econometrica, Vol. 55, No. 2 (Mar., 1987), at 265-66. One such test was the augmented Dickey-Fuller test ("ADF"), performed by Dr. Hildreth, and described as such in his declaration. *Id.* at 266; Hildreth Decl. ¶ 21 ("I then tested the errors from the regression for stationarity with an ADF test"); ¶22 (Column labelled "Cointegration test: ADF on residuals"). Engle and Granger's work referred to the ADF test as the "recommended approach." Ex. 2, at 269. In any event, BA has a due process right to cross-examine Dr. Engle regarding the foundation for and his opinions expressed in his report.

The remainder of the plaintiffs' miscellaneous arguments can be easily dismissed. The plaintiffs have no basis to assert that this Court should ignore the declaration submitted by Dr. Hildreth. As such, their argument that this dispute is moot is mistaken. Similarly, the plaintiffs mischaracterize BA's request for a *Daubert* motion related to Dr. Engle. (Pl. Opp., at 2). BA asked only for an opportunity to *Daubert* Dr. Engle if the Court permits him to testify at trial and/or to support or oppose any motion. (Mot. for Sanctions, dated Nov. 25, 2015 at Ex. A).

For these reasons, respectfully, the Court should grant BA's motion for sanctions.

Respectfully Submitted,

Keara Gordon/em

Keara M. Gordon

---

[2] Oddly, the plaintiffs claim that if Dr. Engle's testimony is excluded, the Court may rely upon Dr. Arnold's recitation of Dr. Engle's results because "BA did not move to strike Dr. Arnold's testimony." (Pl. Opp., at 2). Dr. Arnold does not have the expertise to perform such a critique himself and did not perform the analysis. If the Court agrees that Dr. Engle's testimony must be precluded, then any recitation of it by Dr. Arnold should be precluded as well to remedy the prejudice experienced by BA.