IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

RUSSEL DOVER, HENRY HORSEY, CODY RANK, and SUZETTE PERRY, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

BRITISH AIRWAYS, PLC (UK),

    Defendant.

Case No. 1:12-cv-05567-RJD-CLP

# BRITISH AIRWAYS PLC'S RESPONSE TO PLAINTIFFS' PROPOSED PRETRIAL ORDER APPROVING NOTICE PLAN

DLA Piper LLP (US)
Richard F. Hans
Keara M. Gordon
Colleen M. Gulliver
Daniel C. Harkins
richard.hans@dlapiper.com
keara.gordon@dlapiper.com
colleen.gulliver@dlapiper.com
daniel.harkins@dlapiper.com
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 335-4500

*Attorneys for Defendant
British Airways PLC*

TABLE OF CONTENTS

Page

INTRODUCTION ...............................................................................................................................1

PROCEDURAL BACKGROUND.....................................................................................................2

DISCUSSION ......................................................................................................................................4

       A.      Dissemination of Class Notice is Premature............................................................4

       B.      The Proposed Notice Plan Contemplates Individualized, E-mail and
Postcard Notice; Social Media Banner Ads are Thus Unnecessary and
Overly Broad...............................................................................................................4

       C.      This Court Should Incorporate BA's Proposed Revisions
to the Proposed E-mail, Postcard, and Long-form Notices. ...................................8

             1.      This Court Should Incorporate BA's Proposed
Revisions That Make the Notice More Balanced and Accurate. .................8

             2.      This Court Should Incorporate BA's Proposed Revisions
That Make the Additional Disclosures About the Case Impartial. ............12

CONCLUSION..................................................................................................................................13

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Cox v. Gordman Stores Inc.*,
   2016 WL 6962508 (E.D. Mo. Nov. 28, 2016) ................................................................. 12

*Guippone v. BH S&B Holdings LLC*,
   2011 WL 1345041 (S.D.N.Y. Mar. 30, 2011) ................................................................... 4

*In re Scotts EZ Seed Litig.*,
   12-cv-04727, Plaintiffs' Proposed Schedule for Dissemination of Notice, Dkt. #133-1
   (S.D.N.Y. Mar. 16, 2015) ................................................................................................ 6

*In re Scotts EZ Seed Litig.*,
   2015 WL 5502053 (S.D.N.Y. July 7, 2015) ...................................................................... 6

*In re Wholesale Grocery Prods. Antitrust Litig.*,
   2017 WL 826917 (D. Minn. Mar. 1, 2017) ..................................................................... 13

*Jermyn v. Best Buy Stores, L.P.*,
   2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) ..................................................................... 6

*Kleiner v. First Nat. Bank of Atlanta*,
   751 F. 2d 1193 (11th Cir. 1985) ..................................................................................... 12

*Mark v. Gawker Media LLC*,
   2015 WL 2330079 (S.D.N.Y. Mar. 5, 2015) ..................................................................... 7

*Warner v. Toyota Motor Sales, U.S.A*
   2016 WL 8578913 (C.D. Cal. Dec. 2, 2016) .................................................................... 7

**STATUTES**

Fed. R. Civ. P. 23 ................................................................................................... passim

## **INTRODUCTION**

It is unclear to British Airways PLC ("BA") whether the plaintiffs' letter of April 24, 2017—which asks the Court among other things to vacate its class certification ruling—moots the relief the plaintiffs sought just one business day earlier: a pre-trial order approving plaintiffs' proposed notice plan to disseminate notice to the putative class. (Dkt. #253, the "Proposed Notice Plan"; Dkt. #254, "Motion to Expedite Order"). In the event the plaintiffs are moving forward with their request to send notice to the putative class—instead of their request to vacate the class certification ruling—BA opposes their request to approve the Proposed Notice Plan at this time.

As the plaintiffs' letter of April 24 itself recognizes, the plaintiffs' request is premature. Respectfully, the Court need not approve the Proposed Notice Plan now.

Should the Court disagree, BA respectfully requests that the Court incorporate the following alterations to the Proposed Notice Plan: (1) to remove publication notice through social media as overly broad and unnecessary given that the plaintiffs will send individualized notice to the putative class by e-mail and, when necessary, postcard notice; (2) to accept BA's proposed revisions to the Proposed Notice Plan's long form, postcard, and e-mail notice documents, which are attached hereto as Exhibits 1 through 3, and are designed to provide a balanced and accurate summary of the litigation and the parties' positions; and (3) to direct the parties to develop a mutually-agreed upon telephone script for the notice administrator and BA's call center to read in response to Executive Club inquiries to BA about this lawsuit.

BA would have provided this input to the plaintiffs directly had they not rushed to file the Proposed Notice Plan mid-day on April 21 before BA could comment. Unfortunately, the plaintiffs' filing badly misstates BA's desire to have input into the Proposed Notice Plan; oddly, although BA had told the plaintiffs repeatedly that BA would have comments on their proposal,

1

and that BA asked for a word version of the notice documents to facilitate it providing those comments in redline, the plaintiffs chose not to wait for BA's input and hastily submitted the Proposed Notice Plan to the Court—only to reverse course one business day later.

In weighing the issues regarding the Proposed Notice Plan, it is important to remember that the putative class members are members of BA's frequent flyer program and thus, in many instances, BA's most loyal and longstanding customers. As such, it is imperative that BA's position in this case—that it vehemently believes that the contracts at issue give it the right to charge a fuel surcharge and that every cent of the fuel surcharge charged was proper—must be accurately conveyed. The plaintiffs' proposed documents, however, fail to present an accurate picture of BA's positions in this case. As a result, BA has suggested numerous revisions designed to describe the lawsuit and the parties' positions in a more balanced and accurate manner. (*See* Exs. 1-3.) Among other things, it is important for BA's customers to understand that the plaintiffs' challenge to BA's charges ends as of April 17, 2013 and there are no allegations of any ongoing breaches of contract.

## **PROCEDURAL BACKGROUND**

On April 4, 2017, this Court entered an order certifying a class in this action (the "Order"). On April 6, 2017, the plaintiffs informed the Court that they intended to file a proposed class notice plan within ten days. (Dkt. #250.) Between April 7 and April 21, 2017, the parties engaged in communications regarding the Proposed Notice Plan.

The plaintiffs misstate the record when they claim that BA refused to meet and confer about the Proposed Notice Plan, and that BA attempted only to "delay notice." (Proposed Notice Plan at 3, n.1.) Quite the contrary:

- While BA informed the Court on April 7 that BA believed it was unnecessary to set a trial date and disseminate notice at this time given the pendency of the cross-motions for summary judgment and BA's intention to seek a Petition for review of the Order

2

pursuant to Rule 23(f) of the Federal Rules of Civil Procedure, (Dkt. #251), BA expressly asked the plaintiffs' counsel to send BA any proposed notice plan prior to finalizing it. (Ex. 4 at 4.)

- On Monday, April 17, 2017, at 1:11 p.m., the plaintiffs first sent their proposed notice documents to BA's counsel and demanded a response that day. (Ex. 4 at 3.)

- Far from "declining" to provide a substantive response, BA promptly responded that "[a]s [BA's counsel] ha[d] told [plaintiffs' counsel] repeatedly, [BA] would like to have an opportunity to review what [the plaintiffs] are proposing and to discuss it with [the plaintiffs] before it goes to the Court." (*Id.*) However, BA explained that counsel was traveling to a mediation in California (which plaintiffs' counsel knew since one of the Lieff Cabraser lawyers on this case was also participating in the California mediation), and that BA thus was unable to respond within the plaintiffs' unilaterally-imposed deadline of just a few hours. (*Id.* at 2-3.)

- Later that day, at 5:28 p.m., the plaintiffs indicated that they intended to file the Proposed Notice Plan on Friday, April 21. (*Id.* at 1.)

- On Thursday, April 20, BA's counsel told the plaintiffs' counsel that BA's counsel was traveling back from the mediation in California and that BA would respond on Friday, April 21, which was the plaintiffs' stated deadline. (Ex. 5 at 1.)

- On Friday, April 21, BA's counsel sent an e-mail to the plaintiffs' counsel informing them that BA was "preparing our response, which we will send to you this afternoon." (Ex. 6 at 1.) To facilitate its response, BA asked that the plaintiffs' counsel "send [BA] word versions of your proposed long form, postcard and e-mail notice so that we may redline in our suggestions." (*Id.*)

- Rather than sending BA the proposed notice documents in word, as requested, the plaintiffs filed, at 2:57 p.m., their Proposed Notice Plan.

- In that document, they reference—but do not attach as an exhibit—BA's counsel's e-mail stating that BA would be sending its response that afternoon. Oddly, the plaintiffs claim that they interpreted BA's explicit statement that it would be providing a response as an intent to "delay notice." (Proposed Notice Plan at 3, n.1.)

- More perplexing, after they filed the Proposed Notice Plan, the plaintiffs then wrote back to BA's counsel, enclosing the documents requested and claiming that they could not have sent them earlier to due a "total system outage." (Ex. 7 at 1.) Apparently, this alleged system outage did not impair the plaintiffs' ability to edit their Proposed Notice Plan to incorporate BA's e-mail of earlier that day, finalize the brief, the declaration, the long form notice, the postcard notice, and the e-mail notice, and get them all on file electronically with this Court. But, the same alleged outage somehow rendered plaintiffs incapable of responding to BA during that same time. Any such suggestion defies credulity.

3

In any event, the next business day, after rushing to meet their own arbitrarily imposed deadline to file the Proposed Notice Plan before they had the benefit of BA's input, the plaintiffs abruptly switched course and filed their letter with the Court asking it instead potentially to vacate its class certification ruling. (Dkt. #254.)

## DISCUSSION

A. **Dissemination of Class Notice is Premature.**

Notice is premature at this time because: (1) the parties' summary judgment motions and *Daubert* challenges are still pending, and the plaintiffs have asked this Court to vacate its Order pending resolution of the *Daubert* motions (Dkt. #254); and (2) BA has filed a petition under Rule 23(f) of the Federal Rules for leave to appeal the Order.[1] *See Guippone v. BH S&B Holdings LLC*, 2011 WL 1345041, at *8 (S.D.N.Y. Mar. 30, 2011) (declining to "force [defendant] to incur any expense relating to class [notice] until such time as [the court] ha[s]" decided defendant's summary judgment motion").

The plaintiffs appear to agree. On April 24, 2017, less than a full business day after unilaterally submitting the Proposed Notice Plan, plaintiffs requested that "this Court [] temporarily vacate [the Order] until [*Daubert* opinions are] issue[d]." (Dkt. #254.) The Court need not employ judicial resources on a motion that the moving party itself now apparently has contradicted.

B. **The Proposed Notice Plan Contemplates Individualized, E-mail and Postcard Notice; Social Media Banner Ads are Thus Unnecessary and Overly Broad.**

In the event that the Court considers the Proposed Notice Plan, it should eliminate the social media aspect as unnecessary. The Proposed Notice Plan will effect notice through

---

[1] Rule 23(f) provides the Court with discretion to stay district court proceedings pending the resolution of an appeal of a class certification order. *See* Fed R. Civ. P. 23(f). BA may file such a motion at the appropriate time.

4

individualized notice via e-mail. The declaration of the notice provider states that she believes that e-mail notice is "the means to most effectively reach" the putative class. (Declaration of Jennifer M. Keough in support of Plaintiffs' Request for Pretrial Order Approving Notice Plan, Dkt. #253-1 ("Keough Decl.") ¶ 6.) The Proposed Notice Plan discusses that BA maintains e-mail addresses, the steps that the notice provider will take to update those e-mail addresses, that it will make three e-mail attempts to deliver notice by e-mail, and that, in those instances in which e-mail notice is not effective, the notice provider will use another form of individualized notice: postcard notice. (*Id.* at ¶¶ 5-15.) As to the postcard notice, the notice provider states that it will update all addresses "through the National Change of Address ('NCOA') database and skip-trace databases" and "conduct additional research" designed to effect individualized notice. (*Id.* at ¶ 13.)

Despite the fact that individualized notice will be effected using e-mail and postcard notice, the Proposed Notice Plan includes unnecessary and overly broad Twitter, Facebook, and Instagram advertisements that it proposes be conducted through a "multiplatform digital media campaign" intended to reach an "audience that identifies as likely Class Members" as well as the media in general ("social media notice"). (*Id.* at ¶¶ 16-19.) This form of publication notice is not necessary under Rule 23 and the Court should decline to approve it. At a minimum, no portion of this proposed social media notice should occur until the parties can determine the effectiveness of the individualized notice via e-mail or postcard notice.

A court shall "direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c). "Individual notice must be sent" when "the names and addresses of class members may be ascertained through reasonable efforts." *Jermyn v. Best Buy Stores, L.P.*, 2010 WL 5187746, at *2 (S.D.N.Y. Dec. 6, 2010) (citing *Eisen v. Carlisle and*

5

*Jacquelin*, 417 U.S. 156, 173, 176 (1974)). Generally, notice by publication is reserved where "the names and addresses of class members cannot be determined by reasonable efforts." *Id*. at *3. "[N]otice to an overinclusive list of individuals is not required by Rule 23." *Id*. Notice by social media campaigns has been found overinclusive when the posts "cannot [be] limit[ed] . . . by geographic area." *Id*. (holding that notice by twitter "does not comport with . . . Rule 23" because it "will likely reach a[n] [] audience . . . significantly broader than the defined class.").

Here, social media notice is unnecessary and overly inclusive because the Proposed Notice Plan includes two more narrowly targeted methods of providing individual notice: (1) e-mail notice; and (2) where e-mail notice cannot be effected, postcard notice. (Keough Decl. ¶¶ 6-15.) The plaintiffs have failed to explain why these two methods are unlikely to be successful. Indeed, the very class definition is limited to Executive Club members who provided a "valid" U.S. address at the time of booking. (Order at 17.)

Unlike here, in the cases the plaintiffs cite, class members were not reachable through individual notice. *See*, *e.g*., *In re Scotts EZ Seed Litig.*, 2015 WL 5502053, at *1 (S.D.N.Y. July 7, 2015) (Proposed Notice Plan at 7). For example, the court in *In re Scotts EZ Seed Litig.* only approved a notice plan utilizing Facebook banner ads after class counsel established that the defendant could "only identify a limited number of class members." (*See* Ex. 8, *In re Scotts EZ Seed Litig.*, 12-cv-04727, Plaintiffs' Proposed Schedule for Dissemination of Notice, Dkt. #133-1, at 3 (S.D.N.Y. Mar. 16, 2015).) Publication notice on Facebook was thus necessary to "augment[]" a process where individual notice was not feasible.[2] *See id*.

---

[2] *Warner v. Toyota Motor Sales, U.S.A*. (Proposed Notice Plan at 8) is inapposite for a different reason. The *Warner* Court approved a joint motion for approval of class notice. 2016 WL 8578913, at *1 (C.D. Cal. Dec. 2, 2016). There is no indication that the defendant in Warner opposed the use of the social media banners in the proposed plan. *Id*.

In contrast, here, *by definition*, the class only includes members for whom BA holds valid mailing addresses. Accordingly, there is no need to supplement individual notice absent a showing to the contrary, which the plaintiffs have not even attempted to make.

Moreover, social media notice should be constructed such that it "effectively mirror[s] the more traditional forms of notice" and is "expected . . . to contain private, personalized notifications sent to potential plaintiffs whose identities were known and [may] not be reachable by other means." *Mark v. Gawker Media LLC*, 2015 WL 2330079, at *1 (S.D.N.Y. Mar. 5, 2015). "Messages broadcast at the general public," including through Twitter and Facebook, are inappropriate. *Id.* (denying notice plan replete with "public facing notices" on Twitter and Facebook that appeared designed to "punish [d]efendants rather than provide notice").

Here, the Proposed Notice Plan, like the one in *Gawker*, appears to be designed to punish BA rather than effectuate notice to the putative class. For example, the Proposed Notice Plan indicates a desire to deliver notice through "media channels that would attract the attention and interest of media/press outlets and could result in earned media." (Keough Decl. ¶ 17; *see also id.* at ¶ 18 ("[t]his will be complimented by serving to user IDs of journalists to reach media/news outlets"); *id.* at ¶ 19 ("[t]he ads will be optimized for engagement to include such elements as shares, likes, comments, and clicks . . . .").) And, while the Proposed Notice Plan claims that the social media campaign will be "targeted" (*id.* at ¶ 17), the plaintiffs have failed to provide any specifics as to how they would so target the campaign; indeed, the information provided suggests that the campaign will be public and vastly overbroad. There is nothing in the Proposed Notice Plan that limits the exposure of any tweets, Instagram or Facebook posts only to class members (*i.e.*, U.S.-resident Executive Club members).

Because class notice via social media is unnecessary absent a showing that individual notice is not sufficient and the plaintiffs have not made any such showing here, BA requests that the Court decline to approve social media notice.[3]

### C. This Court Should Incorporate BA's Proposed Revisions to the Proposed E-mail, Postcard, and Long-form Notices.

BA does not object to individual notice via e-mail and, if necessary, postcard notice at the appropriate time. BA does, however, object to the plaintiffs' proposed descriptions of this litigation in the forms of notice attached as exhibits to the Proposed Notice Plan. (*See* Keough Decl., Exs. A-E.) Had plaintiffs provided BA the word version of these documents for it to comment and then waited only a short time thereafter to file the Proposed Notice Plan, BA would have met and conferred with the plaintiffs on these issues. Because the plaintiffs rushed to get their Proposed Notice Plan on file instead, BA's proposed revisions to the long form, e-mail, and postcard notice are attached hereto as Exhibits 1-3. BA is happy to work with the plaintiffs this week—if they are still advocating for the dissemination of notice instead of this Court vacating the Order—to see if the parties can agree on mutually-acceptable language.

BA's objections to the notice documents fall into two main categories, as described below.

#### 1. This Court Should Incorporate BA's Proposed Revisions That Make the Notice More Balanced and Accurate.

First, the plaintiffs' proposed documents provide a one-sided, rather than objective, statement of both parties' positions. Examples of BA's suggestions are set forth in the following chart:

---

[3] BA also objects to notice through a press release and outreach to journalists (Keough Decl. ¶¶ 18, 20) for the same reasons. The plaintiffs have failed to demonstrate that there are class members who will not be reachable through e-mail or postcard notice. Moreover, the proposal merely states that the press release will be "targeted based upon JND's previous experience", without providing any specifics. (*Id.* at ¶ 20.)

| **Plaintiffs' Proposed Language** | **To be Balanced and Accurate, BA Suggests:** |
|---|---|
| The current first bullet in the plaintiffs' proposed long form notice provides only that, "Russell Dover, Cody Rank, Suzette Perry, and Henry Horsey ('Plaintiffs') have sued British Airways, PLC (UK), for breach of contract." (Keough Decl., Ex. E at 1.) | To make this more balanced and accurate, BA suggests that the first bullet read: "Russell Dover, Cody Rank, Suzette Perry, and Henry Horsey ('Plaintiffs') have sued British Airways, PLC (UK) ('BA') for an alleged breach of contract.  BA denies that it did anything wrong and maintains that the applicable contracts allow BA to charge a fuel surcharge. BA's current airline fares, taxes, and fees are not implicated by these allegations and not at issue in this case."  (Ex. 1 at 1.) |
| Similarly, the third bullet in the plaintiffs' proposed long form notice states: "The Court has not decided whether BA did anything wrong.  There are no damages available now and no guarantee that there ever will be.  However, your legal rights are affected, and you have a choice to make now." (Keough Decl., Ex. E at 1.) | To make that statement more balanced and accurate, BA suggests that it read: "At this point, the plaintiffs have made allegations and British Airways has denied them.  The Court or jury ultimately will decide who is right.  There are no damages available now and no guarantee that there ever will be.  However, your legal rights are affected, and you have a choice to make now." (Ex. 1 at 1.) |
| In the section of the plaintiffs' proposed long | To make that statement more balanced and |

9

| | |
|---|---|
| form notice titled "What is this lawsuit about?", it says, "The Plaintiffs claim that BA ('Defendant') breached its frequent flyer contract ('Contract') by imposing impermissible 'fuel surcharges' on frequent flyer reward flights. The Defendant denies it did anything wrong. The Court has not decided whether Plaintiffs or the Defendant are right." (Keough Decl., Ex. E at 3.) | accurate, BA suggests that it read, "This lawsuit is about whether BA ('Defendant') charged fuel surcharges that breached its contract with members of the Executive Club 'Contract') on frequent flyer reward flights. BA maintains that the Contract permits it to impose a fuel surcharge and that it did not do anything wrong. The Court or the jury has not decided whether Plaintiffs or BA is right. BA's current airline fares, taxes, and fees are not implicated by these allegations and not at issue in this case." (Ex. 1 at 3). |
| In the section called, "What do the plaintiffs allege? What is the Defendant's position?", the plaintiffs' proposed long form notice states, "Plaintiffs allege that the airline breached its frequent flyer contract by imposing impermissible fuel surcharges on frequent flyer reward flights. You can read Plaintiffs' Amended Class Action Complaint at www.ADDRESS.com. Defendant denies Plaintiffs' allegations. There has been no determination by the Court or a jury of the | The plaintiffs' proposed language is misleading, as it is undisputed that the Executive Club Contract provides BA with the discretion to impose some amount of fuel surcharge. (Tr. of Class Certification Oral Argument at 6:24-7:5.) To make this answer more fair and accurate, BA suggests it read, "This lawsuit claims that BA breached the Contract by charging fuel surcharges that may have exceeded a contractually permissible amount. You can read Plaintiffs' Amended |

10

| | |
|---|---|
| merit of the Plaintiffs' allegations." (Keough Decl., Ex. E at 4.) | Class Action Complaint at www.ADDRESS.com. BA's position is that the Contract clearly permits BA to charge a fuel surcharge and that the fuel surcharges that it imposed on its EC Members were completely appropriate under the Contract and English law. There has been no determination by the Court or a jury of the merit of the Plaintiffs' allegations. BA's current airline fares, taxes, and fees are not implicated by these allegations and not at issue in this case." (Ex. 1 at 5.) |
| The plaintiffs' proposed long form notice discusses the Order at length and the Court's findings. (Keough Decl., Ex. E at 3.) | For completeness, BA requests that the following language be added: "BA respectfully disagrees with the Court's decision and has filed a petition for interlocutory appeal with the Second Circuit Court of Appeals under Federal Rule of Civil Proceedure 23(f)." (Ex. 1 at 4.) |

The putative class members are members of BA's frequent flyer program and thus, in many instances, its most loyal and longstanding customers. As such, it is imperative that BA's position in this case is accurately conveyed: BA vehemently believes that the contracts at issue give it the right to charge a fuel surcharge and that the fuel surcharge it imposed was well within

11

its contractual discretion. The plaintiffs' proposed documents fail to present an accurate picture. The Court is respectfully directed to BA's proposed redlines for all of its suggested language changes to describe the lawsuit and the parties' positions in a more balanced and accurate manner in the long form notice, the e-mail notice, and the publication notice. (*See* Exs. 1-3.)

      **2.      This Court Should Incorporate BA's Proposed Revisions That Make the Additional Disclosures About the Case Impartial.**

BA objects to any notice document directing class members to contact plaintiffs' counsel for more information about this lawsuit. (*See*, *e.g.*, Keough Decl., Ex. B (Postcard Notice); Ex. E (Long Form Notice) at 6.) Under Rule 23, "it is critical that the class receive accurate and impartial information" about the litigation. *See Kleiner v. First Nat. Bank of Atlanta*, 751 F. 2d 1193, (11th Cir. 1985). Here, the plaintiffs' proposed class website would serve this goal because any language included on the website will have been carefully negotiated between the parties and approved by this Court. (*See*, *e.g.*, Keough Decl., Ex. A (E-mail Notice) at 2 ("If you have questions or want a detailed notice or other documents about this lawsuit and your rights, visit [the class website]").)

Directing class members to plaintiffs' counsel, on the other hand, does not afford the same protections. *See Cox v. Gordman Stores Inc.*, 2016 WL 6962508, at *5 (E.D. Mo. Nov. 28, 2016) (holding that directing class members to class counsels' firm website was "not appropriate" and "not relevant to providing notice"). These protections are especially necessary here, where the putative class consists of BA's loyal customers, its frequent flyers.

Relatedly, BA objects to provisions in the Proposed Notice Plan asking class members to refrain from contacting BA with questions about this lawsuit. (*See* Keough Decl., Ex. E (Long Form Notice) at 6 ("[p]lease do not contact the court, the judge, *or the defendant* with questions about this action.") (emphasis added); *see also* Ex. 1 at 8 (proposed revised language).) Beyond

12

the revised language, BA also proposes that the parties construct a joint script for BA to read when class members call BA with inquiries about the lawsuit.

District courts have approved such measures to "clarify any [customer] confusion" that may result from dissemination of a notice plan. *See*, *e.g.*, *In re Wholesale Grocery Prods. Antitrust Litig.*, 2017 WL 826917, at *5 (D. Minn. Mar. 1, 2017). The defendant in *Wholesale Grocery Prods.*, for example, proposed that its call center read a court-approved telephone script in response to class members' inquiries in order to "enable [the defendant] to maintain its customer relationships" after class notice. *Id*. The court approved the script because it allowed the defendant to clarify to its customers that allegations of improper prices were limited to prior years. *Id*. ("none of the allegations in this case implicate [defendant's] current prices . . . ." ).

The same result should follow here. BA anticipates that it may receive numerous inquiries once notice is disseminated—many from Executive Club members that, while class members, have maintained a continuing relationship with BA and wish to continue to do so. A short, "content neutral" telephone script would allow BA to briefly explain the allegations of this lawsuit and note that BA's current airline fares, taxes, and fees are not implicated in these allegations. *See id*. BA is willing to work with the plaintiffs to develop this script and respectfully requests that the Court order the parties to do so.

## **CONCLUSION**

For the foregoing reasons, class notice is premature at this time. When notice is appropriate, BA agrees that individual notice through e-mail notice, and postcard notice as a back up where e-mail is undeliverable, is appropriate. An overly broad and unnecessary publication notice through social media, however, is not required under Rule 23. Similarly, notice should describe the litigation in an accurate and balanced manner. Accordingly, BA

13

respectfully requests that the Court decline to issue a pretrial order approving the Proposed Notice Plan.

In the alternative, BA requests that the Court approve a notice plan that:

(1) removes any social media publication notice, or at a minimum, orders that no portion of the proposed social media outreach should occur until the parties can determine the effectiveness of the individualized notice via e-mail or postcard notice;

(2) accepts BA's proposed revisions to the Proposed Notice Plan's long form, postcard, and e-mail notice documents, which are attached hereto as Exhibits 1 through 3; and

(3) directs the parties to develop a mutually-agreed upon telephone script for the notice administrator and BA's call center to read in response to Executive Club inquiries to BA about this lawsuit.

Dated: New York, New York
April 25, 2017

/s/ Keara M. Gordon
Keara M. Gordon
Richard F. Hans
Colleen M. Gulliver
Daniel C. Harkins
**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 335-4618
Fax: (917) 778-8618

*Attorneys for Defendant British Airways PLC*

14