UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
RUSSEL DOVER *et al.*,

                    Plaintiffs,

        -against-

BRITISH AIRWAYS, PLC (UK),

                    Defendant.
---------------------------------------------------------X

                              <u>**MEMORANDUM AND ORDER**</u>
                              12 CV 5567 (RJD) (CLP)

**POLLAK**, United States Magistrate Judge:

      Plaintiffs, a class of current and former members of the British Airways frequent flyer program called the Executive Club, filed suit on November 9, 2012, alleging that defendant British Airways breached its contract with its frequent flyer members by imposing a fuel surcharge on reward travel that was not reasonably related to the price or cost of fuel.  After more than five years of contentious litigation and extensive settlement negotiations before at least three separate neutrals, the parties have reached an agreement to settle the claims on behalf of all members of the Class.  Plaintiffs now move for preliminary approval of the settlement, and defendant joins in the motion.  (<u>See</u> Mot. for Prelim. App. at 1-2, Apr. 11, 2018, ECF No. 294; <u>see generally</u> Pls.' Mem., Apr. 11, 2018, ECF No. 295; Def.'s Mem., Apr. 11, 2018, ECF No. 296).

      The Honorable Raymond J. Dearie has referred the motion for preliminary approval and any subsequent motion for final approval to the undersigned.[1]  For the reasons that follow, the

---

[1] Since Judge Dearie has already certified the class in this matter, the motion for preliminary approval falls within this Court's authority over non-dispositive pretrial matters.  <u>See</u> 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); E.D.N.Y. L. Civ. R. 72.2.  The anticipated motion for final settlement approval, by contrast, is dispositive, and thus this Court will conduct the final fairness hearing and issue a Report and Recommendation for Judge Dearie's review.  <u>See</u> 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1).

Court grants the motion for preliminary approval of the class settlement and directs that notice be provided to the members of the Class.

FACTUAL AND PROCEDURAL BACKGROUND

This case has been pending for more than five years, and the story of the litigation is set forth in numerous written opinions with which the Court assumes familiarity.[2]

## A.  Factual Allegations

During the period relevant to this litigation, from November 9, 2006 through April 17, 2013, the British Airways Executive Club program in the United States was governed by a frequent flyer contract ("the Contract"), under which Executive Members accumulate points called "Avios" in exchange for flying with British Airways, staying in certain hotels, or renting cars with certain providers.  (See Am. Compl. ¶ 36, Jan. 9, 2015, ECF No. 131).  The portion of the Contract at issue in this case states that:

> Other than in relation to special promotions and subject to the applicable Conditions of Use of such promotions, Members will be liable for all taxes and other charges associated with Reward travel on British Airways or a Service Partner airline, including without limitation, airport departure tax, customs fines, immigration fees, airport charges, customer user fees, **fuel surcharges**, agricultural inspections fees, security and insurance surcharge or other

---

[2] See, e.g., Dover v. British Airways, PLC (UK), No. 12 CV 2257, 2017 WL 4358726 (E.D.N.Y. Sept. 29, 2017) (denying summary judgment), ECF No. 271; Dover v. British Airways, PLC (UK), 254 F. Supp. 3d 455 (E.D.N.Y. 2017) (ruling on the parties' *Daubert* motions), ECF No. 256; Dover v. British Airways, PLC (UK), 321 F.R.D. 49 (E.D.N.Y. 2017) (certifying class), ECF No. 249, leave to appeal denied, No. 17-1121, 2017 WL 2590319 (2d Cir. June 14, 2017); Dover v. British Airways, PLC (UK), No. 12 CV 5567, 2014 WL 4065084 (E.D.N.Y. Aug. 15, 2014) (denying motion to compel discovery), ECF No. 97, affirmed, 2014 WL 5090021 (Oct. 9, 2014), ECF No. 114; Dover v. British Airways, PLC (UK), No. 12 CV 5567, 2013 WL 5970688 (E.D.N.Y. Nov. 8, 2013) (denying British Airways' motion to dismiss), ECF No. 52, reconsideration denied, 2014 WL 317845 (Jan. 24, 2014) (denying reconsideration and declining to certify for interlocutory appeal), ECF No. 66.

> incidental fees or taxes charged by any person or relevant authority
> or body.

(Am. Compl. ¶ 40 (emphasis added) (quoting Executive Club Terms and Conditions ("the Contract") § 13.14, ECF No. 209-8)).  The term "fuel surcharge" is not defined in the Contract (see id.), and thus the District Court previously held that under English law, which governs the Contract, a "'fuel surcharge' is a supplemental charge that is reasonably related to or based upon the cost or price of fuel." Dover v. British Airways, PLC (UK), 2013 WL 5970688, at *4, ECF No. 52.  As Judge Dearie explained, "[t]his understanding comports with conventional usage. Most—if not all—commercial airplane passengers are aware that the price of jet fuel rises and falls.  Against this backdrop, the typical consumer would consider a fuel surcharge to be an added charge imposed by an airline in order to defray rising fuel costs." Id.  The parties' dispute centers on whether the charges British Airways imposed on Executive Club members for rewards travel meet the requirements of "fuel surcharges" so defined and thus were permissible or, conversely, fall outside the definition and therefore were imposed in violation of the Contract.

Plaintiffs allege that British Airways breached the Contract by imposing fuel surcharges that bore no temporal or substantive relationship to the actual cost of fuel when the surcharges were imposed, but instead were based on British Airways' cost of fuel in an arbitrary year, 2003-2004.  (See, e.g., Am. Compl. ¶¶ 75-76); Dover v. British Airways, PLC (UK), 321 F.R.D. at 52-53.  According to the plaintiffs, imposing a fuel surcharge based on the cost of fuel in an arbitrary year is impermissible under the Contract and thus any surcharge British Airways imposed based on this irrelevant and improper consideration constitutes a breach of the Contract.

British Airways vigorously disputes plaintiffs' allegations and maintains that plaintiffs would be unable to prevail at trial.  It contends, for example, that there was no breach of the Contract because the airline imposed the fuel surcharge to offset rising fuel costs, never

recovered more than its fuel costs or incremental increase in fuel costs, calculated the fuel surcharge in a way that was reasonably related to the cost of fuel, and set the fuel surcharge prospectively.  (See, e.g., Def.'s Mem. at 7-12, Apr. 11, 2018, ECF No. 296).  The airline also argues more broadly that plaintiffs will not be able to meet their burden of persuasion at trial because the jury is unlikely to credit the testimony of plaintiffs' experts.  (See id. at 12-15).

**B.  Procedural History**

Although the Court assumes familiarity with the procedural history of this matter (see supra note 2), the Court recounts the procedural history that is most relevant to the current motion and which is of most importance to members of the class in deciding whether to opt out of the class, to object to the settlement, or to do nothing and thereby acquiesce in the settlement.

1.  Earlier Proceedings

On November 9, 2012, plaintiffs Russel Dover, Jonathan Stone, Cody Rank, and Suzette Perry filed their Complaint against British Airways on behalf of a putative class of Executive Club members.  (See generally Compl., Nov. 9, 2012, ECF No. 1).  On May 9, 2014, Henry Horsey was substituted as a named plaintiff in place of Jonathan Stone, who did not wish to remain a named plaintiff.  (See Order Granting Substitution at 1, May 12, 2014, ECF No. 77).  Plaintiffs subsequently filed an Amended Complaint, which reflected the substitution by replacing allegations related to Mr. Stone with allegations regarding Mr. Horsey.  (Compare Am. Compl. ¶¶ 21-24, Jan. 9, 2015, ECF No. 131, with Compl. ¶¶ 21-24).

On March 31, 2017, the District Judge determined that the named plaintiffs had demonstrated by a preponderance of the evidence that the proposed class met the requirements of Federal Rule of Civil Procedure 23(a) because the class is so numerous that joinder of all members is impracticable; there are questions of law and fact common to the class; the claims of

the representative parties (*i.e.*, the named plaintiffs) are typical of the claims of the class; and the

representative parties will fairly and adequately protect the interests of the class.  See Dover v.

British Airways, PLC (UK), 321 F.R.D. at 53-56.  The judge further determined that the

proposed class met the requirements for certification under Rule 23(b)(3) of the Federal Rules of

Civil Procedure because common questions of law and fact predominate over any questions that

affect only individuals and a class action is superior to other methods for fairly and efficiently

adjudicating the dispute.  See id. at 56-59.  Finally, the judge found that the proposed class also

satisfied the ascertainability requirement recognized in the Second Circuit.  See id. at 59.

    After determining that the plaintiffs had satisfied the requirements of Rule 23 of the

Federal Rules of Civil Procedure, Judge Dearie certified the following class pursuant to that

Rule:

> All United States resident members of British Airways' Executive
> Club who redeemed frequent flier miles for an award ticket from
> November 9, 2006 through April 17, 2013 and who paid a BA-
> imposed "fuel surcharge," so long as that United States resident
> member provided British Airways with a valid United States address
> at the time of booking.  This class excludes:  (1) members who
> redeemed frequent flier miles exclusively using what British
> Airways term[ed] its "Cash + Avios" option; (2) any judge to whom
> this case is assigned, along with his or her staff; (3) British Airways
> officers, directors, employees, as well as outside counsel in this
> litigation, and; (4) immediate family of any individual excluded by
> 2 or 3.

Dover v. British Airways, PLC (UK), 321 F.R.D. at 59.  The District Court also appointed the

firm of Lieff, Cabraser, Heimann & Bernstein LLP, which served as the named plaintiffs'

counsel from the outset of this case, to serve as class counsel under Rule 23(g).  Id. at 60.  British

Airways then sought leave from the Second Circuit Court of Appeals to appeal the certification

Order under Federal Rule Civil Procedure 23(f).  The Circuit Court denied the petition, deeming

an immediate appeal unwarranted.  Dover v. British Airways, PLC (UK), No. 17-1121, 2017 WL

2590319, at *1 (2d Cir. June 14, 2017).  (See also Mandate, June 14, 2017, ECF No. 260).

Thereafter, the District Court denied the parties' cross-motions for summary judgment and

directed them to prepare for trial.  See Dover v. British Airways, PLC (UK), 2017 WL 4358726,

at *7 (E.D.N.Y. Sept. 29, 2017), ECF No. 271.

> 2.  Settlement Proceedings

In attempting to settle this case, the parties first tried to resolve this dispute through

mediation in April 2016 after discovery had closed but before the motions for class certification

and for summary judgment were decided.  (See Pls.' Mem. at 4).  The first attempts at mediation

were conducted before Layn R. Phillips, an accomplished mediator who previously served as a

United States District Judge for the Western District of Oklahoma from June 1987 until his

resignation in 1991.  (See id.)  See also The Team, Phillips ADR,

http://www.phillipsadr.com/team/ (last visited May 23, 2018).  Despite significant efforts both

by phone and in person, the parties were unable to resolve the dispute.

After the motions for summary judgment were denied, the parties renewed their efforts

to resolve this matter through private mediation in November 2017, this time before a different

mediator, Larry W. Pollack.  (See Pls.' Mem. at 4; Def.'s Mem. at 2-3).  Although the parties

participated in a full-day mediation before Mr. Pollack and also continued discussions by

teleconference, they were no closer to a resolution.  (See Pls.' Mem. at 4; Def.'s Mem. at 3, 5).

Finally, this Court conducted a settlement conference with counsel for all parties on

January 22, 2018, which lasted almost three hours.  (See Minute Entry, Jan. 22, 2018, ECF No.

286).  By the end of the conference, the parties had made progress, but still remained far apart.

(See Pls.' Mem. at 4; Def.'s Mem. at 3).  In light of the progress at the initial settlement

conference, the Court held a second settlement conference several days later, on January 25,

2018.  (<u>See</u> Minute Entry, Jan. 25, 2018, ECF No. 287).  That conference lasted almost seven

hours, during which time the Court worked with the attorneys for each side, both separately and

together, to reach an agreement acceptable to all.  It bears mentioning that the Court and the

parties expressly sought to ensure that the terms of any settlement would protect the interests of

absent class members.  By the end of the evening, the parties had reached an agreement in

principle, and the Court directed the parties to work together to finalize a written settlement

agreement.  (<u>See</u> <u>id.</u>)

   3.  <u>Subsequent Proceedings</u>

     Thereafter, the parties worked together for two months to draft a written settlement

agreement and, on April 11, 2018, plaintiffs filed their unopposed motion for preliminary

approval, to which they attached the proposed Settlement Agreement.  (<u>See generally</u> Mot. for

Prelim. App., Apr. 11, 2018, ECF No. 294; <u>see also</u> 4/11/2018 Settlement Agreement, Ex. A to

<u>id.</u>, ECF No. 294-1).  Judge Dearie referred the motion for preliminary approval to the

undersigned to issue an order, and also referred the anticipated motion for final settlement of the

class action—which is a dispositive motion—for the undersigned to conduct the final fairness

hearing and to issue a Report and Recommendation.  (Electronic Order of Referral, Apr. 13,

2018; <u>see</u> <u>supra</u> note 1).

     After reviewing the parties' submissions, the Court held a telephone conference on May

7, 2018 to address certain questions raised by the proposed Settlement Agreement and form of

notice to the Class.  (<u>See</u> Minute Entry, May 7, 2018, ECF No. 301).  First, the Court suggested

that the parties include a direct link to a PDF of the full Settlement Agreement to the proposed

Long Form Notice and Summary Notice.  In response, the parties explained that each notice

would include a prominent link to the website created for purposes of this litigation, which will

contain easily-accessible and clearly-labeled links to all of the documents relevant to settlement, thus rendering a direct link unnecessary.  The Court accepted the parties' explanation and determined that no direct link to the Settlement Agreement was necessary so long as all of the documents relevant to the settlement are made available on the website.

Second, the Court observed that the proposed forms of notice stated that a final approval hearing would be held before Judge Dearie, rather than before the undersigned.  (See, e.g., 4/11/2018 Long Form Notice at 12).  The Court directed the parties to update the forms of notice to reflect that the undersigned will conduct the final approval hearing.[3]  The parties agreed to make the appropriate changes.

Finally, the Court raised two concerns with respect to class members whose Executive Club accounts with British Airways have been deleted or closed ("Former Executive Club Members").  First, the Court observed that the named plaintiffs appointed to serve as class representatives were all "Active Executive Club Members," meaning that each possessed an Executive Club account that remains active with British Airways.  The Court therefore asked whether the interests of the Former Executive Club Members, who comprise approximately 23% of the Class, could be adequately represented by Active Executive Club Members.  The potential appearance of inadequacy was of particular concern in light of the different ways in which each group's claims are handled under the Settlement Agreement.  Specifically, although members of

---

[3] The revised forms of notice do not make it explicit that the final approval hearing will be conducted by an Article I Magistrate Judge who will prepare a Report and Recommendation for review by the assigned Article III District Judge; instead, they simply refer to the undersigned as "the Honorable."  The Court has determined that—because a District Judge subject to the protections of Article III will ultimately dispose of the class claims and because this Order (which will be made available on the class website) provides clear notice that the undersigned will issue a Report and Recommendation regarding final approval pursuant to 28 U.S.C. § 636(b)(1)(B)— there is no need to amend the revised proposed forms of notice to distinguish explicitly between the District Judge and the Magistrate Judge.

both groups may elect to receive a cash payment equal to 16.9% of the total fuel surcharges paid during the Class period by timely filing a Cash Claim Form, they are treated differently if they do nothing.  Active Executive Club Members who do nothing will automatically receive a certain number of Avios, even if they take no action in response to this litigation.  By contrast, if Former Executive Club Members take no action in response to the notice of class settlement, they will receive nothing, but nonetheless will relinquish their claims and remain bound by the judgment.

The parties explained that the different treatment of the two groups results not from a preference or differing interests, but instead from technical limitations:  Former Executive Club Members have no account into which British Airways can place Avios automatically, and thus they must submit a Cash Claim Form that contains information sufficient to identify the Former Executive Club Member and to provide an address to which a check can be mailed.  As plaintiffs explained in a subsequent letter to the Court:

> The Proposed Settlement reflects the unitary interests of all Class Members:  current and former E[xecutive] C[lub] Members receive exactly the same cash compensation on exactly the same terms. Their interests were never in conflict during the litigation or settlement. . . . [C]ompensation to one group was never "traded-off" for compensation to the other.
>
> [ . . . ]
>
> While this is a claims-made, cash-based settlement, Plaintiffs did make sure that all Class Members would receive *some* relief whenever technologically possible even if they do not file any claim. In particular, current E[xecutive] C[lub] Members will receive additional "Avios points" in their accounts if they do not file a [cash] claim.  Former E[xecutive] C[lub] Members—who are eligible for the same cash compensation as current E[xecutive] C[lub] Members—cannot receive points because it is not technologically possible for them to receive [Avios points] (i.e., former Members no longer have Executive Club Accounts into which points could be placed).  Ensuring that at least some non-monetary compensation

flows to all Class Members when technologically possible does not
create an intraclass conflict, particularly because the cash
compensation is more valuable than Avios.

(Pls.' 5/10/2018 Letter at 1-2, ECF No. 302).

Plaintiffs also clarified that one of the named plaintiffs included in the Amended
Complaint, Suzette Perry, was a Former Executive Club Member and served as a Class
representative until she passed away and thereafter was dismissed from the action. (See Order
and Stipulation of Dismissal, Jan. 8, 2018, ECF No. 285; see also Pls.' Letter Mot. to Dismiss
Suzette Perry at 1, Jan 4. 2018, ECF No. 284 (advising the Court of Ms. Perry's death and
requesting that she be withdrawn as a named plaintiff)). Thus, although the parties agree that the
named plaintiffs at the time of the settlement conferences adequately represented the interests of
all Class members, even if the interests of Former Executive Club Members were somewhat
different from those of the rest of the Class, Ms. Perry adequately represented such interests as
Class representative during the majority of this litigation. (See Pls.' 5/10/2018 Letter at 1-2).
Nonetheless, "out of an abundance of caution," the parties have stipulated to add Ms. Perry's
Estate, through her husband and executor Mr. Noel Perry, as a named plaintiff and Class
representative to ensure that Former Executive Club Members continue to be adequately
represented both in the Settlement Agreement and throughout the remainder of this litigation.
(See Stipulation and Order Adding the Estate of Suzette Perry as Class Representative at 1-3,
May 22, 2018, ECF No. 306).

The Court raised a second issue with respect to a table found in the Long Form Notice
summarizing Class members' options. One column contained bold text that read "Do Nothing &
Obtain Avios If You Are An Active Executive Club Member." (See 4/11/2018 Long Form
Notice at 2-3). There was no similar bolded text explicitly for the benefit of Former Executive

Club Members.  A difference in user-friendliness of the proposed notice with respect to each group, even if unintentional, might make it appear that the settlement was favoring Active Executive Club Members over Former Executive Club Members or might otherwise give rise to a suggestion that the Former Executive Club Members' interests were not adequately represented.

Again, the parties explained that the omission was not intended to privilege Active Executive Club Members, but instead to ensure that Former Executive Club Members understood that they only had one option if they were to receive compensation:  elect the Cash Option.  The parties agreed to revise the notice to ensure the option for Former Executive Club Members is as prominently displayed as the notice to Active Executive Club Members.

The parties subsequently filed a revised Long-Form Notice (Revised Long-Form Notice, May 15, 2018, ECF No. 303-3) and Settlement Agreement (Settlement Agreement, May 18, 2018, ECF No. 304-1), which incorporate the aforementioned changes.

## C.  Terms of the Proposed Settlement

The Class Representatives—named plaintiffs Russell Dover, Henry Horsey, Cody Rank, and the Estate of Suzette Perry—have entered into the operative Settlement Agreement (or the "Agreement") on behalf of themselves and on behalf of the Class.[4]  (See Settlement Agreement at 1, May 18, 2018, ECF No. 304-1).  The Agreement was signed by the parties and their counsel on May 14, 2018 and filed with the Court on May 18, 2018.  (See Settlement Agreement at 32).

---

[4] The Settlement Agreement applies to a "Settlement Class."  (See Settlement Agreement § II(33)).  Although the Agreement defines the "Settlement Class" in terms that differ from those Judge Dearie used to certify the Class in his March 31, 2017 Order, the difference in language is stylistic, not substantive, and does not alter the Class or its membership.  (Compare id. with Dover v. British Airways, PLC (UK), 321 F.R.D. at 59, ECF No. 249).  For purposes of this Opinion, the terms are interchangeable.

The Agreement provides for compensation to members of the Class in the form of either Avios frequent flyer miles or cash.  (Settlement Agreement § IV(A)(1)).  As explained previously, the Avios option is only available to Active Executive Club Members.  Unless an Active Executive Club Member makes a written election to receive the Cash Option, his or her Executive Club account will automatically be credited with Avios in an amount that corresponds to the number of times he or she redeemed frequent flier miles for award travel and paid an associated fuel surcharge during the Class period.  (Id. §§ IV(A)(1)-(3)).  An Active Executive Club Member who redeemed for award travel once during the period and paid a fuel surcharge will receive 12,500 Avios; those who redeemed between two and five times and paid fuel surcharges will receive 20,000 Avios; and those who redeemed six or more times and paid fuel surcharges will receive 35,000 Avios.  (Id. § IV(A)(2)).  The Agreement makes available a maximum of 2,228,677,500 Avios which, if all Active Executive Club Members select the Avios option, are estimated to have a maximum total value of approximately $63 million.  (See id. § IV(A)(1)).

The Agreement also provides for a Cash Option that any member of the Class, including both Active Executive Club Members and Former Executive Club Members, may elect by timely submitting a Cash Claim Form that meets certain requirements to the Settlement Class Administrator.  (See Settlement Agreement §§ II(5) (defining "Cash Claim Form"), II(6) (defining the "Cash Option"), II(37) (defining a "Valid Claim"), IV(A)(5) (providing that Active Executive Club Members may elect the Cash Option), IV(B)(1) (providing that Former Executive Club Members may elect the Cash Option), VII (establishing the process for processing and administering claims by Class members who elect the Cash Option)).  For Former Executive Club Members, affirmatively electing the Cash Option is the only way to

receive compensation under the Settlement Agreement; a Former Executive Club Member who does not affirmatively elect the Cash Option or who opts out of the Class will receive nothing from the settlement, and a Former Executive Club Member who neither elects the Cash Option nor opts out of the Class nonetheless will be bound by the judgment (which would extinguish his or her claims) should the Court ultimately approve the settlement.

Each Class member who files a Valid Claim for the Cash Option will receive a cash payment equivalent to 16.9% of the total fuel surcharges the Class member paid in connection with an award or redemption ticket during the Class period, with a minimum Cash Option payment of $5. (Id. § II(6)). The Cash Option is subject to a total cap of $27,125,000 with respect to Cash Option claims by all Class members.[5] (Id.)

The notices that will be sent to Class members will contain a unique identifier that will allow members of the Class to view how many Avios they would receive (if eligible), as well as the amount of the cash payment under the Cash Option, by accessing the Class website, http://www.fuelsurchargeclassaction.com. (Id.)

In addition to the compensation available to all members of the Class, the Agreement also provides that Class Counsel may apply to the Court for service awards of no more than $10,000 to each of the Class Representatives "to compensate them for their efforts and commitment on behalf of the Class." Neither the application for nor the entitlement to such awards is contingent on a Class Representative's supporting or agreeing to the settlement. (Id. § X(7)). British

---

[5] There is also the potential that the total cap could increase. Under the Agreement, if the Court awards attorney's fees and costs in an amount less than that requested by Class Counsel, the difference will be distributed to Class members on a *pro rata* basis. (See Settlement Agreement §§ II(6), IV(A)(5), IV(B)(1); see also id. § X(11) (providing that if "the Court does not award Class Counsel the full amount of expenses, costs and fees sought, any differential will not revert to B[ritish] A[irways], but will instead be distributed, on a pro rata basis, to those [] Class Members who have submitted Valid Claims prior to the Claims Deadline")).

Airways also agrees not to oppose the request for service awards, but the ultimate decision rests with the Court.  (<u>See</u> <u>id.</u> §§ X(7)-(8)).

Finally, the Settlement Agreement also makes provision for payment of attorney's fees and costs to Class Counsel in connection with their work throughout the course of this litigation. (<u>See generally</u> <u>id.</u> § X).  Specifically, Class Counsel will file a motion seeking no more than $3,750,000 as reimbursement costs and expenses incurred in pursuing this case, as well as no more than $11,095,000 in attorney's fees for work performed since the inception of this case. (<u>See</u> <u>id.</u> § X(1)).  These are maximum amounts that the parties negotiated at the settlement conference as the upper limits of an award for fees and costs; the actual amounts Class Counsel will seek will be determined in the coming weeks and disclosed in a formal motion for attorney's fees and costs, which will be posted to the Class website at least 21 days before the date by which Class members must opt-out of the Class or object to the settlement.  (<u>See</u> <u>id.</u> § X(1)-(3)). The ultimate decision to make an award of fees and costs to counsel for the Class, and the appropriate amount of any such award, will be made by the Court.  <u>See</u> Fed. R. Civ. P. 23(h). (<u>See</u> Settlement Agreement § X(1)-(5)).

**D.  Notice and Claims Process**

Rule 23(e)(1) requires the Court to direct reasonable notice to members of the Class who would be bound if the Court approves the settlement, and thus the Settlement Agreement sets forth a comprehensive process for providing Class members with notice of the proposed settlement and information sufficient to enable them to understand both the terms of the Settlement Agreement and the options available to them in this litigation.  (<u>See</u> Pls.' Mem. at 10; <u>see generally</u> Settlement Agreement § VI).  Judge Dearie approved a similar notice plan prior to settlement.  (<u>See</u> Endorsed Order Approving Notice Plan at 1, Sept. 28, 2017, ECF No. 272).

The Settlement Agreement contemplates two forms of notice that will be sent to each member of the Class, in addition to a website and a toll-free number.  The Long Form Notice, which is intended to be sent to Class members by e-mail, consists of 14 pages and sets forth with some detail the options available under the settlement and provides answers to anticipated frequently asked questions.  (See generally Long Form Notice, May 15, 2018, ECF No. 303-3).  The Summary Notice, which is designed to fit on a large postcard, is, as its name suggests, brief, and calculated to provide recipients with sufficient information to determine why they have been contacted, the basic details of the Class settlement, and to obtain further information by accessing the Class website or calling a toll-free phone number.  (See Summary Notice, Ex. D to 4/11/18 Settlement Agreement, ECF No. 294-1).  Both forms of notice include:  (1) an explanation of the nature of the action; (2) a description of the class certified; (3) the claims, issues and defenses; (4) that a class member may appear through a separate attorney if he desires; (5) that any member who wishes may be excluded by the Court; (6) the time and manner for requesting exclusion; (7) the binding effect of a class judgment on members of a Rule 23(b)(3) class; (8) the toll-free number for the Class with prerecorded answers to questions; and (9) the URL for the Class website.

The parties ask the Court to appoint JND Legal Administration as the Settlement Claims Administrator, which will be responsible to the parties and the Court for providing the required notices to Class members and overseeing the claims process, particularly with respect to the Cash Option, which requires the submission and processing of Cash Claim Forms.  (See Settlement Agreement § VI(A)(1)-(2)).  Specifically, the parties propose that the Settlement Administrator send a Long Form Notice to Class members via e-mail once the Court issues an Order preliminarily approving the settlement.  (Id. § VI(B)(2)).  Where the parties do not possess

a valid e-mail address for a Class member, that member will be sent a Summary Notice by regular U.S. mail.  (<u>Id.</u>)  Each form of notice contains information designed to clearly and concisely provide information about the settlement and includes a link to the Class website where even more information will be available.  (<u>Id.</u>)  If the Settlement Administrator receives notification that any e-mails to a Class member are undeliverable, the Settlement Administrator will then send a Summary Notice to that member's last known address by U.S. mail.  (<u>Id.</u> § VI(B)(5)).

The Settlement Administrator will also create and maintain a Class website that will become active within five days after preliminary approval.  (<u>Id.</u>)  The website, located at www.fuelsurchargeclassaction.com, will contain this Preliminary Approval Order, the forms of notice that will be disseminated to Class members, the Settlement Agreement, and other documents and information relevant to the settlement and this litigation.  (<u>Id.</u>)  The Administrator will also establish and maintain a toll-free number that Class members may call to receive pre-recorded answers to frequently asked questions.  (<u>Id.</u> § VI(B)(6)).

<u>DISCUSSION</u>

The parties jointly move for preliminary approval of the Class settlement.

**A.  Legal Standard**

Rule 23(e) of the Federal Rules of Civil Procedure governs settlement of claims in a class action.  <u>See</u> Fed. R. Civ. P. 23(e).  Generally, approval of a class action settlement involves a two-step process.  First, the court preliminarily approves the proposed settlement by evaluating the written submissions and informal presentation of the settling parties, and by scrutinizing the negotiation process that led to settlement.  Second, the court holds a fairness hearing at which members of the class may be heard to determine whether the proposed settlement is "fair,

reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); see also Parker v. City of New York, No. 15 CV 6733, 2017 WL 6375736, at *4 (E.D.N.Y. Dec. 11, 2017) (explaining the two-step process and collecting cases).

    1.  <u>Preliminary Approval</u>

       "Oddly, Rule 23 itself does not outline [the preliminary approval] process, nor, therefore, does it provide district courts a standard by which to adjudicate the motion for preliminary approval." 4 William B. Rubenstein, <u>Newberg on Class Actions</u> § 13:10 (5th ed., Dec. 2017 Update); <u>see</u> <u>In re MetLife Demutualization Litig.</u>, 689 F. Supp. 2d 297, 324 (E.D.N.Y. 2010) (observing that the "federal civil rules authorize, but do not require, a court to conduct a preliminary review of the settlement agreement for probable reasonableness before notice is sent to the class"). In contrast to the rigorous inquiry the court must conduct at the final approval stage, to grant preliminary approval, the court need only determine "that there is what might be termed 'probable cause' to submit the [proposed settlement] to class members and hold a full-scale hearing as to its fairness." <u>Menkes v. Stolt-Nielsen S.A.</u>, 270 F.R.D. 80, 101 (D. Conn. 2010) (quoting <u>In re Traffic Exec. Ass'n—E. R.Rs.</u>, 627 F.2d 631, 634 (2d Cir. 1980)). Thus, preliminary approval should be granted "where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." <u>Escort v. Princeton Info. Ltd.</u>, No. 15 CV 4487, 2017 WL 1194684, at *2 (S.D.N.Y. Mar. 30, 2017) (quoting <u>Silver v. 31 Great Jones Rest.</u>, No. 11 CV 7442, 2013 WL 208918, at *1 (S.D.N.Y. Jan. 4, 2013)).

**B.  Analysis of the Proposed Settlement**

It is clear both from the parties' submissions and the Court's familiarity gained through years of supervising this litigation that there is "probable cause" to submit the proposed settlement to members of the Class and to hold a full-scale fairness hearing.  The parties reached an agreement to resolve this case with extensive assistance from the Court.  Since reaching an agreement in principle, the parties have participated in extensive discussions with the Court regarding the terms of the Settlement Agreement.  The Court's long-experience with this case and extensive involvement in settlement discussions is an appropriate consideration in determining whether to grant preliminary approval.  See, e.g., Stinson v. City of New York, 256 F. Supp. 3d 283, 289 (S.D.N.Y. 2017) (concluding that the involvement of a magistrate judge in settlement discussions strongly supported a finding of procedural fairness).

More importantly, a presumption of fairness, reasonableness, and adequacy with respect to the settlement arises where, as here, "a class settlement [is] reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." McReynolds v. Richards-Cantave, 588 F.3d 790, 803 (2d Cir. 2009) (quotation marks and citation omitted). Such presumptions reflect that judicial policy favors the settlement and compromise of class actions.  Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116-17 (2d Cir. 2005); see also In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004).

When evaluating whether to grant final approval of a class action settlement, courts generally evaluate the substantive fairness of the proposed settlement by considering:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the Settlement Fund in light of the best possible

recovery; and (9) the range of reasonableness of the Settlement Fund
to a possible recovery in light of all the attendant risks of litigation[.]

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted),

abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see

also D'Amato v. Deutsche Bank, 236 F.3d 78, 86 (2d Cir. 2001).  The Court is not required to

conduct such an extensive analysis at this preliminary stage, nor is the Court required to make a

finding of fairness.  Parker v. City of New York, 2017 WL 6375736, at *5.  Nonetheless, the

factors that will be relevant to final approval can be instructive in considering a motion for

preliminary approval.  Id.

Several of the factors relate to the result that the settlement achieves for the class.  It is

therefore particularly important to observe that, depending on the metric one selects, the

proposed settlement here provides Class members compensation with a value between

approximately $27 million on the low end and $63 million at the upper end.  In light of the

Court's experience throughout the course of this litigation—and particularly in light of the

contentiousness of earlier proceedings, the inability of the parties to settle during previous

mediation attempts, and the parties' initial positions when they appeared for the settlement

conferences with the Court—the significant benefit that the settlement will provide to Class

members is remarkable.

For the foregoing reasons, the Court grants the motion for preliminary approval of the

settlement.

## C.  Adequacy of Notice and Distribution Process

Pursuant to the Federal Rules of Civil Procedure, when the parties propose a settlement,

the "court must direct notice [of the settlement] in a reasonable manner to all class members who

would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Under Rule 23(e)(1), the "'[c]ourt

has virtually complete discretion as to the manner of giving notice to class members.'"  In re
MetLife Demutualization Litig., 689 F. Supp. 2d at 345 (quoting Handschu v. Special Servs.
Div., 787 F.2d 828, 833 (2d Cir. 1986)).  In addition to notice of a proposed settlement, the Rule
also either requires or permits courts to provide notice of the class proposed to be certified,
depending on the type of class action proceeding.  See Fed. R. Civ. P. 23(c)(2).  In a Rule
23(b)(3) class action such as this, the court "must direct . . . the best notice that is practicable
under the circumstances, including individual notice to all members who can be identified
through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B). The Rule further provides that notice to
such classes must "concisely and clearly state . . . (i) the nature of the action; (ii) the definition of
the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter
an appearance through an attorney if the member so desires; (v) that the court will exclude from
the class any member who requests exclusion; (vi) the time and manner for requesting exclusion;
and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ.
P. 23(c)(2)(B).

In Eisen v. Carlisle & Jacquelin, the Supreme Court held that individual notice, as
opposed to general published notice, is required by Rule 23(c)(2) for class members who are
identifiable through reasonable effort.  417 U.S. 156, 173-76 (1974) (holding that "individual
notice to identifiable class members is not a discretionary consideration" but rather, is an
"unambiguous requirement of Rule 23"); Becher v. Long Island Lighting Co., 64 F. Supp. 2d
174, 177 (E.D.N.Y. 1999).  Notice is adequate if it "'fairly apprise[s] the prospective members of
the class of the terms of the proposed settlement and of the options that are open to them in
connection with the proceedings.'"  Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 114
(quoting Weinberger v. Kendrick, 698 F.2d 61, 70 (2d Cir. 1982)).

Here, the proposed Notice of Class Action Settlement provides the following information: (1) an explanation of the nature of the action; (2) a description of the class certified; (3) the claims, issues and defenses; (4) that a class member may appear through a separate attorney if he desires; (5) that any member who wishes may be excluded by the court; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members of a Rule 23(b)(3) class. The notice also describes the maximum amount of attorney's fees, costs, and service awards that Class Counsel may seek, and provides information regarding the final approval hearing. Moreover, information relevant to the settlement will be available to Class members in a central location, the Class website dedicated to this litigation.

The Court finds the proposed forms of notice and the means of disseminating notice to be sufficient. The proposed Summary Notice and Long Form Notice are themselves sufficiently detailed so as to inform the Class members of their rights and obligations, and the methods of notice are practical and likely effective in reaching the affected individuals. See Weinberger v. Kendrick, 698 F.2d at 72 (finding that mailing individual notices to class members at their last known addresses was a sufficient means of notification under the circumstances). As such, the Court approves the parties' proposed notice plan, including the proposed forms of notice. The Court also appoints JND Legal Administration as the Settlement Claims Administrator.

## D. Final Approval Hearing

The Court will hold a final approval hearing on **July 27, 2018 at 10:00 a.m.** in Courtroom 13B South of the United States District Courthouse, 225 Cadman Plaza East, Brooklyn, NY 11201. After holding the hearing, the undersigned will prepare a Report and Recommendation to the Honorable Raymond J. Dearie with respect to the disposition of the

anticipated motion for final approval, the motion for attorney's fees and costs, and the motion for service awards to the Class Representatives.

In contemplation of the final hearing, the Court establishes the following deadlines:

- The parties, through the Settlement Administrator, shall send notice to members of the Class beginning on May 30, 2018.

- The Settlement website shall be made available within five days from the date of this Order.

- Plaintiffs' motion for final approval, motion for attorney's fees and costs, and motion for service awards shall be filed by June 15, 2018.

- Any Class member who wishes to opt out of the settlement, object to the settlement, or oppose plaintiffs' motions must file oppositions with the Clerk of the Court by July 6, 2018 and must provide copies to counsel for the parties.

- Plaintiffs' shall file their replies, if any, by July 20, 2018.

- To elect the Cash Option, a Class member must submit a Cash Claim Form that is received by U.S. Mail or electronic submission by 11:59 p.m. Eastern Time on July 29, 2018.

If the Settlement is approved, all Class members who do not exclude themselves will be bound by the proposed Settlement provided for in the Settlement Agreement, and by any judgment or determination of the Court affecting Class members.  All Class members who do not exclude themselves shall be bound by all determinations and judgments in this Litigation concerning the Settlement, whether favorable or unfavorable to the Class.

Any Class member may appear at the Final Approval Hearing and show cause why the proposed Settlement should or should not be approved as fair, reasonable, and adequate and in the best interests of the Class, or why judgment should or should not be entered, or to present opposition to Class Counsel's application for attorneys' fees and expenses or to Class Counsel's

22

application for service awards. However, no Class Member or any other person shall be heard or entitled to contest the approval of the terms and conditions of the Settlement, or if approved, the judgment to be entered approving the Settlement, or Class Counsel's application for an award of attorneys' fees and expenses, or for service awards, unless that Settlement Class Member or person: (i) filed written objections with the Clerk of the United States District Court for the Eastern District of New York, no later than twenty-one (21) calendar days before the Final Approval Hearing; and (ii) served written objections, by first-class mail, including the basis for the objection(s), as well as copies of any papers and briefs in support of his or her position upon each of the following no later than twenty-one (21) calendar days before the Final Approval Hearing: (i) Clerk of the Court; (ii) Class Counsel; (iii) BA's counsel; and (iv) the Settlement Claims Administrator, as set forth in the Class Notice.

For an objection to be considered by the Court, the objection must set forth: (a) the objector's full name, address, and telephone number and, if represented by counsel, the name, address and telephone number of his or her counsel; (b) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel; (c) all grounds for his or her objection, accompanied by any legal support for the objection to the objector or his or her counsel; (d) copies of any papers, briefs, or other documents upon which the objection is based or upon which the objector or his counsel intends to rely; (e) a statement of whether the objector or his or her counsel will ask to speak at the Final Approval Hearing and, if so, the amount of time the objector or counsel request for speaking; and (f) the objector's handwritten signature. Counsel's signature is not a substitute for the objector's signature.  Failure to follow these requirements will result in waiver of any objections to the settlement or any other matters to be considered at the Final Approval Hearing.

Any Settlement Class Member may enter an appearance in this Litigation, at his or her own expense, individually or through counsel of his or her own choice. If a Settlement Class Member does not enter an appearance, he or she will be represented by Class Counsel.

**E.   Exclusion from the Settlement and Class**

Any requests for exclusion must be received no later than twenty-one (21) calendar days before the Final Approval Hearing, which is the Opt-Out and Objection Date. Any person who would otherwise be a member of the Class who wishes to be excluded from the Settlement Class must mail or deliver a written request for exclusion to the Settlement Claims Administrator and the request must be received by the Opt-Out and Objection Date. The written notification must include the Settlement Class Member's name, address and telephone number, a statement that the Class Member wishes to be excluded from the Settlement in this Litigation, and be signed by the Class Member. All Settlement Class Members who submit valid and timely notifications of exclusion in the manner set forth in this paragraph shall have no rights under the Settlement Agreement, shall not share in the forms of relief provided by the Settlement, and shall not be bound by the Settlement Agreement, any orders of the Court, or any final judgment.

Any Class Member who does not notify the Settlement Claims Administrator of his or her intent to exclude himself or herself from the Class in the manner stated in this Order shall be deemed to have waived his or her right to be excluded from the Class, and shall forever be barred from requesting exclusion from the Class in this or any other proceeding, and shall be bound by the Settlement and the judgment, including but not limited to, the release of the Released Claims against the Released Parties provided for in the Settlement Agreement and the judgment, if the Court approves the Settlement.

CONCLUSION

For the foregoing reasons, the motion for preliminary approval of the Class settlement is granted, and the Court establishes the deadlines and procedures set forth in this Order. The Court will hold a Final Approval Hearing on **July 27, 2018 at 10:00 a.m.** in Courtroom 13B South of the United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York 11201.

The Court approves the parties' proposed forms of notice and appoints JND Legal Administration as the Settlement Claims Administrator. The Administrator is directed to establish the Class website and to make a copy of this Order available thereon.

The parties and the Settlement Administrator are directed to file a joint status report within thirty (30) days.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
        May 29, 2018

/s/ Cheryl L. Pollak
_____
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York