UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
RUSSEL DOVER *et al.*,

                    Plaintiffs,

          -against-

BRITISH AIRWAYS, PLC (UK),

                    Defendant.
---------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
12 CV 5567 (RJD) (CLP)

**POLLAK**, United States Magistrate Judge:

      On May 29, 2018, this Court entered an Order preliminarily approving the proposed

Class Settlement in this case, along with the proposed forms of notice, and directed JND Legal

Administration as the Settlement Claims Administrator to disseminate notice of the proposed

Settlement.  On July 27, 2018, this Court held a fairness hearing to determine whether the

settlement was "fair, reasonable, and adequate."  City of Detroit v. Grinnell Corp., 495 F.2d 448,

463 (2d Cir. 1974), abrogated on other grounds, Goldberger v. Integrated Restaurant, Inc., 209

F.3d 43 (2d Cir. 2000).

      For the reasons set forth below, the Court respectfully recommends that the proposed

Class Settlement be approved.

FACTUAL AND PROCEDURAL BACKGROUND

      As set forth in this Court's May 29, 2018 Memorandum and Order ("Order"), this suit

was commenced on November 9, 2012 against defendant British Airways by a class of current

and former members of the British Airways frequent flyer program called the Executive Club.

The four original named plaintiffs[1] alleged that, pursuant to a frequent flyer contract, Executive Club members were to accumulate "Avios" whenever they flew with British Airways or stayed in certain hotels or rented cars from certain providers.  Plaintiffs alleged that British Airways breached its contract with its Executive Club members by imposing a fuel surcharge on reward travel that was not reasonably related to the price or cost of fuel.

Following class certification,[2] British Airways filed an unsuccessful request for leave to appeal to the Second Circuit. See Dover v. British Airways, PLC (UK), No. 17-1121, 2017 WL 2590319, at *1 (2d Cir. June 14, 2017) (denying the petition, finding an immediate appeal unwarranted).  (See also Mandate, June 14, 2017, ECF No. 260).  Thereafter, the District Court denied the parties' cross-motions for summary judgment and directed them to prepare for trial. See Dover v. British Airways, PLC (UK), 2017 WL 4358726, at *7 (E.D.N.Y. Sept. 29, 2017), ECF No. 271.

After more than five years of contentious litigation and extensive settlement negotiations before two private neutrals, the parties, with the help of this Court, reached an agreement to

---

[1] On May 12, 2014, Henry Horsey was substituted as a named plaintiff for Jonathan Stone. (Order Granting Substitution at 1, May 12, 2014, ECF No. 77).  On May 22, 2018, the Estate of Suzette Perry was substituted as a named plaintiff following Ms. Perry's death.  As a Former Executive Club Member, Ms. Perry represented the interests of former members.  (See Stipulation and Order Adding the Estate of Suzette Perry as Class Representative at 1-3, May 22, 2018, ECF No. 306).

[2] On March 31, 2017, the Honorable Raymond J. Dearie, United States District Judge, certified the Rule 23(a) Class, defined as "[a]ll United States resident members of British Airways' Executive Club who redeemed frequent flier miles for an award ticket from November 9, 2006 through April 17, 2013 and who paid a BA-imposed 'fuel surcharge,' so long as that United States resident member provided British Airways with a valid United States address at the time of booking." Dover v. British Airways, PLC (UK), 321 F.R.D. 49, 59 (E.D.N.Y. 2017).  There were certain classes of people who were excluded from the Class. Id.

settle the claims on behalf of all members of the Class.  (See Settlement Agreement at 1).[3]  The Settlement Agreement ("Agreement") was signed by the parties and their counsel on May 14, 2018 and filed with the Court on May 18, 2018.  (See id. at 32).

As set forth in this Court's Memorandum and Order of May 29, 2018, the Settlement Agreement provides for compensation to Active Executive Club members of the Class in the form of either Avios frequent flyer miles or cash.  (Settlement Agreement § IV(A)(1)).  Active Executive Club Members will automatically be credited with Avios in an amount that corresponds to the number of times he or she redeemed frequent flier miles for award travel and paid an associated fuel surcharge during the Class period, unless they have made a written election to receive the Cash Option.  (Id. §§ IV(A)(1)-(3)).  The Agreement makes available a maximum of 2,228,677,500 Avios which, if all Active Executive Club Members select the Avios option, are estimated to have a maximum total value of approximately $63 million.  (See id. § IV(A)(1)).

The Agreement also provides for a Cash Option that any member of the Class, including both Active Executive Club Members and Former Executive Club Members,[4] could elect by timely submitting to the Settlement Class Administrator a Cash Claim Form that meets certain requirements.  (See id. §§ II(5) (defining "Cash Claim Form"), II(6) (defining the "Cash Option"), II(37) (defining a "Valid Claim"), IV(A)(5) (providing that Active Executive Club Members may elect the Cash Option), IV(B)(1) (providing that Former Executive Club Members

---

[3] Citations to "Settlement Agreement" refer to the parties' Settlement Agreement filed May 18, 2018, ECF No. 304-1.

[4] Former Executive Club Members can only receive cash under the Settlement.  Those who do not affirmatively elect the Cash Option or who opt out of the Class will receive nothing.

may elect the Cash Option), VII (establishing the process for processing and administering claims by Class Members who elect the Cash Option)).  Class Members filing Claims for the Cash Option will receive a cash payment equal to 16.9% of the total fuel surcharges the Class member paid in connection with an award or redemption ticket during the Class period, with a minimum Cash Option payment of $5.  (Id. § II(6)).  The Cash Option is subject to a total cap of $27,125,000 with respect to Cash Option claims by all Class Members.[5]  (Id.)  Under the settlement process, Class Members are able to access the Class website to determine how many Avios they would receive (if eligible), as well as the amount of the cash payment they would receive under the Cash Option.  (Id.)

The Settlement Agreement also provides for service awards of no more than $10,000 to each of the Class Representatives (id. § X(7)), and Class Counsel filed a motion on June 15, 2018, seeking no more than $3,750,000, as reimbursement for costs and expenses incurred in pursuing this case, as well as $11,095,000 in attorney's fees for work performed since the inception of this case.  (See id. § X(1); see also Pls.' Mem.[6] at 3).[7]

---

[5] There is also the potential that the total cap could increase.  Under the Agreement, if the Court awards attorney's fees and costs in an amount less than that requested by Class Counsel, the difference will be distributed to Class members on a *pro rata* basis.  (See Settlement Agreement §§ II(6), IV(A)(5), IV(B)(1); see also id. § X(11) (providing that if "the Court does not award Class Counsel the full amount of expenses, costs and fees sought, any differential will not revert to B[ritish] A[irways], but will instead be distributed, on a pro rata basis, to those [] Class Members who have submitted Valid Claims prior to the Claims Deadline")).

[6] Citations to "Pls.' Mem." refer to the Memorandum in Support of Plaintiffs' Motion for Final Approval, Fees, Expenses, and Service Awards, filed June 15, 2018, ECF No. 309.

[7] Under the Agreement, Class Counsel was to file a formal motion for attorney's fees and costs, at least 21 days before the date by which Class members must opt-out of the Class or object to the settlement.  (See id. § X(1)-(3)).  The ultimate decision to make an award of fees and costs to counsel for the Class, and the appropriate amount of any such award, is to be made by the Court.  See Fed. R. Civ. P. 23(h).  (See Settlement Agreement § X(1)-(5)).

In addition to posting information about the Settlement Agreement on a specific website set up for this purpose, two forms of notice were approved to be sent to the Class Members: a Long Form Notice, sent by email, consisting of 14 pages, describing in detail the options available; and a Summary Notice, which fits on a large postcard.  (See generally Long Form Notice;[8] Summary Notice[9]).  JND Legal Administration was appointed as the Settlement Claims Administrator, responsible for providing the required notices to Class Members and overseeing the claims process, particularly the processing of Cash Claim Forms.  (See Settlement Agreement § VI(A)(1)-(2)).

In granting preliminary approval of the Class settlement, this Court set forth in its May 29, 2018 Order a detailed analysis of the legal standards under Rule 23 of the Federal Rules of Civil Procedure and the application of those standards to the facts and circumstances surrounding this Settlement.  Dover v. British Airways, PLC (UK), No. 12 CV 5567, 2018 WL 2411220 (E.D.N.Y. May 29, 2018).  That analysis is incorporated by reference herein and repeated only to the extent necessary to address issues relating to the pending motion for Final Approval of the Settlement.

On July 27, 2018, this Court held the Fairness Hearing to determine the class' reaction to the Settlement.  Out of a total of 168,319 Class Members, none of the Class Members asked to be excluded from the Class.  (Pls.' Reply at 1).[10]

---

[8] Citations to "Long Form Notice" refer to the Long Form Notice filed May 15, 2018, ECF No. 303-3.

[9] Citations to "Summary Notice" refer to the Summary Notice, filed April 11, 2018, Exhibit D to the Settlement Agreement, ECF No. 294-1.

[10] Citations to "Pls.' Reply" refer to Plaintiffs' Reply in Support of Plaintiffs' Motion for

However, prior to the hearing, the Court received two objections to the proposed Settlement Agreement. On July 3, 2018, Robin and Stephen Weiss, a married couple, wrote to the Court with an objection to the Settlement based on their complaint that because their individual accounts were linked as a household account, both should be members of the Class. (Weiss Ltr.[11]). Although Ms. Weiss had been notified that she would a Class Member, Mr. Weiss had been told that he was not. (Id.) The second objection was filed by Joshua A. Sauberman in a letter dated July 5, 2018, in which he raised a number of objections to the terms of the Settlement and the manner in which notice had been given. (Sauberman Ltr.).[12] The Court requested that the parties address each of these objections in writing. (7/10/18 Order).[13]

Having reviewed the objections and the responses thereto and for the reasons set forth below, the Court respectfully recommends that the proposed Class Settlement be approved as fair, reasonable and adequate under the applicable standards.


## DISCUSSION

### A. Standards

To grant final approval of a class settlement under Rule 23(e), the Court must determine that the proposed settlement is "fair, adequate, and reasonable, and not the product of collusion."

---

Final Approval, Fees, Expenses, and Service Awards, filed July 17, 2018, ECF No. 314.

[11] Citations to "Weiss Ltr." refer to the July 3, 2018 Letter from Robin Weiss and Stephen Weiss, ECF No. 312.

[12] Citations to "Sauberman Ltr." refer to the letter submitted by Joshua A. Sauberman, dated July 5, 2018, ECF No. 311.

[13] Citations to "7/10/18 Order" refer to this Court's July 10, 2018 Order directing the parties to address the objections.

Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted); see Fed. R. Civ. P.

23(e).  Judicial policy favors the settlement and compromise of class actions.  Wal-Mart Stores,

Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116-17 (2d Cir. 2005); see also In re Warfarin Sodium

Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004).  Whether a settlement is fair is a determination

within the sound discretion of the court.  Levitt v. Rodgers, 257 F. App'x 450, 453 (2d Cir. 2007)

(citing In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1368 (2d Cir. 1991)).

Generally, approval of a class action settlement involves a two-step process.  First, the

court preliminarily approves the proposed settlement by evaluating the written submissions and

informal presentation of the settling parties and the negotiating process leading to the settlement.

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116.  Second, the court holds a fairness

hearing to "determine whether the settlement's terms are fair, adequate, and reasonable . . . ."

Capsolas v. Pasta Res., Inc., No. 10 CV 5595, 2012 WL 4760910, at *4 (E.D.N.Y. Oct. 5, 2012).

In City of Detroit v. Grinnell Corp., the Second Circuit enumerated nine factors to guide

courts at the final approval stage in evaluating the substantive fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the Settlement Fund in light of the best possible recovery; and (9) the range of reasonableness of the Settlement Fund to a possible recovery in light of all the attendant risks of litigation[.]

495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds,

Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see also D'Amato v. Deutsche

Bank, 236 F.3d 78, 86 (2d Cir. 2001); Garcia v. Pancho Villa's of Huntington Village, No. 09

CV 486, 2012 WL 5305694, at *4 (E.D.N.Y. Oct. 4, 2012).

The court must also determine if the settlement was "achieved through arms-length

negotiations by counsel with the experience and ability to effectively represent the class's

interests." Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citing

Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); see also D'Amato v. Deutsche Bank,

236 F.3d at 85 (noting that the district court must "determine a settlement's fairness by

examining the negotiating process leading up to the settlement as well as the settlement's

substantive terms"); In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013

WL 4080946, at *4 (S.D.N.Y. May 30, 2013).  In reviewing a proposed settlement, the court has

the "'fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and

that the class members' interests [were] represented adequately.'"  Clement v. Am. Honda Fin.

Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citation omitted) (quoting In re Warner

Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986)).


B. Analysis of Procedural Fairness

As plaintiffs' counsel notes in their Memorandum in Support of Plaintiffs' Motion for

Final Approval, Fees, Expenses, and Service Awards, this "outstanding" settlement was entered

into only after plaintiffs' counsel's "tireless efforts over nearly six years, including a detailed pre-

filing investigation," success in opposing two motions to dismiss, analysis of "thousands of

pages" of discovery, and "dozens" of depositions.  (Pls.' Mem. at 1-2).  In addition, counsel

collaborated with industry and economic experts to develop an understanding of the issues,

8

moved for class certification and prevailed on appeal, briefed motions for summary judgment, and briefed issues relating to British Airways' experts, and plaintiffs' own experts. (Id. at 2). The parties engaged in several days of arms-length settlement negotiations through two private mediators, and then spent several lengthy settlement conferences with this Court. (Id.)

According to counsel, the litigation extended over a period of six years, requiring the investment of more than $10 million in time and money. (Id.) As plaintiffs' counsel noted during the Fairness Hearing, there is no "reasonable argument that this was anything than a hard-fought, arms-length negotiation where both parties had a full, fair, detailed understanding of the facts of the case." (Tr.[14] at 4). Defendant's counsel agreed, commenting that "the process here was very robust and hard fought." (Id. at 5).

Having spent many hours with counsel in an effort to resolve this case and, by necessity, becoming familiar with the strengths and weaknesses of each side's case and the risks posed by continued litigation, this Court is of the view that the settlement was the product of vigorous arms-length negotiations. Given the presumption of fairness when a class settlement has been reached after "arm's-length negotiations between experienced, capable counsel after meaningful discovery," see Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116, the Court finds that the process of reaching the proposed settlement in this case was procedurally fair.

---

[14] Citations to "Tr." refer to pages in the transcript of the Fairness Hearing held before this Court on July 27, 2018.

C. Analysis of Substantive Fairness

1. Complexity, Expense, and Likely Duration of the Litigation

Turning to the Grinnell factors, the parties agree that "there is no real question that

continued litigation would involve considerable expense." (Pls.' Mem. at 5). Not only would

continued litigation require a lengthy and expensive trial, but British Airways has asserted that it

would appeal the class certification motions, the Daubert decisions, and any verdict adverse to

British Airways. (Id. at 5). Although plaintiffs have been successful to date, proceeding to a

final resolution would not be without risk, and would likely require the expenditure of "six to ten

million dollars." (Id. at 6). Thus, the first Grinnell factor of avoiding potential protracted

litigation favors settlement.

2. Establishing Liability and Damages

The risk of establishing liability and damages also favors settling this dispute. Although

plaintiffs "believe[d] their liability case was strong," they acknowledge that "every trial is risky,

and the appellate process adds to that jeopardy." (Id. at 7). At the same time, British Airways

felt that if the case went to trial, "British Airways was going to win." (Tr. at 6). British Airways

was clearly prepared to appeal to the Second Circuit on the ground that plaintiffs "could not

prove their case with generalized proof." (Id. at 7). There was also a risk that a jury would have

awarded less than the plaintiffs' requested $140 to $161 million in damages. (Pls.' Mem. at 7).

Plaintiffs note that a jury could have awarded half of the fuel charges imposed by British

Airways, which would have reduced the amount to an award of $70 to $80 million. (Id.)

Finally, a trial on the merits would involve resolution of liability issues and likely an appeals

process, both of which pose risk and uncertainty with respect to outcome and duration. (Id. at 5).

Accordingly, the proposed settlement seeks to alleviate these risks. (Id. at 6). In light of the

foregoing, considering the risks of appeal and the prolonged nature of the litigation, the Court finds that this factor favors approval of the proposed settlement.

### 3. Risk of Losing Certification

Although plaintiffs submit that there would be little risk that the class would be decertified, as explained in the district court's decision granting certification, British Airways expressed confidence that the class would ultimately be de-certified. (Id. at 6; Tr. at 7). Nonetheless, in recognition that the law could change during the pendency of the action, plaintiffs submit that the settlement reflects that risk. (Id.)

### 4. Range of Reasonableness of the Settlement

Plaintiffs note that here, the maximum possible recovery at trial, after deducting for fees and expenses, would be $104.52 million. (Id. at 8). Plaintiffs assert that the cash value alone of the Settlement is more than 25% of the total recovery and does not even take into account the value of the Avios which are being offered as an alternative. (Id.) Thus, the Settlement appears to be well within the range of reasonableness in light of the maximum possible recovery.

Similarly, when viewed in light of the significant risks attendant upon litigating the claims through appeal and the expense that would necessarily be incurred, the Settlement is more than fair, reasonable and adequate. As plaintiffs note, the Settlement is "remarkable." (Id.)

### 5. Reaction of Class to Settlement

Finally, the reaction of the Class has been overwhelmingly positive. The Settlement provided Class Members with a compensation value of between approximately $27 million on the low end and $63 million at the high end. (Omnibus Reply[15] at 1). No members of the Class

---

[15] Citations to "Omnibus Reply" refer to the Omnibus Reply in Support of Plaintiffs' Motion For Final Approval, Fees, Expenses, and Service Awards, filed July 20, 2018, ECF No. 316.

asked to be excluded from this Settlement and only two out of the 168,319 Class Members filed objections. (Id.)

In accordance with this Court's preliminary order of approval, JND Legal Administration ("JND") was appointed as the Settlement Claims Administrator. According to the Declaration of Jennifer M. Keough, Chief Executive Officer of JND, filed July 1, 2018, JND was provided with an electronic file (the "BA Data File") containing the names, customer IDs, and contact information for the Settlement Class Members, which included email addresses or mailing addresses for any Members for whom British Airways did not have an email address. (7/1/18 Keough Decl.[16] ¶ 3). The BA Data File also contained the amounts of fuel surcharges paid by each Member and the amount of Avios and Cash Option available. (Id.) Based on the information contained in the BA Data File, JND disseminated the Long Form Notice by email to 167,299 Class Members. (Id. ¶ 8). Of those, only 13,842 were returned as undeliverable; JND then made three attempts to re-mail those Long Form Notices by email.[17] (Id.)[18]

JND also established the Settlement Website on May 30, 2018, which allowed Class Members to look up the amounts they would be eligible to receive under the Settlement. (7/20/18 Keough Decl.[19] ¶ 4). As of July 18, 2018, Ms. Keough reported 82,693 views of the

---

[16] Citations to "7/1/18 Keough Decl." refer to the Declaration of Jennifer M. Keough, dated July 1, 2018.

[17] British Airways provided JND with a supplemental electronic data file including the mailing addresses for the 13,842 Settlement Class members where the email notice was returned as nondeliverable. (7/1/18 Keough Decl., n. 2). This also contained addresses for 1,020 Class Members for whom British Airways did not have an email address; postcard Summary Notices were sent to all 14,862 of these combined groups of individuals. (Id.)

[18] According to Ms. Keough's Declaration, Mr. Sauberman received notice via email. (7/1/18 Keough Decl. ¶ 10).

[19] Citations to "7/20/18 Keough Decl." refer to Ms. Keough's fourth Declaration, filed July 20, 2018, ECF No. 316-1.

Website.  (Id. ¶ 8).  In addition, JND established a telephone hotline for Class Members to call to receive pre-recorded answers to questions about the Settlement.  (Id. ¶ 9).  As of July 18, 2018, JND had received 1,091 calls on that hotline.  (Id. ¶ 10).  JND also received 4,161 emails to which JND has responded.  (Id. ¶ 11).

     a)   The Weiss Objection

As noted, only two objections were filed.  The Weiss objection was not focused on the substance of the Settlement; instead, it focused on the argument that both Mr. and Ms. Weiss should be allowed to participate in the Settlement.  (Weiss Supp. Ltr.). [20]  In essence, it appears that as household account holders, only one member is compensated under the Settlement when that member purchased multiple tickets for multiple family members.  (Id.)  As the Weiss objection points out, if each of the family members had purchased separate tickets, each member would be entitled to become a class member.  (Id.)  In their Reply filed July 17, 2018, plaintiffs explain that Mr. Weiss was never a member of the certified Class because the plaintiffs' damages are based on the amount of fuel surcharges paid by any individual.  (Pls.' Reply at 1).  Since Mr. Weiss has conceded that he did not pay a fuel surcharge, he has no standing to object to the Settlement and would not receive any damages even if the case were to proceed to trial.  (Id. at 2).  Moreover, because he is not a member of the certified class in that he did not pay a fuel surcharge, he is also not bound by the Settlement and is free to bring his own claims against British Airways should he have any.  (Id. (citing United States v. City of New York, 308 F.R.D. 53, 73 (E.D.N.Y. 2015)).  Moreover, while Ms. Weiss, as a Class Member, has standing to object, plaintiffs argue that the Settlement should not be vacated simply because someone

---

[20] Citations to "Weiss Supp. Ltr." refer to the letter submitted by Robin and Stephen Weiss, filed July 26, 2018, ECF No. 317.

believes that other non-class members' rights are not being dealt with.  (Id. (citing United States v. City of New York, 308 F.R.D. at 73).

The Weiss family submitted a subsequent complaint about the Settlement, arguing that the amount of Avios awarded as part of the Settlement should be calculated on a per ticket basis, rather than the way it has been negotiated in the Settlement.  (Id. at 3 (citing Ex. A thereto, which is email correspondence from Mr. Weiss)).  Plaintiffs note that not only is this objection untimely, and as noted, Mr. Weiss lacks standing to object, but the objection should be rejected because the Settlement was fair, adequate and reasonable.  (Id. at 4).  While it is always true that settlements could theoretically be better or larger, that alone does not mean that the settlement should be rejected.  Chin v. RCN Corp., No. 08 CIV 7349, 2010 WL 3958794, at *4 (S.D.N.Y. Sept. 8, 2010) (holding that a "settlement should not be rejected as fundamentally unfair simply because a better settlement might be possible"); see also D'Amato v. Deutsche Bank, 236 F.3d 78, 86 (2d Cir. 2001).  Perhaps more important is that the objection focuses on the quantum of Avios available as part of the Settlement, but if the case had gone to trial, the Class Members would not have received Avios in any event.  Having considered the objections filed by Mr. and Mrs. Weiss, the Court finds no reason to reject the Settlement.

b) The Sauberman Objection

The second objection was filed by Mr. Sauberman. His written objection, dated July 5, 2018, consists of four parts:  1) he objects to delivery of the Notice by email; 2) he claims that the defendant failed to disclose certain changes to its Avios Rewards Program that will reduce the value of the Settlement to those Class Members who chose that option; 3) there is no injunction to prevent defendant from engaging in this conduct in the future; and 4) the process

14

for objecting was onerous.  (Sauberman Ltr.).  Mr. Sauberman appeared at the Fairness Hearing

before this Court and expanded upon each of these arguments.  (Tr. at 24-50).

With respect to his argument that email notice was not sufficient, Mr. Sauberman argued

that spam filters which people have on their email accounts may have diverted the Class Notice

to their spam folder, preventing Class Members from seeing the Notice.  (Id. at 24-25).  In

response, plaintiffs' counsel explained that the reason email was used in this case is that it is the

way British Airways communicates with its Avios customers.  (Id. at 28).  Even if a customer's

account was inactive, the Notice was sent first by email and then if the email bounced back,

further efforts were made to update the email and send notice by regular mail.  (Id.)  In response

to Mr. Sauberman's concern about the Notice being diverted by spam filters, plaintiffs' counsel

explained that the standard process is to test class notice with widely used email programs, as

was done in this case.  (Id. at 26).  Counsel further argued that while there is a risk that people

with sophisticated spam filters such as Mr. Sauberman might not see the email, it is the same as

the risk that people who receive notice by regular mail may conclude that it is junk mail and toss

it.  (Id.)

Courts regularly approve notice by email, especially in circumstances such as these

where British Airways routinely communicates with its Executive Club Members by email.  See

Morgan v. Pub. Storage, 301 F. Supp. 3d 1237, 1266 (S.D. Fla. 2016); (7/17/18 Def.'s Ltr., Ex.

B).[21]  Here, British Airways identified 168,319 Class Members and notices were sent by email,

with only 13,842 returned as undeliverable.  Additional efforts to send by email were also made

---

[21] Citations to "7/17/18 Def.'s Ltr." refer to the letter submitted by defendant, dated July
17, 2018, in response to this Court's July 10, 2018 Order directing the parties to respond to the
Objections.  Ex. B to the 7/17/18 Def.'s Ltr. is the Order Preliminarily Approving Proposed
Settlement in Keiler v. Harlequin Enterprises Ltd., No. 12 CV 05558 (S.D.N.Y. Apr. 5, 2016).

and, where necessary, notice was also sent by regular mail.  There is no way to ensure that everyone receiving the notice opened their emails or whether they simply deleted them as potential junk mail.  While the Court has considered Mr. Sauberman's concern that some people's spam filters may have rejected the email as spam, it is notable that both examples cited by Mr. Sauberman received notice.  Many people, especially those with particularly sensitive spam filters, review their spam folders periodically to see if things have been captured that should not have been.  At this point, the Court finds that the Class received the best effective notice practicable under the circumstances.  See In re Advanced Battery Techs., Inc. Sec. Litig., 298 F.R.D. 171, 182 (S.D.N.Y. 2014).

Mr. Sauberman also objected on the grounds that the procedure for filing objections was onerous.  (Sauberman Ltr.).  It appears that Mr. Sauberman's concern is based on the requirement that objections should be sent to the Settlement Administrator, Class Counsel, and defendant's lawyers, and that the Long Form Notice only contains the address of the Settlement Administrator.  The Settlement papers reference the Website which contains answers to frequently asked questions and which also contains the addresses of Class Counsel, the Court, JND and defendant's counsel.  JND received numerous calls and emails from Class Members regarding the process.  There is no indication that anyone who wanted to file an objection was unable to determine the addresses to which such objections should be filed.  Indeed, had objectors contacted JND, they could easily have obtained the necessary information from the claims administrator.

During the Fairness Hearing, Mr. Sauberman argued that because only 20,000 or so of the Class Members actually looked up their settlement benefits online, and only two people objected, that proves that there was a problem with the Notice.  (Tr. at 31-32).  However, as

16

counsel pointed out, the argument as to few objections is, under the law of this Circuit, the opposite of what Mr. Sauberman argues; "[w]hen there are few objections it weighs very, very heavily in favor of final approval." (Id. at 33). Similarly, the 20,000 number of people who looked up the website is, as counsel notes, "an extraordinarily positive result." (Id.) Moreover, while Class members should be interested in what their choices were, they were provided a lot of information in the Notice itself such that they would not need to go online to check the Website, and the Notice was clear that if they did nothing, they would automatically receive Avios.

Mr. Sauberman objected to the absence of any injunctive relief in the Settlement. Specifically, he believes that British Airways should be enjoined from future fuel surcharge assessments. As defendant notes, it stopped assessing fuel surcharges as of April 2013. (7/17/18 Def.'s Ltr. at 4). Moreover, plaintiffs' lawsuit did not seek injunctive relief, only compensatory damages. (Am. Compl.)[22] See Wooley v. Jackson Hewitt, Inc., No. 07 CV 2201, 2011 WL 1559330, at *9 (N.D. Ill. Apr. 25, 2011). As plaintiffs note, under the Airline Deregulation Act, no person "may obtain any relief against an airline 'having the force and effect of law related to a price, route, or service of an air carrier. . . .'" (Pls.' Reply at 7 (quoting 49 U.S.C. § 1713(b)(1))). Thus, while Mr. Sauberman argues that the Settlement would be better if there were an injunctive component to it, plaintiffs were not entitled to an injunction as a matter of law and thus, his objection to the Settlement on this ground is without merit.

Mr. Sauberman's final challenge to the Settlement is based on his allegation that the Notice did not disclose to Class Members that British Airways is exploring the concept of dynamic pricing for Avios and is going to be "drastically" reducing the value of Avios; as such,

---

[22] Citations to "Am. Compl." refer to plaintiffs' Amended Complaint filed January 9, 2015, ECF No. 131.

the parties should have advised the Class of this potential impact on the Executive Club program going forward. (Sauberman Ltr.) In raising this issue, Mr. Sauberman was relying on British Airways' 2017 Capital Markets presentation, a publicly available document[23] which alerted him to the fact that dynamic pricing may be under consideration. (Pls.' Reply at 5).

British Airways claims that it does not currently have a plan in place as to whether and when it will implement a dynamic pricing program, if at all. (7/17/18 Def.'s Ltr. at 4). Moreover, British Airways also challenges Mr. Sauberman's assumption that such a program would adversely impact Executive Club members and devalue their Avios. (Id. at 5). As noted, British Airways' CEO recently explained in an interview that he is planning to change the Avios program but "in ways that will increase the value of Avios." (Pls.' Reply at 5). British Airways contends that a dynamic pricing component may have benefits to frequent flyers and it "is not in BA's interest to devalue Avios because they reward BA's most valued customers." (7/17/18 Def.'s Ltr. at 5). As counsel also noted, because there is no current plan in place, there is no way to write a notice to the Class that would be able to address the hypothetical contingencies raised by Mr. Sauberman. (Tr. at 38). Airlines change their programs frequently and while Mr. Sauberman is concerned with the dynamic pricing issue, there are many other potential changes that might occur in the future that would potentially affect the value of Avios. Anyone concerned about the future value of Avios could always choose the cash option. (Id.)

Having carefully considered the objections filed by both Mr. and Ms. Weiss and Mr. Sauberman, the Court finds that these objections do not call into question the fairness of the Settlement. A review of the various Grinnell factors, including the overwhelmingly positive

---

[23] There was no basis to suggest that defendant was attempting to conceal the issue. (7/17/18 Def.'s Ltr. at 4).

response to the Settlement by the Class Members, reinforces the Court's conclusion that the Settlement is fair, adequate and reasonable. See Sakiko Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 432-33 (S.D.N.Y. 2014) (holding that the fact that "the vast majority of class members neither objected not opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate") (citing Wright v. Stern, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008)); see also Sewell v. Bovis Lend Lease, Inc., No. 09 CV 6548, 2012 WL 1320124, at *7 (S.D.N.Y. Apr. 16, 2012) (stating that "[t]he fact that the overwhelming majority of class members have neither objected nor opted out weighs in favor of settlement approval").

Accordingly, for the reasons stated above, the Court respectfully recommends that final approval of the Class Settlement in this case be granted as the Settlement is fair, adequate and reasonable.

## D. Attorneys' Fees, Litigation Expenses, and Service Awards

Class counsel seeks final approval of an award of fees in the amount of $11,095,000, costs in the amount of $3,750,000 stemming from this litigation, and service awards for the Class representative. (Pls.' Mem. at 3).

### 1) Attorneys' Fees

In considering the fee request, the Court looked to 1) counsel's time and effort in connection with the litigation; 2) the quality of the representation; 3) the complexity of the litigation; 4) the risks of litigation; 5) the relationship of the fee to the settlement; and 6) public policy concerns. See United States v. City of New York, No. 07 CV 2067, 2016 WL 3417218, at *2 (E.D.N.Y. June 16, 2016).

According to Class Counsel, they devoted a total of 10,687 hours in prosecuting this action. (Pls.' Mem. at 10). This consisted of engaging in extensive discovery and briefing several complicated motions. (Id.) The resulting lodestar of $6,352,432 reflects that effort, and their requested fee represents a 1.75 multiplier above the lodestar. (Lichtman Decl. ¶ 3).[24] As Class Counsel notes, courts in this Circuit routinely award attorneys' fees of up to 30% of the common fund. See Seijas v. Republic of Argentina, No. 04 CV 1085, 2017 WL 1511352, at *13 (S.D.N.Y. 2017). Here, counsel is requesting 26.44% of the common fund, which is justified given the considerable time and effort devoted by counsel to reaching a successful conclusion for the Class.

The amount of time and effort required by counsel is not surprising given that the issues raised by the litigation were anything but straightforward. The parties submitted 14 expert reports on highly technical economic and statistical issues. (Pls.' Mem. at 10). The summary judgment motions set forth a number of complex issues relating to the fuel surcharges. (Id. at 11). As a consequence, the litigation was highly risky, and liability and damages were challenged by British Airways every step of the way, with one expert report purporting to dispose of the plaintiffs' claims entirely. (Id. at 12). As discussed supra, the successful settlement of between 26.69% and 62.67% of the maximum possible award attests to the quality of Class Counsel's representation in the action. Finally, the public policy goal of providing an incentive for lawyers to take on complicated actions such as this is furthered by the attorney's fee award in this case.

---

[24] Citations to "Lichtman Decl." refer to the June 14, 2018 Declaration of Jason L. Lichtman, Exhibit 1 to Pls.' Mem.

Given the above analysis of all the relevant factors, including the absence of any objection by any Class Member to the requested fee award, the Court respectfully recommends that plaintiffs be awarded attorneys' fees in the amount of $11,095,000.

2) Expenses and Service Awards

Apart from attorneys' fees, plaintiffs request reimbursement of $3,750,000 in expenses. See In re Air Cargo Shipping Servs. Antitrust Litig., No. 06 MD 1775, 2015 WL 5918273, at *7 (E.D.N.Y. Oct. 9, 2015) (holding that courts "normally grant expense requests in common fund cases as a matter of course"). Having reviewed the supporting paperwork and recognizing the amount of effort and the number of experts involved, the Court respectfully recommends that the request for expenses be granted.

Plaintiffs have also requested service awards for each of the four Class representatives in the amount $10,000 each. See Karic v. Major Auto. Cos., Inc., No. 09 CV 5708, 2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016). Having reviewed the detailed declaration from Class Counsel as to the time and effort devoted by the Class representatives in assisting in the prosecution of the case, the Court finds these awards reasonable and justified and respectfully recommends that they be granted.

CONCLUSION

For the foregoing reasons, it is respectfully recommended that the motion for final approval of the Class Settlement be granted, along with the request for attorneys' fees, expenses and service awards.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also

Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections

within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor

v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a

. . . report [and recommendation] operates as a waiver of any further judicial review of the

magistrate [judge's] decision").

The Clerk is directed to send copies of this Order to the parties either electronically

through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       October 9, 2018

                                         /s/ Cheryl L. Pollak
                                         Cheryl L. Pollak
                                         United States Magistrate Judge
                                         Eastern District of New York